ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
    & DOWD LLP
TOR GRONBORG (admitted *pro hac vice*)
J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Laborers District Council Construction Industry Pension Fund, et al., | ) ) No. CV-23-01455-PHX-DLR |
| Plaintiffs, | ) ) Consolidated with ) Case No. 23-01889-PHX-SRB |
| vs. | ) ) CLASS ACTION |
| Sea Limited, et al., | ) ) PLAINTIFF'S OPPOSITION TO ) DEFENDANT SEA LIMITED'S |
| Defendants. | ) MOTION TO TRANSFER VENUE ) PURSUANT TO 28 U.S.C. §1404(a) ) |

4877-6847-2717.v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................... 1

II. ARGUMENT ....................................................................................................... 3

    A. Legal Standard ............................................................................................ 3

    B. Defendant Has Failed to Make a Strong Showing of Inconvenience or that Transfer of This Action Is Appropriate ............................................ 3

        1. None of the Relevant Agreements Were Negotiated or Executed in the United States .............................................................. 4

        2. The District of Arizona Is Well-Equipped to Interpret the Governing Federal Securities Law ........................................................ 5

        3. The Court Should Give Deference to Plaintiff's Choice of Forum ......................................................................................................... 5

        4. No Key Operative Events Took Place in the United States ............... 6

        5. Neither the District of Arizona nor the Southern District of New York Have Contacts Relating to Plaintiff's Cause of Action ........................................................................................................ 8

        6. The Parties Will Incur Substantially Less Litigation Costs by Proceeding in the District of Arizona, Which Has a Significantly Less Congested Docket ................................................. 8

        7. Anticipated Non-Party Witnesses All Live Abroad .......................... 9

        8. Access to Sources of Proof Is Equal in Both Forums ...................... 10

    C. The Interests of Justice Do Not Favor Transfer ......................................... 11

III. CONCLUSION .................................................................................................. 12

4877-6847-2717.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Aircraft Mechs. Fraternal Ass'n v. Sw. Airlines Co.*,
2017 WL 1384296 (D. Ariz. Apr. 18, 2017) ................................................................ 3

*Ambrose v. Steelcase, Inc.*,
2002 WL 1447871 (N.D. Ill. July 3, 2002) ................................................................. 8

*Benson v. JPMorgan Chase Bank, N.A.*,
2010 WL 1445532 (N.D. Cal. Apr. 7, 2010) ............................................................. 10

*Bibo v. Fed. Express, Inc.*,
2007 WL 2972948 (N.D. Cal. Oct. 10, 2007) .............................................................. 8

*Billing v. Com. One, Inc.*,
186 F. Supp. 2d 375 (S.D.N.Y. 2002) ....................................................................... 11

*Bondali v. Yum! Brands, Inc.*,
2013 WL 12129379 (C.D. Cal. May 1, 2013) .............................................................. 6

*Coffin v. Magellan HRSC, Inc.*,
2021 WL 2589732 (D.N.M. June 24, 2021) .............................................................. 11

*Control ESI, Inc. v. Univ. of Denver*,
2012 WL 6608822 (D. Ariz. Dec. 18, 2012) ..................................................... 3, 9, 11

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ................................................................................. 2, 3

*DiRienzo v. Philip Servs. Corp.*,
294 F.3d 21 (2d Cir. 2002) ........................................................................................ 6

*Doshi v. Gen. Cable Corp.*,
2014 WL 12774226 (S.D.N.Y. Feb. 5, 2014) .............................................................. 7

*Duramed Pharms., Inc. v. Watson Lab'ys, Inc.*,
2008 WL 5232908 (D. Nev. Dec. 12, 2008) ................................................................ 5

*E. & J. Gallo Winery v. F. & P. S.p.A.*,
899 F. Supp. 465 (E.D. Cal. 1994) ............................................................................. 8

*Fed. Sav. Bank v. Wesco Ins. Co.*,
2022 WL 4612548 (D. Ariz. Sept. 30, 2022) .............................................................. 6

4877-6847-2717.v1

**Page**

*France Telecom S.A. v. Marvell Semiconductor, Inc.*,
2012 WL 6808527 (S.D.N.Y. Dec. 28, 2012) .............................................................. 8

