ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
    & DOWD LLP
TOR GRONBORG (admitted *pro hac vice*)
J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Laborers District Council Construction Industry Pension Fund, et al., | No. CV-23-01455-PHX-DLR |
| Plaintiffs, | Consolidated with Case No. 23-01889-PHX-SRB |
| vs. | CLASS ACTION |
| Sea Limited, et al., | PLAINTIFF'S REPLY IN FURTHER SUPPORT OF MOTION FOR ALTERNATIVE SERVICE ON THE INDIVIDUAL DEFENDANTS |
| Defendants. | |

4859-4503-9267.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     SEA HAS NO STANDING TO OBJECT TO THE MOTION ............................... 3

III.    RULE 4(f)(1) SERVICE DOES NOT APPLY HERE ........................................... 4

        A.      Rule 4(f) Has No Hierarchy of Preferred Service .......................................... 4

        B.      The Convention Does Not Apply When Addresses Are Unknown .............. 5

        C.      The Convention Does Not Apply to Service Via U.S. Counsel ................... 7

IV.     RULE 4(f)(3) ALTERNATIVE SERVICE IS PROPER ........................................ 7

V.      DELAYING SERVICE PREJUDICES PLAINTIFF ........................................... 11

- i -

4859-4503-9267.v1

**TABLE OF AUTHORITIES**

**Page**

CASES

*Am. Express Co. v. Xiongwen Rui*,
2019 WL 1858101 (D. Ariz. Apr. 25, 2019) ................................................................. 7

*Amazon.com, Inc. v. Tian*,
2022 WL 486267 (W.D. Wash. Feb. 17, 2022)............................................................. 5

*Brown v. China Integrated Energy, Inc.*,
285 F.R.D. 560 (C.D. Cal. 2012)..................................................................*passim*

*Comercia Ltda. v. Bertin*,
2022 WL 2758417 (S.D.N.Y. July 14, 2022)............................................................... 2

*DIRECTV, LLC v. WNK Assocs., Inc.*,
2023 WL 2025039 (E.D. Tex. Feb. 15, 2023) ............................................................ 11

*Facebook, Inc. v. 9 Xiu Network Tech. Co.*,
480 F. Supp. 3d 977 (N.D. Cal. 2020) ............................................................ 4, 7, 8, 9

*Fornix Holdings LLC v. Pepin*,
2022 WL 4359086 (D. Ariz. Sept. 20, 2022) .............................................................. 5

*Gen. Star Indem. Co. v. First Am. Title Ins. Co. of Napa*,
2020 WL 8614189 (N.D. Cal. Sept. 25, 2020) .................................................. 5, 9, 10

*Gonzalez v. US Human Rights Network*,
512 F. Supp. 3d 944 (D. Ariz. 2021) .................................................................... 9, 10

*Grp. One Ltd. v. GTE GmbH*,
523 F. Supp. 3d 323 (E.D.N.Y. 2021) ........................................................................ 5

*In GLG Life Tech Corp. Sec. Litig.*,
287 F.R.D. 262 (S.D.N.Y. 2012) ........................................................................ 10, 11

*In re Graña y Montero S.A.A. Sec. Litig.*,
2019 WL 259778 (E.D.N.Y. Jan. 9, 2019), *report and recommendation
adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019).......................................... 1, 3, 7

*In re LDK Solar Sec. Litig.*,
2008 WL 2415186 (N.D. Cal. June 12, 2008).............................................................. 4

*In re New Oriental Educ. & Tech. Grp. Inc. Sec. Litig.*,
2023 WL 5466333 (S.D.N.Y. Aug. 24, 2023)..................................................... 2, 7, 10

*Juicero, Inc. v. Itaste Co.*,
2017 WL 3996196 (N.D. Cal. June 5, 2017)............................................................. 10

*Kelly Toys Holdings, LLC. v. Top Dep't Store*,
2022 WL 3701216 (S.D.N.Y. Aug. 26, 2022)............................................................. 6

4859-4503-9267.v1

**Page**

*Kumar v. Alhunaif*,
2023 WL 8527671 (S.D.N.Y. Dec. 8, 2023) .................................................................. 9

*Kurd v. Republic of Turkey*,
2018 WL 11248032 (D.D.C. Dec. 19, 2018)................................................................ 11

