ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
     & DOWD LLP
TOR GRONBORG (admitted *pro hac vice*)
J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Laborers District Council Construction Industry Pension Fund, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Sea Limited, et al., <br><br> Defendants. | No. CV-23-01455-PHX-DLR <br><br> Consolidated with <br> Case No. 23-01889-PHX-SRB <br><br> <u>CLASS ACTION</u> <br><br> PLAINTIFF'S OPPOSITION TO DEFENDANTS' REQUEST FOR JUDICIAL NOTICE |

4889-7707-4357.v1

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION .................................................................................................. 1

II.   LEGAL STANDARD ........................................................................................... 2

III.  ARGUMENT ........................................................................................................ 4

    A.   Defendants' Exs. 3, 5, 7, 17, and 21-23 Are Not Incorporated by Reference or Judicially Noticeable ................................................................ 4

        1.   Pre-Class Period Materials (Exs. 3, 5, and 7) ..................................... 5

        2.   Tencent Press Release (Ex. 17).......................................................... 7

        3.   Other Third-Party Press Releases (Exs. 21-23) ................................. 8

    B.   Defendants' Exs. 2 and 4 May Be Judicially Noticed for Their Contents, but Certain Facts Remain in Dispute ............................................ 8

    C.   Documents Referenced in the Complaint May Be Considered for Their Contents ..................................................................................... 10

IV.   CONCLUSION ................................................................................................... 11

- i -

# TABLE OF AUTHORITIES

**Page**

## CASES

*Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*,
  2022 WL 889058 (D. Ariz. Mar. 25, 2022) ...................................................... 4

*Aluminum Trailer Co. v. Sidi Spaces LLC*,
  2020 WL 4039095 (D. Ariz. July 17, 2020) ..................................................... 7

*Chan v. Orthologic Corp.*,
  1998 WL 1018624 (D. Ariz. Feb. 5, 1998) ...................................................... 8

*Di Donato v. Insys Therapeutics Inc.*,
  2017 WL 3268797 (D. Ariz. Aug. 1, 2017) ...................................................... 6

*Ferreira v. Funko Inc.*,
  2021 WL 8820650 (C.D. Cal. Oct. 22, 2021) ................................................... 6

*Hagins v. Knight-Swift Transp. Holdings Inc.*,
  2023 WL 3627478 (D. Ariz. May 24, 2023) ..................................................... 8

*Hsu v. Puma Biotechnology, Inc.*,
  213 F. Supp. 3d 1275 (C.D. Cal. 2016) ........................................................... 1

*In re Apple Inc. Sec. Litig.*,
  678 F. Supp. 3d 1147 (N.D. Cal. 2023) ........................................................... 5

*In re CV Therapeutics, Inc.*,
  2004 WL 1753251 (N.D. Cal. Aug. 5, 2004) ................................................... 6

*In re Omnicare, Inc. Sec. Litig.*,
  769 F.3d 455 (6th Cir. 2014) ........................................................................... 3

*In re Zillow Grp., Inc. Sec. Litig.*,
  2018 WL 4735711 (W.D. Wash. Oct. 2, 2018) ............................................... 10

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ................................................................. *passim*

*Lee v. City of L.A.*,
  250 F.3d 668 (9th Cir. 2001) ........................................................................ 3, 7

*Lowthorp v. Mesa Air Grp. Inc.*,
  2021 WL 3089118 (D. Ariz. July 22, 2021) ................................................. 2, 9

*Maiman v. Talbott*,
  2010 WL 11421950 (C.D. Cal. Aug. 9, 2010) .................................................. 3

*Patel v. Parnes*,
  253 F.R.D. 531 (C.D. Cal. 2008) ............................................................... 9, 11

4889-7707-4357.v1

**Page**

*Stern v. Charles Schwab & Co., Inc.*,
  2009 WL 3352408 (D. Ariz. Oct. 16, 2009)................................................................. 5