*Gates Learjet Corp. v. Jensen*,
743 F.2d 1325 (9th Cir. 1984) ..................................................................................... 9

*Gibbons v. PSCU Inc.*,
2021 WL 308835 (D. Ariz. Jan. 29, 2021) ................................................................... 3

*Holliday v. Lifestyle Lift, Inc.*,
2010 WL 3910143 (N.D. Cal. Oct. 5, 2010) .............................................................. 10

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .......................................................................................... 4

*In re Collins & Aikman Corp. Sec. Litig.*,
438 F. Supp. 2d 392 (S.D.N.Y. 2006) ......................................................................... 7

*In re McDermott Int'l, Inc. Sec. Litig.*,
2009 WL 1010039 (S.D.N.Y. Apr. 13, 2009) .............................................................. 5

*In re Stillwater Mining Co. Sec. Litig.*,
2003 WL 21087953 (S.D.N.Y. May 12, 2003) ............................................................ 7

*Laborers Loc. 100 & 397 Pension Fund v. Bausch & Lomb Inc.*,
2006 WL 1524590 (S.D.N.Y. June 5, 2006) ................................................................ 7

*Leyvas v. Bezy*,
2008 WL 2026276 (D. Ariz. May 9, 2008) .................................................................. 9

*Reese v. Malone*,
2008 WL 11342462 (C.D. Cal. June 19, 2008) ............................................................ 6

*Ret. Sys. v. Stryker Corp.*,
2010 WL 2035130 (S.D.N.Y. May 21, 2010) .............................................................. 7

*Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
626 F.3d 973 (7th Cir. 2010) ...................................................................................... 11

*Sec. Inv. Prot. Corp. v. Vigman*,
764 F.2d 1309 (9th Cir. 1985) .................................................................................. 4, 5

*SEC v. Feng*,
2016 WL 7443220 (C.D. Cal. Apr. 7, 2016) ................................................................ 6

- iii -

4877-6847-2717.v1

**Page**

*Shipley v. Pesavento*,
2006 WL 8440671 (D. Ariz. Feb. 23, 2006)................................................................. 2

*Sidi Spaces LLC v. CGS Premier Inc.*,
2016 WL 3654306 (D. Ariz. July 6, 2016) ................................................................. 5

*Spirit Master Funding X LLC v. BCB Holdings Inc.*,
2018 WL 4220857 (D. Ariz. Sept. 5, 2018) ............................................................... 5

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988)..................................................................................................... 3, 11

*Szegedy v. Keystone Food Prods., Inc.*,
2009 WL 2767683 (C.D. Cal. Aug. 26, 2009)............................................................ 10

*Tran v. Third Ave. Mgmt. LLC*,
2016 WL 6828217 (C.D. Cal. Apr. 12, 2016) ............................................................ 6

*Van Dusen v. Barrack*,
376 U.S. 612 (1964).................................................................................................... 11

*Van Slyke v. Cap. One Bank*,
503 F. Supp. 2d 1353 (N.D. Cal. 2007) ..................................................................... 9

*Vancouver Alumni Asset Holdings Inc. v. Daimler AG*,
2017 WL 2378369 (C.D. Cal. May 31, 2017) ............................................................ 12

*Warfield v. Alaniz*,
453 F. Supp. 2d 1118 (D. Ariz. 2006) ........................................................................ 4

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78........................................................................................................................... 1, 4
    §78j(b)...................................................................................................................... 4
    §78t(a) ...................................................................................................................... 4

28 U.S.C.
    §1391(b)-(c) ............................................................................................................ 1
    §1404(a) ................................................................................................................... 1, 3, 9

4877-6847-2717.v1

**Page**

**SECONDARY AUTHORITIES**

15 Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* (4th ed. 2023)
   §3854.................................................................................................................................. 5

4877-6847-2717.v1

Lead Plaintiff Laborers District Council Construction Industry Pension Fund respectfully submits this opposition in response to Defendant Sea Limited's Motion to Transfer Pursuant to 28 U.S.C. §1404(a) (ECF 28) (the "Motion").