*Liberty Media Holdings, LLC v. Vinigay.com*,
2011 WL 810250 (D. Ariz. Mar. 3, 2011) .................................................................... 6

*Media Trademark & Licensing Ltd. v. COINGEEKLTD.COM*,
2021 WL 2895289 (D. Ariz. July 9, 2021) ................................................................... 8

*Meyer v. Mittal*,
2022 WL 1000774 (D. Or. Apr. 4, 2022) ................................................................. 3, 9

*MJC Am. Ltd. v. Gree Elec. Appliances Inc. of Zhuhai*,
2013 WL 12133891 (C.D. Cal. Aug. 22, 2013) ........................................................... 2

*Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzen) Tech., Ltd.*,
2022 WL 1913613 (W.D. Tex. June 2, 2022) ........................................................ 4, 11

*Prediction Co. LLC v. Rajgarhia*,
2010 WL 1050307 (S.D.N.Y. Mar. 22, 2010) .............................................................. 6

*Reintegrative Therapy Ass'n, Inc. v. Kinitz*,
2021 WL 5140195 (S.D. Cal. Nov. 4, 2021)................................................................. 8

*Rio Props., Inc. v. Rio Int'l Interlink*,
284 F.3d 1007 (9th Cir. 2002) ................................................................................. 1, 4

*Stream SICAV v. Wang*,
989 F. Supp. 2d 264 (S.D.N.Y. 2013) ........................................................................ 10

*Tevra Brands LLC v. Bayer Healthcare LLC*,
2020 WL 3432700 (N.D. Cal. June 23, 2020)............................................................. 5

*UnitedHealth Grp., Inc. v. United Healthcare, Inc.*,
2014 WL 4635882 (D. Nev. Sept. 16, 2014)............................................................... 3

*Volkswagenwerk Aktiengesellschaft v. Schlunk*,
486 U.S. 694 (1988)..................................................................................................... 8

*WAM USA Inc. v. Fierros*,
2023 WL 6690648 (D. Ariz. Oct. 12, 2023)................................................................ 5

*Water Splash, Inc. v. Menon*
581 U.S. 271, 273 (2017).............................................................................................. 8

*Word Ape, LLC v. Pawico*,
2021 WL 768293 (W.D. Wash. Jan. 4, 2021)*, report and
recommendation adopted*, 2021 WL 765005
(W.D. Wash. Feb. 26, 2021) ........................................................................................ 6

4859-4503-9267.v1

**Page**

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Civil Procedure
    Rule 4 ........................................................................................................... 2, 8
    Rule 4(d)(1)................................................................................................... 2, 7
    Rule 4(f)......................................................................................................... 1, 4
    Rule 4(f)(1) ................................................................................................ 1, 4, 5
    Rule 4(f)(3) ................................................................................................. *passim*

Hague Convention on the Service Abroad
of Judicial and Extrajudicial Documents
    Article 1 .............................................................................. 2, 5, 7, 9, 10

Lead Plaintiff Laborers District Council Construction Industry Pension Fund submits this reply in further support of Plaintiff's Motion and Memorandum of Law in Support of Alternative Service on the Individual Defendants (ECF 34) ("Motion" or "Mot.").[1]

## I.   INTRODUCTION

In an odd display of procedural gamesmanship, Defendant Sea Limited seeks to prevent alternative service of the Complaint on its current senior executives via the simple and direct methods of email, social media, and the Company's litigation counsel.

As an initial matter, Sea has no legal standing to oppose Plaintiff's Motion, as "'[c]o-defendants do not have standing to assert improper service claims on behalf of other defendants.'" *In re Graña y Montero S.A.A. Sec. Litig.*, 2019 WL 259778, at \*3 (E.D.N.Y. Jan. 9, 2019), *report and recommendation adopted*, 2019 WL 1046627 (E.D.N.Y. Mar. 5, 2019). Sea would suffer no justiciable harm from service of the Complaint on its current executives, and the Individual Defendants should not be permitted to feign ignorance of this lawsuit while directing the company they control to object to service on their behalf.