*Tawnsaura Grp., LLC v. Threshold Enters., Ltd.*,
  2012 WL 12892439 (C.D. Cal. Dec. 26, 2012) ........................................................... 8

*ThermoLife Int'l LLC v. Neogenis Labs Inc.*,
  2021 WL 1400818 (D. Ariz. Apr. 14, 2021) ............................................................ 3, 8

*TSC Indus., Inc. v. Northway, Inc.*,
  426 U.S. 438 (1976)..................................................................................................... 7

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ....................................................................................... 3

*Weston v. DocuSign, Inc.*,
  669 F. Supp. 3d 849 (N.D. Cal. 2023) ......................................................................... 8

**STATUTES, RULES AND REGULATIONS**

Federal Rules of Evidence
  Rule 201 .................................................................................................................*passim*
  Rule 201(b) ............................................................................................................... 3, 8
  Rule 12(b)(6)................................................................................................................. 4

4889-7707-4357.v1

Lead Plaintiff Laborers District Council Construction Industry Pension Fund ("Plaintiff") respectfully submits this opposition to Defendant Sea Limited's Notice of Incorporation by Reference and Request for Judicial Notice (ECF 43) ("RJN"), filed in connection with Defendant Sea Limited's Motion to Dismiss (ECF 41) ("MTD").[1]

## I.   INTRODUCTION

Defendants ask this Court to incorporate by reference or take judicial notice of 23 separate exhibits spanning ***over 1,000 pages*** in connection with their motion to dismiss the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 31) (the "Complaint"). As the Ninth Circuit has recognized, however, such efforts by defendants to present their own version of the facts at the pleading stage has become a "concerning pattern in securities cases like this one" that burdens the court and prejudices plaintiffs. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1281-82 (C.D. Cal. 2016) (criticizing "inappropriate efforts by defendants" bringing "motions to dismiss filed with hundreds of pages of attachments," as such "efforts to expand courts' consideration of extrinsic evidence at the motion to dismiss stage . . . diminish the ability of wronged plaintiffs to get their constitutionally-protected day in court"). While the Court may consider certain materials referenced in the Complaint for the limited purpose of acknowledging their contents, here Defendants have submitted a significant amount of extrinsic material in support of irrelevant or disputed factual arguments that are improper at the pleading stage.

First, Plaintiff objects to the Court's consideration of Exs. 3, 5, 7, 17, and 21-23, as these documents are not referenced in the Complaint and are not proper subjects of judicial notice under Federal Rule of Evidence 201.[2] These documents include a Sea press release

---

[1]   Sea Limited's ("Sea" or the "Company") motion to dismiss has been joined by co-defendants Forrest Xiaodong Li, Tony Tianyu Hou, Yanjun Wang, Gang Ye, and David Jingye Chen (collectively, the "Individual Defendants," and together with Sea, the "Defendants"). ECF 46. Accordingly, this Opposition addresses all Defendants. Unless otherwise noted, citations are omitted and emphasis is added.

[2]   All "Ex. __" or "Exs. __" references are to Defendants' exhibits attached to the Declaration of John C. Gray in Support of Defendant Sea Limited's Motion to Dismiss and Memorandum of Points and Authorities in Support Thereof (ECF 42).

- 1 -

4889-7707-4357.v1

and a third-party market research report that each predate the Class Period by more than three years (Exs. 3 and 7), a consolidated complaint filed against Sea in a separate litigation (Ex. 5), and earnings press releases issued by third parties (Exs. 17 and 21-23).  Notably, Defendants' request for judicial notice fails to identify *any* specific facts to be judicially noticed from the 273 pages contained in these exhibits.  *See Lowthorp v. Mesa Air Grp. Inc.*, 2021 WL 3089118, at *5 (D. Ariz. July 22, 2021) ("[T]his Court must 'consider – and identify – which fact or facts it is noticing.'").  Defendants' motion to dismiss, however, reveals that the purported "facts" for which these materials are cited are all subject to reasonable dispute – and form part of fact-dependent materiality arguments that cannot be resolved on a motion to dismiss.