## I.    INTRODUCTION

Defendant Sea Limited ("Sea") does not dispute that this Court is a proper venue for this case.  Nor can it.  Pursuant to 28 U.S.C. §1391(b)-(c), defendants who are not residents of the United States – like Sea and its corporate officers – "may be sued in any judicial district."  The individual plaintiff who initiated this action is a resident of Maricopa County, and there are presumably numerous additional class members that reside in this judicial district. ECF 1, ¶¶9, 11.  Venue is proper in the District of Arizona.  Instead of challenging venue, Defendant claims that it would be more convenient if this case was transferred to defense counsel's backyard in the United States District Court for the Southern District of New York ("SDNY").  But a plaintiff's choice of venue is entitled proper deference, and Arizona is an equally (if not more) convenient forum for a case against Singaporean defendants accused of violating the federal securities laws.

This federal securities class action lawsuit is brought on behalf of a putative class of purchasers or acquirers of Sea's American Depository Shares ("ADSs")[1] against Sea and several of its executives for violations of the Securities Exchange Act of 1934 ("Exchange Act").  The initial complaint alleges that the defendants issued false and misleading statements which artificially inflated the price of Sea ADSs, and that investors were harmed when the true state of affairs at Sea was revealed to the market.  ECF 1.  The key operative facts relevant to the securities fraud claims at issue all took place overseas.  Sea is a foreign company organized under the laws of the Cayman Islands with headquarters in Singapore.  It provides digital entertainment, e-commerce, and digital financial services through its Garena, Shopee, and SeaMoney business lines, respectively, with its primary markets in Southeast

---

[1]    ADSs are equity shares of non-U.S. companies that are held by a U.S. depositary bank and are available for purchase by U.S. investors.  The entire process of issuing shares by a foreign company is called an American Depositary Receipt ("ADR").

- 1 -

Asia, Taiwan, and parts of Latin America.  Sea's executives are all foreign residents, and Sea maintains no offices in the United States.  As Defendant acknowledges, nearly (if not) all of the anticipated witnesses reside in Singapore.  Motion at 1.

There are no relevant facts or known witnesses in New York that warrant transfer to SDNY.  The Deposit Agreement that Sea entered with The Bank of New York Mellon has no bearing on the federal securities claims at issue, and courts routinely find that the mere trading of a security on the New York Stock Exchange ("NYSE") is insufficient to warrant venue in SDNY.  Nor do travel and lodging costs, litigation costs, or access to sources of proof render New York a more convenient forum than Arizona.  E-discovery and remote deposition technology allow for equal access to proof in either district.  To the extent travel is necessary, travel to and from Arizona is just as convenient (even more convenient, if one counts airport traffic and commute time) as New York with far more affordable lodging.  More importantly, the average time to bring a civil case to trial is significantly shorter in the District of Arizona than SDNY – by nearly a year.  Thus, it would substantially lower the parties' overall litigation costs and further the interests of justice to remain in this district.  Ultimately, litigating this case in SDNY would only serve to be more convenient for Defendant's counsel – not any of the parties or witnesses.

Courts in the Ninth Circuit have routinely held that "[a] court will not transfer venue simply to shift the inconvenience from one party to another."  *Shipley v. Pesavento*, 2006 WL 8440671, at \*1 (D. Ariz. Feb. 23, 2006).  And it is Defendant's burden to make a "***strong showing of inconvenience*** to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).[2]  They have not done so, and the balance of factors outlined in *Jones v. GNC Franchising, Inc.* weighs against transfer here.  211 F.3d 495 (9th Cir. 2000).

---

[2]    All emphasis is added and internal citations are omitted unless otherwise noted.

- 2 -

Because Defendant has failed to make a strong showing that transfer to New York would be more convenient for the parties and witnesses, and promote the interests of justice, Defendant's Motion should be denied.