Even acknowledging its arguments, Sea's opposition (ECF 37) ("Opp.") hinges on the faulty premise that Plaintiff must first attempt service via Rule 4(f)(1) and the Hague Service Convention before seeking Court-directed service under Rule 4(f)(3). But the plain text of Rule 4(f) provides that "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or 4(f)(2)" and "is neither a 'last resort' nor 'extraordinary relief.'" *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014-15 (9th Cir. 2002). For this reason, courts routinely find that "[a] plaintiff need not pursue other methods of service before requesting that the court authorize an alternative method under Rule 4(f)(3)." *Brown v. China Integrated Energy, Inc.*, 285 F.R.D. 560, 563 (C.D. Cal. 2012).

Defendant's insistence on the Hague process is particularly misplaced because the text of the Convention makes clear that it: (1) "shall not apply where the address of the person to be served with the document is ***not known***"; and (2) only applies "where there is occasion to

---

[1]   Defined terms are the same as those set forth in the Motion. Unless otherwise stated, all emphasis is added and internal citations, brackets, and quotation marks are omitted.

- 1 -

4859-4503-9267.v1

transmit a judicial or extrajudicial document for service ***abroad***." Hague Service Convention, Art. 1, 20 U.S.T. 361. Here, Plaintiff's investigator has been unable to locate residential addresses for any of the Individual Defendants – rendering the Convention inapplicable. Brandon Decl., ¶¶5-6.[2] And while Sea attacks the reasonableness of Plaintiff's investigation, it identifies no additional measures that Plaintiff could have taken other than hiring a third-party firm to conduct an investigation in Singapore – a burdensome process that contravenes Rule 4's directive to "avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1). Moreover, even if Sea provided the Individual Defendants' residential addresses (which are undoubtedly in its human resources files), the Convention would still not apply to service effectuated domestically via transmission to Sea's U.S.-based litigation counsel at Shearman & Sterling LLP. Tellingly, Sea's opposition does not even attempt to address this point.

Accordingly, alternative service pursuant to Rule 4(f)(3) is appropriate here. Plaintiff's proposed methods of service are not barred by international agreement and comport with constitutional notions of due process. *See* Mot., §§IV.A, IV.B. Sea does not contest the authenticity of the Individual Defendants' work email addresses that are under its control (*@seagroup.com), and Singapore's objection to Hague Convention service via "postal channels" does not prohibit alternative service via email. Nor does Sea claim that any of the social media accounts associated with the Individual Defendants are inauthentic, which in any event are proposed as supplemental "backstop" methods of service. Finally,

---

[2] Plaintiff initiated a request on January 19, 2024 to Singapore's Ministry of Law for Hague Convention service on the Individual Defendants at Sea's corporate headquarters. However, there is no indication how long the request will take to process, as Singapore has yet to publish any statistics on the average length of time for service requests. Hague Convention service in other countries often takes more than six months. *See MJC Am. Ltd. v. Gree Elec. Appliances Inc. of Zhuhai*, 2013 WL 12133891, at *2 (C.D. Cal. Aug. 22, 2013) (China takes "an average of six months to one year"); *Equipav S.A. Pavimentacao, Engenharia e Comercia Ltda. v. Bertin*, 2022 WL 2758417, at *1 (S.D.N.Y. July 14, 2022) (Brazil takes an average of "seven to twelve months"). Nor is it clear if service can be effectuated at the Company's business address. *See In re New Oriental Educ. & Tech. Grp. Inc. Sec. Litig.*, 2023 WL 5466333, at *2 (S.D.N.Y. Aug. 24, 2023) ("With respect to serving individuals, courts routinely interpret 'address,' as used in the Hague Convention, to refer to 'the actual, current place where [defendant] ***lives***' . . . . Because the Executive Defendants' ***residential*** addresses are not known, the Hague Convention does not apply.").

- 2 -

Sea's sole objection to service on its litigation counsel at Shearman & Sterling – *i.e.*, that Shearman & Sterling does not "currently" represent any of the Individual Defendants – is a legal fiction that misses the mark.  Regardless of whether the retention agreement with Sea names the Individual Defendants as clients, their current roles as senior executives at the Company "makes it all but certain that when [they] are served through [Shearman & Sterling], they will receive notice of the suit." *Brown*, 285 F.R.D. at 566; Mot. at 12-13.[3]

Sea reveals its true intention when it suggests that the Court "does not need to decide the Motion before ruling on Sea's forthcoming motion to dismiss." Opp. at 1.  This would only delay the litigation and prejudice Plaintiff, as the Individual Defendants will surely want a second bite at the apple with their own motions to dismiss.  To avoid unnecessary delays and duplicative briefing on the pleadings, Plaintiff's Motion should be granted.