Second, and contrary to Defendants' claim, Exs. 2 and 4 are not subject to the doctrine of incorporation by reference, as neither are referred to extensively or form the basis of any claims in the Complaint.  Nevertheless, because these documents were publicly filed by Sea with the SEC and bear some relevance to allegations in the Complaint, Plaintiff does not object to limited judicial notice of their contents.  With respect to the license agreement between Garena (Sea's gaming division) and Riot Games, Inc. (Ex. 2), however, Defendants cite the document for certain "facts" that remain in dispute.

Finally, pursuant to the doctrine of incorporation by reference, Plaintiff does not object to the Court considering the contents of Exs. 1, 6, 8-16, and 18-20.  While Defendants unnecessarily lard the record with hundreds of pages that are irrelevant to the Complaint and the pending motion to dismiss, Plaintiff has quoted or otherwise relied upon portions of these documents in the Complaint.  Still, the Court may not consider these exhibits for the truth of the matters asserted therein or to resolve factual disputes at this stage.

## II.     LEGAL STANDARD

As a general rule, courts ruling on a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion may not consider materials extrinsic to the complaint when assessing the sufficiency of the allegations contained in the pleading.  *Khoja*, 899 F.3d at 998.  The only two

- 2 -

4889-7707-4357.v1

exceptions are when extrinsic materials are either: (a) incorporated in the complaint; or (b) subject to judicial notice pursuant to Federal Rule of Evidence 201. *Id.*

Incorporation by reference is a "judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Id.* at 1002. The Court may properly consider a document under this doctrine "if the plaintiff refers ***extensively*** to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). The "mere mention of the existence of a document is insufficient to incorporate the contents of a document." *Id.*; *Khoja*, 899 F.3d at 1002. Moreover, it is "'improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.'" *ThermoLife Int'l LLC v. Neogenis Labs Inc.*, 2021 WL 1400818, at *3 (D. Ariz. Apr. 14, 2021) (quoting *Khoja*, 899 F.3d at 1003). Incorporation is also improper "if the document merely creates a defense to the well-pled allegations in the complaint"; otherwise, "defendants could use the doctrine to insert their own version of events into the complaint to defeat otherwise cognizable claims." *Khoja*, 899 F.3d at 1002.

Federal Rule of Evidence 201(b), on the other hand, permits a court to take judicial notice of a fact that is "not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "Courts may take judicial notice of '***undisputed*** matters of public record,' but generally may not take judicial notice of '***disputed*** facts stated in public records.'" *Maiman v. Talbott*, 2010 WL 11421950, at *7 (C.D. Cal. Aug. 9, 2010) (emphasis in original) (quoting *Lee v. City of L.A.*, 250 F.3d 668, 690 (9th Cir. 2001)); *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014) ("Under this standard, we could take notice only of the fact that Omnicare filed the Audit Committee Charter and what that filing said, but we could not consider the statements contained in the document for the truth of the matter asserted, even at the motion-to-dismiss stage.").

- 3 -

4889-7707-4357.v1

The limited application of these two doctrines is not relaxed with respect to Rule 12(b)(6) motions in cases, like this one, involving violations of the federal securities laws. *Khoja*, 899 F.3d at 998 (noting that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery" and the risk is "especially significant" in securities fraud matters). "'[I]f defendants are permitted to present their own version of the facts at the pleading stage – and district courts accept those facts as uncontroverted and true – it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently "plausible" claim for relief.'" *Advanced Reimbursement Sols. LLC v. Aetna Life Ins. Co.*, 2022 WL 889058, at *4 (D. Ariz. Mar. 25, 2022) (Rayes, J.) (quoting *Khoja*, 899 F.3d at 999).