## II.    ARGUMENT

### A.    Legal Standard

Courts are permitted to transfer a civil action to any district in which the case originally could have been brought "[f]or the convenience of parties and witnesses, [and] in the interests of justice." 28 U.S.C. §1404(a). The Ninth Circuit has enumerated several factors for courts to consider when determining if transfer is appropriate:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones*, 211 F.3d at 498-99; *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 23, 29 (1988) (transfer pursuant to §1404(a) is "an individualized, case-by-case consideration of convenience and fairness" based on "a number of case-specific factors"). In addition to the *Jones* factors, another "significant factor" that courts consider is "the relative congestion of the courts' dockets." *Control ESI, Inc. v. Univ. of Denver*, 2012 WL 6608822, at *2 (D. Ariz. Dec. 18, 2012); *see also Aircraft Mechs. Fraternal Ass'n v. Sw. Airlines Co.*, 2017 WL 1384296, at *2 (D. Ariz. Apr. 18, 2017) (same). The moving party "bears the burden of demonstrating transfer is appropriate, and '***must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum***.'" *Gibbons v. PSCU Inc.*, 2021 WL 308835, at *1 (D. Ariz. Jan. 29, 2021) (quoting *Decker Coal.*, 805 F.2d at 843).

### B.    Defendant Has Failed to Make a Strong Showing of Inconvenience or that Transfer of This Action Is Appropriate

Defendant has provided no compelling reason to upset Plaintiff's choice of forum, and fails to show that the balance of the *Jones* factors weighs strongly in favor of transfer.

- 3 -

4877-6847-2717.v1

### 1. None of the Relevant Agreements Were Negotiated or Executed in the United States

Defendant's Motion overstates the significance of Sea's Deposit Agreement with The Bank of New York Mellon. The fact that Defendant's Deposit Agreement is to be governed by New York state law is inapposite to this case proceeding under the federal securities laws. Plaintiff brings its claims against Defendant under §§10(b) and 20(a) of the Exchange Act – not a breach of contract claim or any other state law claim arising from the Deposit Agreement. To succeed on its claims, Plaintiff must establish: "'(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation.'" *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 699 (9th Cir. 2021). None of these *prima facie* elements of Plaintiff's claims – nor any defense thereto – require interpretation of any provision of the Deposit Agreement.

Defendant's argument that "Sea has expressly agreed to jurisdiction in New York courts" in the Deposit Agreement is similarly misleading (Motion at 7), as Defendant's consent to a particular forum has no bearing on personal jurisdiction for claims proceeding under the Exchange Act. As courts have long recognized, "[s]o long as a defendant has minimum contacts with the United States, ***Section 27 of the [Exchange] Act confers personal jurisdiction over the defendant in any federal district court***." *Sec. Inv. Prot. Corp. v. Vigman*, 764 F.2d 1309, 1316 (9th Cir. 1985); *see also Warfield v. Alaniz*, 453 F. Supp. 2d 1118, 1128 (D. Ariz. 2006) ("Thus, where a federal statute, such as 15 U.S.C. §78aa, confers nationwide service of process, 'the question becomes whether the party has sufficient contacts with the United States, not any particular state.'").

The circumstances here are nearly identical to *Pfeiffer v. Himax Techs., Inc.*, where a court in the Central District of California denied a foreign defendant's motion to transfer venue to SDNY for claims proceeding under the federal securities laws. 530 F. Supp. 2d 1121 (C.D. Cal. 2008). The defendant in *Himax* – a Cayman Islands corporation with its

- 4 -

4877-6847-2717.v1

principal place of business in Taiwan, whose ADSs traded on the Nasdaq, and whose executives all lived outside the United States – "largely stake[d] its motion for transfer on provisions of the IPO documents [(*i.e.*, a deposit agreement)] that designate[d] an agent for service of process for securities actions in New York and a forum selection clause that contemplates New York as a proper forum for such actions." *Id.* at 1124.  Even though the "Central District ha[d] little connection to the operative facts, the parties, or the subject matter of the action" and the "plaintiff's choice of forum [wa]s entitled to only minimal consideration," transfer was still not warranted.  *Id.* at 1126.

In reality, all the relevant agreements to this case were likely negotiated and executed in Singapore, where Defendant's officers and principal place of business are located.  Thus, this factor does not weigh in favor of transfer.