## II.   SEA HAS NO STANDING TO OBJECT TO THE MOTION

Sea has already waived service of process and appeared in this matter (ECF 6, ¶4), leaving it the only defendant named in the Complaint that is completely unaffected by this Motion.  Because Sea has no stake in the outcome of this Motion, its opposition brief should be disregarded, as courts routinely hold that "'[c]o-defendants do not have standing to assert improper service claims on behalf of other defendants.'" *Graña y Montero*, 2019 WL 259778, at *3 (collecting cases and refusing to consider defendant company's opposition to plaintiff's motion for alternative service on co-defendant individual executives); *UnitedHealth Grp., Inc. v. United Healthcare, Inc.*, 2014 WL 4635882, at *1 (D. Nev. Sept. 16, 2014) ("Plaintiff is correct that because MDI's counsel does not represent Vietnamese Defendants, it has no standing to object to the grant of leave to alternative service upon those Defendants."); *Meyer v. Mittal*, 2022 WL 1000774, at *1 n.1 (D. Or. Apr. 4, 2022) (disregarding objection to alternative service from co-defendant).

---

[3]   While Sea claims that Shearman & Sterling "does not currently represent any of the Individual Defendants," it also represents that its forthcoming motion to dismiss "will be based on arguments for dismissal that apply to all defendants equally." Opp. at 1-2.

4859-4503-9267.v1

The Individual Defendants are the highest-ranking officers at Sea (and include its General Counsel). They are surely "aware of the pending action[] and demand[] service pursuant to the Hague Convention as a means of creating a procedural hurdle to timely litigation." *See Monolithic Power Sys., Inc. v. Meraki Integrated Cir. (Shenzen) Tech., Ltd.*, 2022 WL 1913613, at *7 (W.D. Tex. June 2, 2022); *In re LDK Solar Sec. Litig.*, 2008 WL 2415186, at *3 (N.D. Cal. June 12, 2008) ("[O]ddly, defense counsel oppose this motion on behalf of the unserved defendants."). Sea's opposition should be disregarded.

## III.    RULE 4(f)(1) SERVICE DOES NOT APPLY HERE

The main thrust of Sea's opposition is that "Plaintiff should be required to try to serve the Individual Defendants in accordance with the [Hague Service] Convention." Opp. at 1. Even if considered, it fails for several reasons. First, alternative service under Rule 4(f)(3) is just as favored as Hague service under Rule 4(f)(1), and Plaintiff does not need to exhaust efforts under one method of service before pursuing the other. Second, the text of the Hague Service Convention confirms that it does not apply "where the address of the person to be served with the document is not known," as with the Individual Defendants here. Third, the text of the Convention also clarifies that it applies only when there is occasion to transmit a "document for service abroad," and thus does not apply to service effectuated domestically via Sea's U.S.-based counsel. Defendant's arguments to the contrary misconstrue the law.[4]

### A.    Rule 4(f) Has No Hierarchy of Preferred Service

The Ninth Circuit explicitly recognized in *Rio Properties* that the text of Rule 4(f) does not "create a hierarchy of preferred methods of service of process" and that "court-directed service under Rule 4(f)(3) is as favored as service available under Rule 4(f)(1) or 4(f)(2)." 284 F.3d at 1014-15. Thus, "service of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief' . . . . [i]t is merely one means among several which enables

---

[4]    Even Defendant's authority (Opp. at 4) recognizes that the Hague Service Convention does not apply to these circumstances. *See Facebook, Inc. v. 9 Xiu Network Tech. Co.*, 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020) (noting "the Convention doesn't apply 'where the address of the person to be served with the document is not known'" or "if service can be completed without transmitting documents abroad").

- 4 -

service of process on an international defendant." *Id.*  As a result, courts in the Ninth Circuit and around the country have consistently held that "[a] plaintiff need not pursue other methods of service before requesting that the court authorize an alternative method under Rule 4(f)(3)." *Brown*, 285 F.R.D. at 563; *WAM USA Inc. v. Fierros*, 2023 WL 6690648, at *1 (D. Ariz. Oct. 12, 2023) ("[A] plaintiff is not required to attempt service by other means 'before resort to court-ordered service under Rule 4(f)(3).'"); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323, 341-42 (E.D.N.Y. 2021) (same).