## III. ARGUMENT

### A. Defendants' Exs. 3, 5, 7, 17, and 21-23 Are Not Incorporated by Reference or Judicially Noticeable

As an initial matter, Exs. 3, 5, 7, 17, and 21-23 are not referenced in the Complaint and do not form the basis of any of Plaintiff's claims.[3] Accordingly, the incorporation-by-reference doctrine does not apply. *Khoja*, 899 F.3d at 1002. Nor is judicial notice of these exhibits appropriate under Federal Rule of Evidence 201. Defendants impermissibly request that the Court judicially notice the truth of the information contained in Exs. 3, 5, 7, 17, and 21-23. Yet the "facts" for which they are cited are not adjudicative facts that bear on the motion to dismiss and/or are all subject to reasonable dispute. *See Khoja*, 899 F.3d at 999 ("Just because the document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth."). Accordingly, the Court should not consider Exs. 3, 5, 7, 17, and 21-23 – or any arguments based on them – in ruling on Defendants' motion to dismiss.

---

[3] Defendants erroneously claim that Ex. 17 was referenced in the Complaint at ¶¶49 and 70. *See* RJN at 6. Not so. The reference to the "evergreen games" quote in ¶¶49 and 70 makes clear that the Complaint was referring to Tencent's 1Q23 earnings call transcript (Ex. 16) – not its 1Q23 press release (Ex. 17).

4889-7707-4357.v1

**1.     Pre-Class Period Materials (Exs. 3, 5, and 7)**

Courts may decline to take judicial notice of documents that are "not relevant or helpful" to the issues raised in a pending motion. *In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147, 1153 (N.D. Cal. 2023); *see also Stern v. Charles Schwab & Co., Inc.*, 2009 WL 3352408, at *4 (D. Ariz. Oct. 16, 2009). Here, Defendants seek judicial notice of three documents for "facts" that pre-date the Class Period by ***more than three years*** in an attempt to downplay the materiality of the hit PC video game *League of Legends* on Garena's business.

First, Defendants seek judicial notice of ***Ex. 3***, Sea's press release for its 4Q18 financial results published in February 2019, to claim that "[a]s early as the ***fourth quarter of 2018***, still early in *Free Fire*'s growth, the Company disclosed that more than 85% of its digital entertainment revenue on an adjusted revenue basis came from mobile games, not PC games." MTD at 6. Of course, Defendants are forced to reach back to this one-off disclosure from 4Q18 earnings because Sea has not disclosed any data on the size of its mobile versus PC gaming revenues (or bookings, active users, or paying users) since – much less during the Class Period that starts in November 2022.

Second, Defendants seek judicial notice of ***Ex. 5***, a consolidated complaint in *In re Sea Limited Securities Litigation* filed in August 2022 in New York state court, to claim that Lead Counsel has "acknowledged" that "the results for Garena have been 'largely driven by *Free Fire*.'" MTD at 6. The paragraphs in the complaint that Defendants cite for this assertion, however, merely state that "as [Sea] disclosed in the 2020 Form 20-F, *Free Fire* was the most important factor in causing Sea's operating cash flows to turn from negative to positive ***in 2019***." Ex. 5, ¶36; *id.*, ¶46 ("*Free Fire* was almost singularly responsible for the turnaround in operating cash flow ***from 2018 to 2019***."). Nothing in the New York state court complaint – whose allegations were based on Sea's public disclosures – suggests that *Free Fire* was the ***only*** video game material to Garena's business at the start of the Class Period. Indeed, Sea's Form 20-F filed in 2022 admitted that *League of Legends* was one of its "most popular games," that it "substantially depend[s] on a small number of popular

- 5 -

games" (not just *Free Fire*), and that "[a]ny negative developments or occurrences to any of [its] key revenue-earning games" (not just *Free Fire*) "could lead to material decline or slower growth."  Complaint, ¶¶45, 81.