### 2.   The District of Arizona Is Well-Equipped to Interpret the Governing Federal Securities Law

This Court is more than capable of deciding the issues of this case.  "[B]ecause this case arises under federal law, this court has the same familiarity as" any other federal court, including SDNY.  *Duramed Pharms., Inc. v. Watson Lab'ys, Inc.*, 2008 WL 5232908, at *2 (D. Nev. Dec. 12, 2008); *cf. In re McDermott Int'l, Inc. Sec. Litig.*, 2009 WL 1010039, at *5 (S.D.N.Y. Apr. 13, 2009) ("Both the Southern District of New York and the Southern District of Texas are equally capable of applying federal securities law to this action.").  Tellingly, Defendant fails to address this factor in its Motion.  Because "all federal judges are considered adept at interpreting the various aspects of federal law," 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, §3854 (4th ed. 2023), this factor does not weigh in favor of transfer.

### 3.   The Court Should Give Deference to Plaintiff's Choice of Forum

"'Courts do not lightly disturb a plaintiff's choice of forum.'"  *Spirit Master Funding X LLC v. BCB Holdings Inc.*, 2018 WL 4220857, at *3 (D. Ariz. Sept. 5, 2018) (citing *Sidi Spaces LLC v. CGS Premier Inc.*, 2016 WL 3654306, at *2 (D. Ariz. July 6, 2016)).  This is particularly true in securities cases.  *See Vigman*, 764 F.2d at 1317

4877-6847-2717.v1

("'Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum' . . . and unless the balance of factors is strongly in favor of the defendants, the plaintiff's choice of forum should rarely be disturbed."); *SEC v. Feng*, 2016 WL 7443220, at *2 (C.D. Cal. Apr. 7, 2016) (same).  While this factor is afforded less deference when a class action is involved, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum."  *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002).

Defendant claims that the plaintiff's choice of forum "ought to be even more limited here given that Plaintiff Muraweh did not seek to act as Lead Plaintiff, and the appointed Lead Plaintiff, who did not select this forum, is based in Pennsylvania."  Motion at 7.  Yet all of the cases Defendant relies upon for this argument where transfer was granted involved corporate defendants who were headquartered in the United States and where the relevant factual events took place in the transferee venue.[3]  None are analogous to the case at bar involving a foreign defendant that maintains all of its corporate offices abroad – and where nearly all the operative facts took place overseas.  This case is more akin to *Himax*, where even if the plaintiff's choice of forum is entitled to only "minimal consideration," transfer is still not warranted.  530 F. Supp. 2d at 1126.  Accordingly, this factor weighs against transfer.

### 4.    No Key Operative Events Took Place in the United States

Defendant's Motion glosses over the fact that no key operative events took place in the United States, let alone in New York.  As Defendant acknowledges, Sea is incorporated under the laws of the Cayman Islands and maintains its principal place of business in

---

[3]   *See Fed. Sav. Bank v. Wesco Ins. Co.*, 2022 WL 4612548 (D. Ariz. Sept. 30, 2022) (J. Rayes) (defendant Wesco Insurance Company headquartered in New York); *Bondali v. Yum! Brands, Inc.*, 2013 WL 12129379 (C.D. Cal. May 1, 2013) (defendant Yum! headquartered in Kentucky); *Reese v. Malone*, 2008 WL 11342462 (C.D. Cal. June 19, 2008) (defendant BP America headquartered in Illinois); *Tran v. Third Ave. Mgmt. LLC*, 2016 WL 6828217, at *4 (C.D. Cal. Apr. 12, 2016) (defendants Third Avenue Trust, Third Avenue Management LLC, and M.J. Whitman LLC all headquartered in New York).

- 6 -

Singapore. Motion at 2. The key "operative events" that form the basis of Plaintiff's claim – *i.e.*, Defendant's alleged misrepresentations and omissions issued through press releases, SEC filings, and earnings calls – originated at Sea's corporate headquarters in Singapore before being disseminated in Arizona and across the United States. *In re Collins & Aikman Corp. Sec. Litig.*, 438 F. Supp. 2d 392, 397 (S.D.N.Y. 2006) ("'[M]isrepresentations are deemed to "occur" in the district where the misrepresentations are issued or the truth is withheld.'"); *City of Pontiac Gen. Emps.' Ret. Sys. v. Stryker Corp.*, 2010 WL 2035130, at *4 (S.D.N.Y. May 21, 2010) ("[T]he locus of operative events in a securities action is where the alleged misrepresentations were made.").