Despite this controlling authority, Sea claims that failure to attempt service via the Convention "alone is a 'sufficient basis to deny Plaintiff's Motion.'" Opp. at 5.  Yet the very same cases that Sea cites for this faulty proposition actually underscore Plaintiff's point.  *See Amazon.com, Inc. v. Tian*, 2022 WL 486267, at *3 (W.D. Wash. Feb. 17, 2022) ("Plaintiffs are not required to have attempted Hague Convention service under Rule 4(f)(1) before seeking service under Rule 4(f)(3)."); *Tevra Brands LLC v. Bayer Healthcare LLC*, 2020 WL 3432700, at *3 (N.D. Cal. June 23, 2020) (same).  And while Sea wishfully argues that *Rio Properties* "has no relevance here, where Singapore is a signatory to the Convention" (Opp. at 11), that is simply not the case.  *See WAM USA*, 2023 WL 6690648, at *1 (granting alternative service on company in Turkey – a signatory to the Convention); *Fornix Holdings LLC v. Pepin*, 2022 WL 4359086, at *1-*2 (D. Ariz. Sept. 20, 2022) (granting alternative service on defendant in Canada – a signatory to the Convention).  "[N]umerous courts have authorized alternative service under Rule 4(f)(3) even where the Hague Convention applies." *Gen. Star Indem. Co. v. First Am. Title Ins. Co. of Napa*, 2020 WL 8614189, at *3 (N.D. Cal. Sept. 25, 2020) (citing cases).  Rule 4(f)(1) does not preclude Plaintiff's requested relief.

**B.     The Convention Does Not Apply When Addresses Are Unknown**

Article 1 of the Convention plainly states that it "***shall not apply where the address of the person to be served with the document is not known***."  Hague Service Convention, Art. 1, 20 U.S.T. 361; Mot. at 8.  Sea does not dispute this black-letter principle.  Instead, Sea attempts to undermine the reasonableness and diligence of Plaintiff's investigation into the Individual Defendants' residential addresses.  Opp. at 6-8.

- 5 -

4859-4503-9267.v1

As Sea acknowledges, the question is whether "Plaintiff has been unable to ascertain physical addresses for service after a ***reasonable effort***." *Word Ape, LLC v. Pawico*, 2021 WL 768293, at *2 (W.D. Wash. Jan. 4, 2021), *report and recommendation adopted*, 2021 WL 765005 (W.D. Wash. Feb. 26, 2021).[5] As explained by Plaintiff's investigator, "it is often difficult to locate residential addresses in countries outside of the United States," especially in Asia. Brandon Decl., ¶4; *see also* Supplemental Declaration of J. Marco Janoski Gray ("Suppl. Janoski Decl." filed concurrently herewith), ¶2. And despite his diligent search of online search engines, public records databases, SEC filings, news articles, licensing agencies, and social media platforms, Plaintiff's investigator was unable to locate residential addresses for any of the Individual Defendants. Brandon Decl., ¶¶5-6. Such efforts have regularly been approved by courts. *See Liberty Media Holdings, LLC v. Vinigay.com*, 2011 WL 810250, at *3-*4 (D. Ariz. Mar. 3, 2011) (plaintiff had "demonstrated that it has been unable to obtain a physical address for Defendants" where it "searched [a single online] database"); *Prediction Co. LLC v. Rajgarhia*, 2010 WL 1050307, at *2 (S.D.N.Y. Mar. 22, 2010) (plaintiff "met its burden, having actively, though unsuccessfully, attempted to obtain [defendant]'s address in a variety of ways").[6]

Tellingly, Defendant does not cite a single case where a court denied alternative service due to a plaintiff's purported lack of diligence in attempting to locate an address for service. Nor does Sea identify any additional sources Plaintiff could have searched or measures it could have taken short of hiring a third-party firm to conduct an investigation in Singapore. Hiring such a firm would cost anywhere from $3,700 to $30,000, and would likely require personal surveillance of the Individual Defendants – with no guarantee that they would actually be able to locate their residential addresses. Suppl. Janoski Decl., ¶2;

---

[5] "Reasonable diligence" is the standard (*see* Opp. at 6), and the case Defendant cites for the proposition that this entails "extensive and multi-dimensional efforts" (Opp. at 7) actually notes that courts have "repeatedly found reasonable diligence . . . where plaintiff made comparable, ***or less vigorous, efforts***" than those taken by the plaintiff there. *Kelly Toys Holdings, LLC. v. Top Dep't Store*, 2022 WL 3701216, at *7 (S.D.N.Y. Aug. 26, 2022).