Third, Defendants seek judicial notice of ***Ex. 7***, a third-party market research report titled "e-Conomy SEA 2019" and published in ***October 2019***, to misleadingly argue that "Southeast Asia is a region well known for lower PC penetration and high mobile internet adoption" and that "'[t]here are 360 million Internet users in the region and 90% of them connect to the Internet primarily through their mobile phones.'"  MTD at 6 n.4.  In reality, however, a review of Ex. 7 reveals that the document does not say anything at all about "PC penetration" in Southeast Asia.  And market research statistics from 2019 on "Internet users" and "mobile internet access" in Southeast Asia do not provide any insight into PC or mobile ***gaming activity*** in the region.  If any market research data is relevant to the claims at issue, it would concern "Gaming in Southeast Asia" in 2023, which shows that, *inter alia*: (i) the "vast majority (82%) of the Southeast Asia's urban online population are gamers"; (ii) "***69% play games on PC***" (compared to 80% on mobile); (iii) "***SEA's top-played franchise on PC is League of Legends***"; and (iv) "[i]t is notoriously challenging to convert mobile players to mobile payers."  Pl.'s Ex. A.[4]

In sum, none of these documents were issued to the market during the Class Period, and none of their contents have any actual bearing on the issues presented by Defendants' motion to dismiss.  *See In re CV Therapeutics, Inc.*, 2004 WL 1753251, at *12 (N.D. Cal. Aug. 5, 2004) (declining to take judicial notice of "two press releases outside the class period [that] are not referenced in the complaint"); *Ferreira v. Funko Inc.*, 2021 WL 8820650, at *11 (C.D. Cal. Oct. 22, 2021) (declining to take judicial notice of the defendant company's Form 10-K "as it was issued outside the Class Period, it was not relevant to the Court's analysis"); *Di Donato v. Insys Therapeutics Inc.*, 2017 WL 3268797, at *8 (D. Ariz. Aug. 1,

---

[4]    "Pl's. Exs." refer to Plaintiff's exhibits attached to the Declaration of J. Marco Janoski Gray in Support of Plaintiff's Opposition to Defendants' Request for Judicial Notice, filed concurrently herewith.

4889-7707-4357.v1

2017) (declining to take judicial notice of the "substantive content" of outside court filings). Ultimately, the question of materiality – *i.e.*, the argument for which these documents are offered – "requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the **trier of fact**." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976). Judicial notice of Exs. 3, 5, and 7 is not proper.

### 2.    Tencent Press Release (Ex. 17)

Judicial notice is only appropriate as to "'**undisputed** matters.'" *Aluminum Trailer Co. v. Sidi Spaces LLC*, 2020 WL 4039095, at *3 (D. Ariz. July 17, 2020) (Rayes, J.) (emphasis in original) (quoting *Lee*, 250 F.3d at 690). Defendants request judicial notice of Ex. 17, a press release issued by Tencent for their 1Q23 financial results, to present facts outside the Complaint and claim that "Tencent explicitly attributed the growth in its gaming sector to 'the strong performance of recently launched GODDESS OF VICTORY: NIKKE and Triple Match 3D, as well as the robust growth of VALORANT.'"    MTD at 14. Defendants offer this argument in an attempt to counter the allegation in the Complaint that "Tencent reported that international gaming revenues increased significantly in 1Q23, which they attributed to increased performance in 'evergreen games' like League of Legends." Complaint, ¶49.  Consistent with that allegation, however, Tencent's 1Q23 earnings call transcript – *i.e.*, Ex. 16, which is referenced in the Complaint – attributed the double-digit growth in its international game revenue to the "extend[ed] popularity of established franchise[s]" and "strengthened performance through key titles." Ex. 16 at 5-6.  When an analyst later asked about the "number of the old franchise title [that] regained strong popularity and also achieve[d] a record growth of receipts during the quarter," Tencent management specifically identified *League of Legends* among the key titles or "evergreen games" that "performed well in the first quarter." *Id.* at 10.