The only "event" that Defendant can point to that occurred in New York, other than the irrelevant Deposit Agreement (*see supra*, §II.B.1.), is the fact that Defendant's securities are listed on the NYSE. But merely trading on the NYSE is insufficient to warrant transfer of this matter. Indeed, multiple courts in Defendant's desired district have rejected the argument that trading on a stock exchange is a strong enough contact to justify venue. *See, e.g.*, *Doshi v. Gen. Cable Corp.*, 2014 WL 12774226, at *2 (S.D.N.Y. Feb. 5, 2014) ("That [defendant]'s stock is traded on the NASDAQ Stock Market . . . does not alter th[e] analysis" that the "'locus of operative events in a securities action is where the alleged misrepresentations were made.'"); *In re Stillwater Mining Co. Sec. Litig.*, 2003 WL 21087953, at *5 (S.D.N.Y. May 12, 2003) ("one institutional investor meeting and the trading of [defendant]'s stock on the New York Stock Exchange do not constitute material connections" such that venue is more appropriate in New York); *Laborers Loc. 100 & 397 Pension Fund v. Bausch & Lomb Inc*., 2006 WL 1524590, at *4 (S.D.N.Y. June 5, 2006) (noting that if trading on a stock exchange was sufficient, "SDNY would have even more business and every plaintiff that sued a NYSE firm could nestle in right here at 500 Pearl Street"). Thus, the fact that Sea trades on the NYSE does not weigh in favor of transfer.

Defendant's most prominent connection with New York is that its counsel maintains offices there – which is presumably why they have brought this Motion. This fact does not assist Defendant's argument either. Courts in the Ninth Circuit have consistently held that

- 7 -

"'convenience of counsel is not a consideration in determining whether to transfer an action.'" *Bibo v. Fed. Express, Inc.*, 2007 WL 2972948, at *3 (N.D. Cal. Oct. 10, 2007) (citing *E. & J. Gallo Winery v. F. & P. S.p.A.*, 899 F. Supp. 465, 466 (E.D. Cal. 1994)).[4] On balance, Defendant's contacts to New York are tenuous and have no connection to the operative events underlying Plaintiff's claims. Thus, they do not weigh in favor of transfer.

### 5. Neither the District of Arizona nor the Southern District of New York Have Contacts Relating to Plaintiff's Cause of Action

As discussed above, New York does not have any meaningful contact relating to Plaintiff's cause of action. *Supra*, §II.B.4. For this reason, while the District of Arizona admittedly "has little connection to the operative facts, the parties, or the subject matter of the action," the Court should still "deny transfer venue to the Southern District of New York." *Himax*, 530 F. Supp. 2d at 1126.

### 6. The Parties Will Incur Substantially Less Litigation Costs by Proceeding in the District of Arizona, Which Has a Significantly Less Congested Docket

Defendant contends that litigation costs will be reduced if transfer is granted because neither party would need local counsel. Motion at 8. But "any costs associated with retaining local counsel surely will be minimal" here, especially since the parties' out-of-state counsel have already been "admitted pro hac vice." *See France Telecom S.A. v. Marvell Semiconductor, Inc.*, 2012 WL 6808527, at *3 (S.D.N.Y. Dec. 28, 2012); *cf. Ambrose v. Steelcase, Inc.*, 2002 WL 1447871, at *4 n.6 (N.D. Ill. July 3, 2002) ("Where the convenience of counsel pertains only to local counsel . . . [who are not responsible for the] 'substantive aspects of the litigation,' . . . this expense is not likely to be substantial.").[5]

---

[4] For this reason, the fact that Plaintiff's counsel maintains an office in New York has no bearing on the transfer analysis – especially when the specific attorneys representing Plaintiff are based in California.