[6] The "variety of ways" that the plaintiff in *Prediction* reasonably searched for addresses were all internet-based searches conducted by in-house personnel at the plaintiff's law firm. *See* Suppl. Janoski Decl., Ex. C, ¶¶9-10. Just like Plaintiff's investigation here.

4859-4503-9267.v1

*see also* Fed. R. Civ. P. 4(d)(1) (parties subject to service have a duty to "avoid unnecessary expenses of serving the summons").[7]  If Sea truly wanted to see service effectuated via the Hague Service Convention, it could have offered to identify the Individual Defendants' residential addresses (which are undoubtedly in its human resources files).  *Cf. Am. Express Co. v. Xiongwen Rui*, 2019 WL 1858101, at *3 (D. Ariz. Apr. 25, 2019) (defendant's address was known where he "agreed to provide his Chinese address").  As it stands, the Individual Defendants' addresses are not known to Plaintiff, and the Convention does not apply.

### C.    The Convention Does Not Apply to Service Via U.S. Counsel

Article 1 of the Hague Service Convention also states that the Convention only applies "where there is occasion to transmit a judicial or extrajudicial document ***for service abroad***."  Hague Service Convention, Art. 1, 20 U.S.T. 361; Mot. at 8-9.  As Defendant's own authority acknowledges, "the Convention doesn't apply if service can be completed without transmitting documents abroad."  *Facebook*, 480 F. Supp. 3d at 980; *see also Brown*, 285 F.R.D. at 564 ("If valid service occurs in the United States, therefore, the Convention is not implicated.").  Thus, the Hague Service Convention does not apply to Plaintiff's request to alternatively serve the Individual Defendants via the Company's U.S. counsel at Shearman & Sterling.  As one court recently explained:

> Even if the Hague Convention applied, service on the Executive Defendants through Skadden, a U.S.-based law firm, would not contravene it because the Hague Convention governs "only . . . transmittal [of documents] ***abroad*** that is required as a necessary part of service."  When executing service via U.S.-based corporate counsel, "no documents [will] be transmitted abroad."

*New Oriental*, 2023 WL 5466333, at *3.  Sea does not address this point in its opposition.

## IV.    RULE 4(f)(3) ALTERNATIVE SERVICE IS PROPER

The three methods of alternative service proposed by Plaintiff (email, social media, and the Company's U.S. counsel) are not barred by the Convention and all comport with

---

[7]    The investigative firm that Lead Counsel hired in the separate matter of *Graña y Montero* was able to locate residential addresses using the same methods that Plaintiff's investigator has already exhausted here (*i.e.*, "public records databases").  *See* ECF 37-1, Ex. 1, ¶4.  There, residential addresses were found on public sentencing documents available from a highly-publicized criminal proceeding against the defendants.  *Id.*, ¶7.

- 7 -

constitutional notions of due process.  Mot., §§IV.A, IV.B.  In its opposition, Defendant overemphasizes and stretches the language in *Water Splash, Inc. v. Menon* that the Hague Service Convention "'pre-empts *inconsistent* methods of service' *wherever it applies*."  581 U.S. 271, 273 (2017); *see* Opp. at 9-10.[8]  While Sea cites several cases in the minority position that construe a method of service as "prohibited" when it does not "fall into any category mentioned" in the Convention (Opp. at 9), those very same cases acknowledge the "split of authority on the issue" and that the Convention does not prohibit any methods of service when it does not apply.  *See Media Trademark & Licensing Ltd. v. COINGEEKLTD .COM*, 2021 WL 2895289, at *6 (D. Ariz. July 9, 2021) ("If the address Plaintiff has for the Registrants ultimately proves to be an incorrect address, and a true address remains unknown, the Hague Service Convention will not apply to this action."); *Facebook*, 480 F. Supp. 3d at 980 ("[B]y its terms, the Convention doesn't apply 'where the address of the person to be served with the document is not known.'").  As explained above, the Convention does not apply here in the first instance (*supra*, §§III.B, III.C.), and even so, Plaintiff's methods of service are not "inconsistent" with it.