Ultimately, the consideration of Ex. 17 for Defendants' version of Tencent's disclosures only "encourages a weighing of factual disputes; a process that is improper on a

4889-7707-4357.v1

motion to dismiss." *Chan v. Orthologic Corp.*, 1998 WL 1018624, at *7 (D. Ariz. Feb. 5, 1998).  Thus, judicial notice of Ex. 17 is inappropriate.

### 3.  Other Third-Party Press Releases (Exs. 21-23)

There is also no legitimate reason for the Court to take judicial notice of documents that were authored by third parties and not referenced in the Complaint.  *Tawnsaura Grp., LLC v. Threshold Enters., Ltd.*, 2012 WL 12892439, at *5 (C.D. Cal. Dec. 26, 2012) (declining to take "judicial notice of the truth of matter contained in a third-party's SEC filings"); *Weston v. DocuSign, Inc.*, 669 F. Supp. 3d 849, 872 (N.D. Cal. 2023) (declining to take judicial notice of third-parties' SEC filings as they "are not relevant" to the court's analysis).  Here, Defendants seek judicial notice of three SEC filings by self-selected companies to claim that Sea's decision to withhold GMV metrics for two consecutive quarters (while GMV was stagnating and in decline) was "'in line with global peers.'" MTD at 10.  These exhibits, however, are an impermissible attempt by Defendants to insert their "'own version of events into the complaint.'" *ThermoLife Int'l LLC v. Neogenis Labs Inc.*, 2021 WL 1400818, at *3 (D. Ariz. Apr. 14, 2021).  As alleged, "Shopee's more comparable peers like Shopify continued to disclose quarterly GMV growth numbers, and Defendants repeatedly portrayed Sea as still in the early stages of its growth phase, rendering global e-commerce platforms like Amazon and Alibaba inapposite comparators."  Complaint, ¶78(c).  Thus, because Plaintiff's well-pled allegations govern and contradict Defendant's version of the facts, the "facts" for which Defendant cites Exs. 21-23 are "subject to reasonable dispute" and cannot be judicially noticed.  Fed. R. Evid. 201(b); *see also Hagins v. Knight-Swift Transp. Holdings Inc.*, 2023 WL 3627478, at *3 (D. Ariz. May 24, 2023) ("since Defendant urges the Court to review the documents to address factual disputes, it is inappropriate for the Court to take notice of those documents").

### B.  Defendants' Exs. 2 and 4 May Be Judicially Noticed for Their Contents, but Certain Facts Remain in Dispute

Neither Ex. 2 nor Ex. 4 are referred to (or form the basis of any claims) in the Complaint so as to warrant incorporation by reference.  Indeed, Defendants themselves state

- 8 -

that Ex. 2 – the license agreement entered into between Garena and Riot Games in January 2010 – is distinct from the November 2018 master license agreement between Garena and Tencent referred to in the Complaint.  MTD at 5 n.3.  And while Defendants claim that references to the 4Q21 earnings press release in Ex. 4 can be found in the "Complaint at ¶¶ 51, 35" (RJN at 4), in reality those paragraphs contain graphs with select metrics over a broader multi-year period.  There is nothing in those paragraphs (or anywhere else in the Complaint) that refers "extensively" to the 4Q21 earnings press release in Ex. 4,[5] and the "'mere mention of the existence of a document is insufficient to incorporate the contents of a document.'"  *Khoja*, 899 F.3d at 1002.

Nevertheless, because Exs. 2 and 4 were publicly filed with the SEC and bear some relevance to allegations in the Complaint, Plaintiff does not oppose the Court taking judicial notice for the limited purpose of considering the ***contents*** of these documents – but not the truth of the matters asserted therein.  *See Lowthorp*, 2021 WL 3089118, at *5 (taking judicial notice of the fact "that there was an investor call" and that the speakers made the statements included in the transcript," but "not tak[ing] judicial notice of the substance of the statements because those facts may be subject to reasonable dispute"); *Patel v. Parnes*, 253 F.R.D. 531, 546 (C.D. Cal. 2008) ("It is appropriate for the court to take judicial notice of the content of the SEC Forms . . . [but] [t]he truth of the content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice under Rule 201.").  This is especially true with respect to the license agreement in Ex. 2, as Defendants' motion to dismiss cites this document for two disputed facts.