[5] While some district courts prescribe certain requirements and duties for local counsel (*see, e.g.*, *Ambrose*, 2002 WL 1447871, at *4 n.6), the Local Rules of Civil Procedure for the District of Arizona ("LRCiv") merely state that "[n]othing herein shall prevent any judicial officer from ordering that local counsel be associated in any case." LRCiv 83.1(d). Hence, the costs associated with local counsel in this District are essentially at the discretion of the parties.

- 8 -

4877-6847-2717.v1

In contrast to the *de minimis* costs associated with local counsel, the parties' will save significant litigation costs by remaining in the District of Arizona because this Court's docket is less congested, and thus both parties will likely spend less time in litigation. According to a recent report produced by the federal courts, for the 12-month period ending on June 30, 2023, the median time interval for cases to proceed to trial in the District of Arizona was 37.3 months with only 4.7% of its cases over three years old.  Ex. A.[6] Conversely, in SDNY, the median time interval for cases to proceed to trial was 47 months and 26.7% of the cases pending there are over three years old.  Thus, the District of Arizona is capable of bringing a civil case to completion in a significantly shorter amount of time than SDNY, "a fact that will reduce litigation costs for both parties." *Control ESI*, 2012 WL 6608822, at *2; *Leyvas v. Bezy*, 2008 WL 2026276, at *5 (D. Ariz. May 9, 2008); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1337 (9th Cir. 1984) ("The real issue is not whether a dismissal will reduce a court's congestion but whether a trial may be speedier in another court because of its less crowded docket.").  Thus, this factor weighs against transfer.

### 7.  Anticipated Non-Party Witnesses All Live Abroad

The availability of compulsory process to compel attendance of unwilling non-party witnesses is not served by transfer.  To support its argument that the SDNY is more convenient for non-party witnesses, Defendant lists a single "potential witness" who currently lives in New York.  Motion at 8.  But Defendants offer no explanation of this individual's role at Sea, whether they have any knowledge of the facts relevant to litigation (they do not appear on any of Sea's SEC filings or public statements), or whether/how Defendant anticipates calling the purported witness at trial.  Pointing to a single vague "potential" witness does not weigh in favor of venue in New York.  *See Van Slyke v. Cap. One Bank*, 503 F. Supp. 2d 1353, 1363-64 (N.D. Cal. 2007) (when weighing "the availability of compulsory process to bring unwilling witnesses live before the jury," witnesses who are

---

[6]  Exhibit A is attached to the Declaration of J. Marco Janoski Gray in Support of Plaintiff's Opposition to Defendant Sea Limited's Motion to Transfer Venue Pursuant to 28 U.S.C. §1404(a), filed concurrently herewith.

- 9 -

"'[l]ikely to be called as a witness at trial' is the main focus"). Moreover, Defendant undercuts its own argument by admitting that "nearly all of the anticipated party and third-party witnesses reside" reside in Singapore (Motion at 1), where there are no compulsory processes to compel non-party attendance at a trial in the United States – regardless of judicial district.

Defendant's arguments regarding travel from Singapore to the U.S. are also unconvincing. As an initial matter, any depositions that take place in this case are likely to occur either where the witness is located or via remote deposition technology. In the event travel becomes necessary, there are numerous flights from Singapore to Phoenix via Los Angeles, San Francisco, and Seattle each week with total travel time essentially equivalent to a direct flight to New York. Not to mention Phoenix Sky Harbor International Airport is a 10-minute drive from the Sandra Day O'Connor Courthouse, whereas JFK airport is an 80-minute drive from the nearest SDNY courthouse on a good day. Furthermore, if witnesses are compelled to fly from Singapore to the United States – which seems unlikely to begin with – accommodation in Phoenix is far more affordable than New York. Therefore, this factor does not weigh in favor of transfer.