**Email**.  Defendant wrongly claims that following *Water Splash*, "courts generally have held that the Convention does not permit service by email, particularly where the relevant country has objected to service by postal channels, as Singapore has done here."  Opp. at 10.  While it is true that "*some* courts have read the prohibition on service by postal channels to necessarily include email," there is "no authority [that] 'expressly provides or implies that email service is prohibited by international agreement' . . . . [and] *the majority of district courts in the Ninth Circuit [have held] that the Hague Convention does not*

---

[8]    *Water Splash* interpreted the text and context of the Hague Service Convention to arrive at the narrow holding that the "Convention does not prohibit service of process by mail."  581 U.S. at 271.  The decision did not bring about any change in the law of Rule 4(f)(3) alternative service – and does not mention Rule 4 at all.  Indeed, the language highlighted by Defendant is merely a recitation of the principle set forth decades prior in *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 698 (1988).  Thus, Rule 4(f)(3) authority predating *Water Splash* is still good law, and "*Water Splash* leaves the issue of whether e-mail service is authorized unaddressed."  *Reintegrative Therapy Ass'n, Inc. v. Kinitz*, 2021 WL 5140195, at *4 (S.D. Cal. Nov. 4, 2021).

- 8 -

***prohibit email service***." *Mittal*, 2022 WL 1000774, at \*2 (collecting cases); *Gen. Star*, 2020 WL 8614189, at \*3; Mot. at 9-10. Thus, even if the Individual Defendants' addresses were known and the Convention applied, it still would not bar alternative service to their email.

Defendant also suggests that the email addresses identified by Plaintiff do not satisfy due process because Plaintiff has not "previously communicated with" the Individual Defendants over those emails. *See* Opp. at 13. But the due process inquiry is not whether a plaintiff has previously communicated with the defendant via a mode of service, but rather whether the plaintiff has provided information "'indicating that the person to be served would be likely to receive the summons and complaint at the given email address.'" *Kumar v. Alhunaif*, 2023 WL 8527671, at \*4 (S.D.N.Y. Dec. 8, 2023). Plaintiff has done so here by running the identified email addresses through "email validation services" that confirm the "email addresses are still active and will not 'bounce back' as undeliverable to the sender." *Id.*; Brandon Decl., ¶¶8-12. Indeed, if these work emails were inaccurate or inauthentic, Sea would surely know, as they are email addresses directly under its control (\*@seagroup.com). Yet Sea makes no such claim – implicitly conceding their validity.

**Social Media**. Sea also argues that Plaintiff has not done enough to show "that the social media accounts actually belong to and are actively used by the defendants." Opp. at 13. Yet the only example Sea points to is Defendant Wang's Facebook profile dating to March 2014, while conveniently ignoring the more recent updates on her LinkedIn profile. *Id.* at 13-14. In any event, Plaintiff merely proposes service via these social media accounts as supplementary "backstop[s]" for its other proposed methods of service. *See* Mot. at 12.

**Sea's U.S. Counsel**. Sea relies on a single decision, *Gonzalez v. US Human Rights Network*, 512 F. Supp. 3d 944 (D. Ariz. 2021) to argue that domestic service on the Company's U.S.-based litigation counsel at Shearman & Sterling is somehow prohibited by the Hague Service Convention. *See* Opp. at 10-11. But as explained above (*supra*, §III.C.), Article 1 of the Convention makes clear that the Convention does not apply if service can be completed without transmitting documents abroad. Hague Service Convention, Art. 1, 20 U.S.T. 361; *Facebook*, 480 F. Supp. 3d at 980; *Brown*, 285 F.R.D. at 564. Service here via

- 9 -

4859-4503-9267.v1

U.S.-based corporate counsel at Shearman & Sterling "would not run afoul of the Hague Convention since . . . no documents would be transmitted abroad." *In GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 267 (S.D.N.Y. 2012).[9]  Neither Sea nor *Gonzalez* address this limitation in the plain text of Article 1, or the wealth of case law confirming that the Convention does not apply to or bar domestic service on U.S. counsel.[10]