First, Defendants cite to Ex. 2 to claim that, pursuant to the license agreement, "Riot granted Garena a license to offer the PC game League of Legends in ***six Southeast Asian markets and Taiwan*** for a specified term in exchange for a license fee and ongoing royalty payments to Riot."  MTD at 5.  Riot's November 9, 2022 press release announcing the termination of the license agreement, however, identified ***eight markets*** where it would take

---

[5]    There is a single brief reference to the 4Q21 earnings ***conference call*** at ¶37, but not to any of its substance.

4889-7707-4357.v1

over the operation and publishing of *League of Legends* from Garena – Philippines, Malaysia, Singapore, Taiwan, Hong Kong, Macau, Thailand, and Vietnam.[6]  Pl.'s Ex. B; Complaint, ¶40.

Second, Defendants also cite Ex. 2 to claim that "[s]ince 2017, it was publicly disclosed and known that the License Agreement would expire on December 31, 2022." MTD at 5.  Not so.  Riot and Garena had previously renewed and extended their agreement on several occasions, so until a party publicly announced that it was terminating the agreement – like Riot did on November 9, 2022 – it was not known that Garena would actually be losing the license to *League of Legends*.  In any event, the timing of the termination of the license agreement is ultimately irrelevant to Plaintiff's claims, as Plaintiff's Garena-related claims allege that Defendants misled investors about "***the effect*** of losing the hit online video game *League of Legends*" (Complaint, ¶3) – not the timing.

Thus, because the two facts for which Defendants cite Ex. 2 are subject to reasonable dispute, they are not proper subjects of judicial notice under Federal Rule of Evidence 201.

### C.    Documents Referenced in the Complaint May Be Considered for Their Contents

Pursuant to the doctrine of incorporation by reference, Plaintiff does not object to the Court's consideration of Exs. 1, 6, 8-15, and 18-20.  These documents were referenced in the Complaint (or form the basis of certain allegations) and Plaintiff does not dispute their authenticity.  Accordingly, judicial notice for the purpose of confirming the contents of the referenced SEC filings and earnings calls is also appropriate.

While Plaintiff does not oppose consideration of these exhibits for their contents, it is still improper for this Court to consider them for the truth of the matters asserted therein.  *See Khoja*, 899 F.3d at 1003 ("[I]t is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint."); *In re Zillow Grp., Inc. Sec. Litig.*, 2018 WL 4735711, at *3 (W.D. Wash. Oct. 2, 2018) ("While

---

[6]    Riot's list of eight markets does not even include the additional market of Indonesia, which is listed as a Garena market in the license agreement (Ex. 2 at 59, Amendment No. 2, §1.66) and whose *League of Legends* server merged with Singapore in 2019.

- 10 -

4889-7707-4357.v1

the Court can take judicial notice of the fact that a document was filed with the SEC, and of the contents of such a filing, '[t]he truth of the content, and the inferences properly drawn from them . . . is not a proper subject of judicial notice under Rule 201.'") (quoting *Patel*, 253 F.R.D. at 546).

## IV.    CONCLUSION

For the reasons stated herein, the Court should decline to consider Defendants' Exs. 3, 5, 7, 17, and 21-23 in deciding Defendants' motion to dismiss.

DATED: April 19, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
TOR GRONBORG
J. MARCO JANOSKI GRAY
T. ALEX B. FOLKERTH
JESSICA E. ROBERTSON


                    s/ Marco Janoski
            J. MARCO JANOSKI GRAY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
irobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

4889-7707-4357.v1