### 8.    Access to Sources of Proof Is Equal in Both Forums

In addition to witnesses, the other major source of proof in this case will be documents. These documents will, in all likelihood, be located abroad. Moreover, as Defendant notes in its Motion, irrespective of venue "the advancement in technology lessens the overall burden in accessing sources of proof." Motion at 8; *see also Szegedy v. Keystone Food Prods., Inc.*, 2009 WL 2767683, at *6 (C.D. Cal. Aug. 26, 2009) ("[A]s other courts have noted, ease of access to documents does not weigh heavily in the transfer analysis, given that advances in technology have made it easy for documents to be transferred to different locations."); *Holliday v. Lifestyle Lift, Inc.*, 2010 WL 3910143, at *8 (N.D. Cal. Oct. 5, 2010) ("The reality of electronic communication and transmission at least dilutes the weight given to this convenience factor."); *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 1445532, at *6 (N.D. Cal. Apr. 7, 2010) ("given today's technological advancements, the

- 10 -

ability to transfer electronic documents is generally not difficult or burdensome"). In any event, because the relevant sources of proof are located in Singapore – not SDNY – this factor does not weigh in favor of transfer:

> The Court does not view convenience to the witnesses and parties to favor either forum. No named plaintiff or defendant resides in the Central District [of California], but the same is true of the Southern District of New York. The burden of transporting documents and witnesses from Asia will be the same in either district. Neither forum is more favorable in terms of access to evidence or the costs of litigation. Accordingly, this factor is neutral.

> Without more, the Court will not order transfer of venue.

*Himax*, 530 F. Supp. 2d at 1124.

### C.     The Interests of Justice Do Not Favor Transfer

The *Jones* factors are not exhaustive, and courts should determine whether transfer is appropriate on "an individualized, case-by-case consideration of convenience and fairness." *Ricoh*, 487 U.S. at 23, 29 (1988). Aside from the convenience of the parties and witnesses, "[t]he 'interest of justice' is a separate element of the transfer analysis that relates to the court system's efficient administration." *Coffin v. Magellan HRSC, Inc.*, 2021 WL 2589732, at *16 (D.N.M. June 24, 2021) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 626-27 (1964)). One of the primary factors that courts look to for this element is "'docket congestion and likely speed to trial in the transferor and potential transferee forums.'" *Id.* (quoting *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977 (7th Cir. 2010)); *see also Billing v. Com. One, Inc.*, 186 F. Supp. 2d 375, 379 (S.D.N.Y. 2002) ("The dockets of the competing districts are relevant to this inquiry."); *Control ESI*, 2012 WL 6608822, at *2 ("A significant factor is the cost of litigation and the relative congestion of the courts' dockets.").

As discussed above (*supra*, §II.B.6.), the District of Arizona is significantly less congested than SDNY, and it is in the interest of justice for this case to stay on an efficient and speedier path to trial by remaining in this District. *See* Ex. A. Further, Plaintiff is currently in the process of drafting a consolidated complaint in accordance with Ninth

- 11 -

Circuit pleading standards (*see* ECF 27), and the interests of justice and principles of fairness do not favor a result where Plaintiff could be forced to scrap or duplicate its efforts.

Finally, the Court should not entertain Defendant's argument the District of Arizona's interest in this case is comparatively less than SDNY because New York is the "financial capital of the country." Motion at 9. The notion that this District has less of an interest in protecting U.S. investors from securities fraud solely because Wall Street is located elsewhere is provincial. "[T]he United States has a clear and obvious domestic interest in protecting U.S. investors, and the federal court has an equally clear localized interest in enforcing federal securities laws" – regardless of judicial district. *See Vancouver Alumni Asset Holdings Inc. v. Daimler AG*, 2017 WL 2378369, at *10 (C.D. Cal. May 31, 2017).

## III.   CONCLUSION

Defendant has failed to meet its heavy burden to show that transfer of this action is warranted. Thus, for all the foregoing reasons, Defendant's Motion should be denied.

DATED: November 6, 2023

ROBBINS GELLER RUDMAN
 & DOWD LLP
TOR GRONBORG
J. MARCO JANOSKI GRAY
T. ALEX B. FOLKERTH

s/ Marco Janoski
J. MARCO JANOSKI GRAY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com

Lead Counsel for Lead Plaintiff

- 12 -

4877-6847-2717.v1

ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

- 13 -

4877-6847-2717.v1