Sea's final objection to service on Shearman & Sterling – *i.e.*, that the law firm does not "currently" represent the Individual Defendants (Opp. at 14) – is a similar red herring. As previously explained (Mot. at 12-13), courts around the country have regularly held that regardless of the terms of a retention agreement, "service on a high-level employee's corporate employer, or counsel for that employer, is 'reasonably calculated' to apprise the employee of the pendency of the action." *Stream SICAV v. Wang*, 989 F. Supp. 2d 264, 279 (S.D.N.Y. 2013) (citing cases).  "Due process does not require that the individuals served on behalf of foreign defendants have represented them or been authorized to accept service on their behalf," and "[e]ven if the [I]ndividual [D]efendants are not actively involved in directing the litigation, their close connection to [the Company] makes it all but certain that when [they] are served through the company's counsel or its agent, they will receive notice of the suit." *Brown*, 285 F.R.D. at 565-66; *New Oriental*, 2023 WL 5466333, at *3; *see also GLG*, 287 F.R.D. at 267 ("[I]t is impossible to imagine that a corporation's attorney would

---

[9]    *See also Brown*, 285 F.R.D. at 565 ("The Hague Convention does not prohibit authorizing plaintiffs to serve the foreign individual defendants by serving them through [the defendant company's] agent for service of process or its attorneys in the United States."); *New Oriental*, 2023 WL 5466333, at *3 ("Even if the Hague Convention applied, service on the Executive Defendants through Skadden, a U.S.-based law firm, would not contravene it because the Hague Convention governs 'only . . . transmittal [of documents] ***abroad***.'"); *Gen. Star*, 2020 WL 8614189, at *3 ("Relevant here, service on U.S.-based counsel is not barred by the Hague Convention."); *Juicero, Inc. v. Itaste Co.*, 2017 WL 3996196, at *2 (N.D. Cal. June 5, 2017) ("[S]ervice on Defendants' U.S.-based attorney is permissible because the Hague Convention does not bar this type of service.").

[10]    *Gonzalez* did not conduct any analysis (or even mention) of the text of Article 1 – which clarifies that the Convention does not apply to service transmitted within the United States.  And a review of the cases the court cited to claim that the Convention prohibits service on U.S. counsel all involved service being effectuated abroad – not transmission within the United States.  As explained above (*supra*, §III.C. & n.9), courts have overwhelmingly held that, in accordance with the text of Article 1, service effectuated within the United States via transmission to U.S. counsel is not prohibited by the Convention.

4859-4503-9267.v1

not advise the corporation's Chairman and Chief Executive Officer of the fact that service destined for that officer had been made upon its attorney."). Defendant's lone and inapposite case does nothing to undermine this weight of authority.[11]

## V.    DELAYING SERVICE PREJUDICES PLAINTIFF

The Court should grant Plaintiffs' Motion so that the Individual Defendants can either join in Sea's forthcoming motion to dismiss or raise any separate responses to the Complaint now at the pleading stage. The Individual Defendants are surely "aware of the pending action and demand[] service pursuant to the Hague Convention as a means of creating a procedural hurdle to timely litigation." *See Monolithic Power*, 2022 WL 1913613, at *7. As discussed above, successful service through the Convention can take months (or even years), and is not guaranteed to be properly effectuated at Sea's corporate headquarters. *Supra*, n.2. For this reason, "[c]ourts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)." *GLG*, 287 F.R.D. at 266; *DIRECTV, LLC v. WNK Assocs., Inc.*, 2023 WL 2025039, at *3 (E.D. Tex. Feb. 15, 2023) ("[S]ervice by alternative means in this case would avoid further significant delays and additional expenses incurred."). Prompt service via Rule 4(f)(3) would prevent the Individual Defendants from surreptitiously sitting on the sidelines awaiting resolution of Sea's motion to dismiss before appearing and filing separate motions to dismiss and further delaying this litigation. To promote judicial efficiency, the Court should grant the Motion.

DATED: February 8, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
TOR GRONBORG
J. MARCO JANOSKI GRAY
T. ALEX B. FOLKERTH
JESSICA E. ROBERTSON

s/ Marco Janoski
J. MARCO JANOSKI GRAY

---

[11]     In *Kurd v. Republic of Turkey*, 2018 WL 11248032, at *2 (D.D.C. Dec. 19, 2018) (*see* Opp. at 14), the court did not permit the plaintiffs to execute service on the defendants' criminal counsel because "as there [was] an open criminal indictment against Defendants, it [was], arguably, against their interests to come to the United States." This scenario is not present here.

- 11 -

655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
irobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ 85254
Telephone: 480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

- 12 -

4859-4503-9267.v1