ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
    & DOWD LLP
TOR GRONBORG (admitted *pro hac vice*)
J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
jrobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| Laborers District Council Construction Industry Pension Fund, et al., | ) ) | No. CV-23-01455-PHX-DLR |
|---|---|---|
| Plaintiffs, | ) ) ) | Consolidated with Case No. 23-01889-PHX-SRB |
| vs. | ) ) | CLASS ACTION |
| Sea Limited, et al., | ) ) ) | PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S AUGUST 7, 2024 ORDER |
| Defendants. | ) ) ) ) | |

4869-9924-9376.v1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND ................................................................................................ 2

    A.    The Complaint's Shopee Allegations ............................................................ 3

    B.    The Court's Motion to Dismiss Order and the Shopee Statements Remaining at Issue ...................................................................................... 4

III. LEGAL STANDARD ........................................................................................ 6

IV. ARGUMENT ..................................................................................................... 7

    A.    Defendants Recycle Arguments the Court Has Already Rejected ............... 7

    B.    The Court Correctly Found that the Complaint Adequately Alleges that the "Trend" Statement in the Form 20-F Was Misleading .................... 8

    C.    The Supreme Court's Recent Decision in *Macquarie* Has No Bearing on the Form 20-F "Trend" Statement ............................................ 11

    D.    The Court Correctly Found that the Complaint Adequately Alleges that the "Seasonality Trends" Statements on the 1Q23 Earnings Call Were Misleading ........................................................................................ 13

V. CONCLUSION ................................................................................................. 15

- i -

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Berson v. Applied Signal Techn., Inc.*,
527 F.3d 982 (9th Cir. 2008) ...................................................................................... 14

*Borteanu v. Nikola Corp.*,
2023 WL 11017679 (D. Ariz. Dec. 8, 2023) ................................................................. 9

*City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*,
2024 WL 235183 (N.D. Cal. Jan. 22, 2024) ............................................................... 11

*Crossfirst Bank v. Vieste SPE LLC*,
2021 WL 2517855 (D. Ariz. Apr. 16, 2021) .................................................................. 6

*Davis v. Voorhees*,
2022 WL 3285453 (D. Ariz. Aug. 11, 2022) ................................................................. 8

*Defenders of Wildlife v. Browner*,
909 F. Supp. 1342 (D. Ariz. 1995) ................................................................................ 6

*Freudenberg v. E\*Trade Fin. Corp.*,
712 F. Supp. 2d 171 (S.D.N.Y. 2010) ......................................................................... 14

*Friends of Yosemite Valley v. Kempthorne*,
520 F.3d 1024 (9th Cir. 2008) ..................................................................................... 13

*In re Lyft Inc. Sec. Litig.*,
484 F. Supp. 3d 758 (N.D. Cal. 2020) ........................................................................... 9

*In re Plantronics, Inc. Sec. Litig.*,
2022 WL 17974627 (N.D. Cal. Nov. 7, 2022) ....................................................... 6, 11

*In re Questcor Sec. Litig.*,
2013 WL 5486762 (C.D. Cal. Oct. 1, 2013) ................................................................ 14

*In re Restoration Robotics, Inc. Sec. Litig.*,
417 F. Supp. 3d 1242 (N.D. Cal. 2019) ......................................................................... 9

*In re Vaxart, Inc. Sec. Litig.*,
576 F. Supp. 3d 663 (N.D. Cal. 2021) ........................................................................... 9

*Kona Enters., Inc. v. Est. of Bishop*,
229 F.3d 877 (9th Cir. 2000) ......................................................................................... 6

4869-9924-9376.v1

**Page**

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ................................................................................. 2, 7, 11, 12

*Mallen v. Alphatec Holdings, Inc.*,
861 F. Supp. 2d 1111 (S.D. Cal. 2012) ........................................................ 11

*Moab Partners, L.P. v. Macquarie Infrastructure Corp.*,
2024 WL 3867669 (2d Cir. Aug. 19, 2024) .................................................. 12

*Mogan v. Airbnb, Inc.*,
2024 WL 3738480 (9th Cir. Aug. 9, 2024) ..................................................... 7

*Mosco v. Motricity, Inc.*,
649 F. App'x 526 (9th Cir. 2016) ................................................................... 11

*Rubin v. Trimble*,
1997 WL 227956 (N.D. Cal. Apr. 28, 1997) .................................................. 11

*SEC v. Mozilo*,
2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) ................................................. 14

*Steckman v. Hart Brewing, Inc.*
143 F.3d 1293 (9th Cir. 1998) ....................................................................... 10

*Sundaram v. Freshworks Inc.*,
2023 WL 6390622 (N.D. Cal. Sept. 28, 2023) ................................................ 9

*Turner v. Ryan*,
2019 WL 5188818 (D. Ariz. Oct. 15, 2019) .................................................... 7

*Waesche v. Embry-Riddle Aeronautical Univ. Inc.*,
2023 WL 6847138 (D. Ariz. Oct. 17, 2023) .................................................... 8

*Wood v. Maricopa Cnty. Special Health Care Dist.*,
2018 WL 10128042 (D. Ariz. Jan. 24, 2018) .................................................. 7

*York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.*,
2024 WL 1327247 (N.D. Cal. Mar. 27, 2024) ............................................... 14

**STATUTES, RULES, AND REGULATIONS**

Local Rules of Civil Procedure
Rule 7.2(g) ........................................................................................................ 7
Rule 7.2(g)(1) .................................................................................................... 1

4869-9924-9376.v1

Lead Plaintiff Laborers District Council Construction Industry Pension Fund ("Plaintiff") respectfully submits this opposition to Defendants' Motion for Partial Reconsideration of the Court's August 7, 2024 Order (ECF 58) ("Motion" or "MFR").[1]

## I.   INTRODUCTION

On August 7, 2024, the Court issued a well-reasoned, 31-page order granting in part and denying in part Defendants' motion to dismiss. ECF 55 ("MTD Order"). In that order, the Court denied Defendants' motion to dismiss with respect to all the alleged misstatements in the Complaint concerning the Company's Garena (gaming) business segment, but granted the motion with respect to certain alleged misstatements concerning its Shopee (e-commerce) segment. Disappointed with this result, Defendants now seek reconsideration of the Court's order as to the remaining Shopee statements. But Defendants' disappointment with the Court's ruling does not provide proper grounds for reconsideration – rather, Defendants merely ask the Court to retread ground it has already covered.

Indeed, as an initial and dispositive matter, Defendants' Motion should be denied for recycling the same arguments already considered and rejected by the Court. The crux of Defendants' Motion is that the Shopee statements in the April 6, 2023 Form 20-F and May 16, 2023 1Q23[2] earnings call could not be misleading because "Defendants in fact disclosed Shopee's 'downward trending GMV'" on both occasions. MFR at 1. But Defendants already made this infirm argument in both their motion to dismiss (ECF 41 at 10, 15) ("MTD") and reply brief (ECF 51 at 8) ("MTD Reply"). And Local Rule of Civil Procedure 7.2(g)(1) states that "*[n]o motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the*

---

[1]   "Defendants" refers collectively to Sea Limited ("Sea" or the "Company"), Forrest Xiaodong Li, Tony Tianyu Hou, Yanjun Wang, Gang Ye, and David Jingye Chen. All standalone "¶__" and "¶¶__" references are to the Consolidated Complaint for Violations of the Federal Securities Laws (ECF 31) (the "Complaint"). Emphasis is added and citations are omitted unless otherwise stated.

[2]   "_Q2_" is used to denote each first, second, third, and fourth fiscal quarter of each full fiscal year ("FY"). Sea's fiscal year runs concurrent with the calendar year. Thus, "1Q23" refers to the first quarter of 2023, "4Q22" refers to the fourth quarter of 2022, and "FY22" refers to full year 2022, and so forth.

- 1 -

*motion that resulted in the Order.  Failure to comply with this subsection may be grounds for denial of the motion*."

Even if the Court were to allow Defendants a second bite at the apple and re-examine the Shopee statements, the Court made no "manifest error" warranting reconsideration.

***First***, the Court did not err when it found that the Complaint adequately alleges that the "trend" statement in the April 6, 2023 Form 20-F was misleading.  Defendants claim that their disclosure of quarterly GMV figures ***for 2022*** (showing a single quarter of decline in 4Q22) sufficiently disclosed a trend, but ignore their failure to disclose the continuing multi-quarter GMV decline ongoing ***in 2023*** tied to the Company's drastic pivot to profitability, and the trend's reasonably likely material adverse effect on the Company's financial condition in 2023.  *See* ¶83(b).

***Second***, the Supreme Court's recent decision in *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257 (2024) has no bearing on the Court's analysis of the Form 20-F statement.  *Macquarie* held that a securities fraud claim under Rule 10b-5(b) cannot lie in the absence of an alleged false or misleading statement (*i.e.*, when a plaintiff pleads a "pure omission").  Here, Defendants are alleged to have made affirmative, misleading statements.

***Third***, the Court did not err in finding that the Complaint adequately alleges that Shopee statements in the May 16, 2023 1Q23 earnings call were materially misleading.  Defendants' statement that GMV was "in line" with the previous year's "seasonality trends" – while refusing to disclose an actual GMV figure – misled investors by obscuring the amount and causes of the ongoing GMV decline, which was significant and driven by the Company's pivot to profitability, not by seasonal features of Shopee's business.  *See* ¶90(b).

For these reasons, and as further explained below, the Motion should be denied.

## II.    BACKGROUND

The Complaint alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 arising from Defendants' false and misleading statements concerning the Company's Garena and Shopee business lines.  ¶¶1-3.  Specifically, the Complaint alleges that between

- 2 -

4869-9924-9376.v1

November 15, 2022 and August 14, 2023 (the "Class Period") Defendants misled investors about: "(a) the effect of losing the hit online video game *League of Legends* on Garena's financial results and user metrics; and (b) the sustainability of the Company's publicized 'pivot to profitability' and the effect that Sea's drastic cost-cutting measures would have on Shopee's growth and market share." *Id*. Defendants' Motion targets only the Shopee statements that remain at issue following the Court's MTD Order.

### A. The Complaint's Shopee Allegations

Shopee is Sea's e-commerce platform, and one of its key reported metrics is gross merchandise value ("GMV"), which measures the value of all orders on Shopee's marketplace in a given period. ¶¶25, 32-33. Prior to the Class Period, Shopee leveraged significant sales and marketing expenses to quickly grow its GMV and become the largest e-commerce platform in Southeast Asia – regularly undercutting competitors by providing customers with free delivery, zero commissions, and cashback offerings. ¶¶50, 52. However, as Sea slashed hundreds of millions of dollars in quarterly sales and marketing expenses in 2022 as part of a Company-wide "ruthless cost-cutting drive" to turn a profit, Shopee's GMV began to decelerate and then decline – prompting Defendants to abruptly stop disclosing the metric altogether in the first two quarters of 2023:



¶37-38, 50-54. Starting in November 2022 with Sea's 3Q22 quarterly reporting, Defendants issued a series of misleading statements that downplayed the effect that this cost-cutting

- 3 -

effort (*i.e.*, the "pivot to profitability") had on Shopee's GMV and market share.  Complaint, §§IV.E., V.; *see also* ECF 47, §IV.A.2. (Plaintiff's opposition to the MTD explaining the false and misleading nature of Defendants' Shopee statements).

Contrary to the misleading impression created by these statements, Defendants' drastic cost cutting had a material adverse effect on Shopee's GMV – causing it to stagnate and decline.  In fact, Shopee could not meaningfully grow and compete with other e-commerce platforms in Southeast Asia without operating at a loss due to substantial reinvestments in sales and marketing expenses (*e.g.*, free shipping offerings).  Defendants essentially admitted that this was the case on August 15, 2023 (2Q23 earnings), when they surprisingly announced a pivot in strategy away from profits back to "reaccelerate[ing] investments in growth" for Shopee – which they acknowledged included a "ramp up [in] investments in free shipping again to capture more of the growth opportunities" that would "impact [their] bottom line and may result in losses for Shopee and [the] group as a whole in certain periods."  ¶¶61, 126-127.  And on November 14, 2023 (3Q23 earnings), when Defendants revealed the full impact of this reversal and reported net losses for both Shopee and Sea, Defendants acknowledged that these reinvestments in growth were necessitated by "intensified competition in [their] markets."  ¶¶62, 130.  These disclosures precipitated substantial declines in the price of Sea's ADSs – harming Plaintiff and other members of the putative Class.  ¶¶126-131.

**B.    The Court's Motion to Dismiss Order and the Shopee Statements Remaining at Issue**

On August 7, 2024, the Court issued a 31-page order granting in part and denying in part Defendants' motion to dismiss the Complaint.  MTD Order.  The Court denied Defendants' motion to dismiss with respect to all of the alleged misstatements in the Complaint concerning Garena.  *Id.* at 15, 29.  While the Court granted the motion with respect to certain alleged misstatements concerning Shopee,[3] it denied Defendants' motion to

---

[3]    Specifically, the Court dismissed the Shopee statements: (1) "on the 3Q22 earnings call (November 15, 2022) (Doc. 31, ¶70(b-c)) and the 4Q22 earnings call (March 7, 2023) (¶78(b-e))"; and (2) "on the 1Q23 earnings call (May 16, 2023), in which Defendants

- 4 -

dismiss with respect to the Shopee statements that remain at issue in the case: (1) the "trend" statement in the April 6, 2023 FY22 Form 20-F (¶83(b)); and (2) the "seasonality trends" and "shipping subsidies" statements from the May 16, 2023 1Q23 earnings call (¶90(b)-(c)). *Id.* at 21-24, 31.  These statements, discussed below, are the subject of Defendants' Motion.

**FY22 Form 20-F**.  On April 6, 2023, Sea filed with the SEC its annual report on Form 20-F for FY22, which represented, *inter alia*, that Defendants were not aware of any undisclosed negative trends that would materially affect the business:

> Other than as disclosed elsewhere in this annual report, we are not aware of any trends, uncertainties, demands, commitments or events for the year ended December 31, 2022 that are reasonably likely to have a material adverse effect on our net revenues, income, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial conditions.

¶82; *see also* ¶83(b) (explaining why this statement was materially misleading).

**1Q23 Earnings Call**.  On May 16, 2023, Sea issued a press release and convened a conference call to discuss the Company's 1Q23 earnings.  During the Q&A portion of the call, when repeatedly questioned about Shopee's current GMV trend, Wang claimed that the GMV trend was "in line" with mere "seasonality trends" observed the prior year:

> In terms of the Shopee growth, while we don't disclose GMV quarter-on-quarter, generally overall, the trend has been consistent in terms of seasonality trends we are seeing quarter-on-quarter with last the year's first quarter.  And if we look at more details at the different markets, Indonesia showed a relatively strong performance in Asia and Thailand and Malaysia also showed quarter-on-quarter growth.
>
> Of course, we also see – continue to see tough year-on-year comps for the market.  And then the rest of the markets are in line with the overall seasonality trends we are observing for Asia as what we saw last year.
>
> *        *        *
>
> . . . In terms of GMV, as I mentioned, we don't discuss quarter-on-quarter GMV numbers specifically.  And what I mentioned though was that the trend we're observing, the general trend Q-on-Q, observed for this quarter versus last quarter is in line as what we observed in Q1 last year versus Q4 2021.

¶87; *see also* ¶90(b) (explaining why these statements were materially misleading).

---

remarked on Sea's 'profitable long-term growth' and its ability to 'execute growth and manag[e] bottom line at the same time' (¶90(a))."  MTD Order at 31.

- 5 -

Also on the call, when asked about Shopee's strategy to defend its market share from TikTok, Wang claimed that shipping subsidies were "overemphasized" and were not the Company's "focus of investment":

> But long-term focus of investment, as I shared, it's going to be in all the infrastructure, as I mentioned.  When people think about investments, sometimes people oversight – overemphasized subsidies shipping subsidies.  I don't think that's a fair characterization of our focus of investment.  Rather, our focus will be on investing in the long-term infrastructure that will provide better services to our customers and the lower the cost of the ecosystem that will significantly expand the profitable TAM of e-commerce in our region.  And also build much stronger competitive moat in the long run for us.

¶88; *see also* ¶90(c) (explaining why these statements were materially misleading).[4]

## III.    LEGAL STANDARD

"Motions for reconsideration should be granted only in rare circumstances." *Crossfirst Bank v. Vieste SPE LLC*, 2021 WL 2517855, at *1 (D. Ariz. Apr. 16, 2021) (Rayes, J.) (quoting *Defenders of Wildlife v. Browner*, 909 F. Supp. 1342, 1351 (D. Ariz. 1995)).  Indeed, reconsideration is "an 'extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources.'"  *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000).  Reconsideration is inappropriate "absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence."  LR Civ. 7.2(g).  Thus, mere disagreement or disappointment with an opinion is not a proper basis for reconsideration. *Crossfirst Bank*, 2021 WL 2517855, at *1 ("Mere disagreement with a previous order is an insufficient basis for reconsideration."); *see also In re Plantronics, Inc. Sec. Litig.*, 2022 WL 17974627, at *8 (N.D. Cal. Nov. 7, 2022) ("Defendants appear to disagree with the inferences that the Court has drawn from Defendants' alleged public statements, but any such disagreement is not a proper ground for reconsideration.").

---

[4]    Defendants omit any mention of this "shipping subsidies" statement (¶88) in their Motion, and wrongly state that "[o]nly two Shopee-related alleged misrepresentations or omissions survived the [MTD] Order."  MFR at 4.  But the Court was clear that the only Shopee statements from the 1Q23 earnings call that were dismissed were those "in which Defendants remarked on Sea's 'profitable long-term growth' and its ability to 'execute growth and manag[e] bottom line at the same time' (¶90(a))."  MTD Order at 31.

- 6 -

Local Rule of Civil Procedure 7.2(g) also provides that "[n]o motion for reconsideration of an Order may repeat any oral or written argument made by the movant in support of or in opposition to the motion that resulted in the Order," and that "***[f]ailure to comply with this subsection may be grounds for denial of the motion***." Thus, a "'motion for reconsideration is not an appropriate method for an unsuccessful party to rehash arguments previously presented.'" *Turner v. Ryan*, 2019 WL 5188818, at *1 (D. Ariz. Oct. 15, 2019); *Wood v. Maricopa Cnty. Special Health Care Dist.*, 2018 WL 10128042, at *1 (D. Ariz. Jan. 24, 2018) ("Nor may a motion repeat legal arguments that the relevant order already addressed."); *Mogan v. Airbnb, Inc.*, 2024 WL 3738480, at *4 (9th Cir. Aug. 9, 2024) (affirming denial of motion for reconsideration where movant "improperly sought to reargue many of the same arguments earlier made in opposition to the [opening] Motion").

## IV.    ARGUMENT

Defendants fail to carry their heavy burden of showing "manifest error" in the Court's MTD Order. Nor is their fundamental mischaracterization of the Supreme Court's recent decision in *Macquarie* a valid basis for reconsideration. Rather, unhappy with the outcome of their motion to dismiss, Defendants raise meritless arguments that the Court has already considered and rejected. Their Motion should be denied.

### A.    Defendants Recycle Arguments the Court Has Already Rejected

Defendants' entire Motion hinges on the argument that the Shopee statements in the FY22 Form 20-F and 1Q23 earnings call could not be misleading because "Defendants in fact disclosed Shopee's 'downward trending GMV,' including (1) specific, quarterly GMV numbers in the Form 20-F . . . and (2) the further decline in GMV in the first quarter of 2023 during the earnings call for that quarter." MFR at 1; *see also id.*, §§I.A., I.C. But Defendants already made these arguments in their motion to dismiss papers. MTD at 15-16 ("Sea disclosed with its fourth quarter 2022 results a 7.7% year-over-year increase in GMV on a constant currency basis . . . [and] even though Sea did not disclose quarterly GMV in the following quarter, Sea disclosed that it observed a decline quarter-over-quarter in line with the same seasonality trends as the prior year."); MTD Reply at 8 ("Sea disclosed what

- 7 -

Plaintiff calls a 'significant[]' decline in GMV in the fourth quarter for 2022 (*id.*, ¶57), and another decrease in the first quarter of 2023 . . . foreclose[ing] any claim that (i) Sea omitted the risk of declining or stagnating growth due to its strategy shift.").

The Court's MTD Order already considered and rejected Defendants' arguments. That Defendants have resorted to rehashing these arguments again violates the Local Rules of Civil Procedure and is alone a sufficient basis to deny their Motion. *See Waesche v. Embry-Riddle Aeronautical Univ. Inc.*, 2023 WL 6847138, at \*1 (D. Ariz. Oct. 17, 2023) (Rayes, J.) (denying motion for reconsideration because "Plaintiff merely repeats arguments that the Court previously considered and rejected"); *Davis v. Voorhees*, 2022 WL 3285453, at \*1 (D. Ariz. Aug. 11, 2022) (Rayes, J.) (same).

**B.    The Court Correctly Found that the Complaint Adequately Alleges that the "Trend" Statement in the Form 20-F Was Misleading**

Sea's Form 20-F for FY22 represented that Defendants were:

[N]ot aware of any trends, uncertainties, demands, commitments or events for the year ended December 31, 2022 that are reasonably likely to have a material adverse effect on [Sea's] net revenues, income, profitability, liquidity or capital resources, or that would cause reported financial information not necessarily to be indicative of future operating results or financial conditions.

¶82.  As explained in the Complaint, this statement was materially misleading because:

Contrary to Defendants' statements in ¶82 that they were not aware of any undisclosed negative trends that would materially affect the business, Defendants were aware of ***Shopee's ongoing trend of declining GMV tied to declining sales and marketing spend***. *Supra*, ¶¶32, 51, 55, 57, 60.  At the time these statements were issued: (1) Shopee had already suffered a deceleration in GMV with the Company's smallest ever quarter-to-quarter GMV increase in 3Q22, as the Company scaled back on shipping subsidies and other marketing expenses (*supra*, ¶¶32, 51, 55); (2) Shopee subsequently suffered the largest GMV decline in its history with further significant declines in sales and market expense in 4Q22 (*supra*, ¶¶32, 51, 57); and (3) ***1Q23 was already over, so Defendants*** – who "huddl[ed] every month to discuss cashflow projections, along with their regular weekly meetings" and closely monitored Shopee growth in every market it operated (*infra*, ¶¶101, 107) – ***were already aware that GMV declined further in 1Q23 in lockstep with further declines in sales and marketing expense***. *Supra*, ¶¶32, 51, 60. Thus, this trend began no later than 3Q22 and was ongoing when Defendants filed Sea's FY22 Form 20-F; Defendants were aware of this ongoing trend and its "reasonably likely" materially adverse effect on Sea's business; yet Defendants failed to disclose this trend in Sea's FY22 Form 20-F.

- 8 -

4869-9924-9376.v1

¶83(b).  The Court correctly held that "Plaintiff's allegations support a plausible inference that at the time Defendants filed Sea's Form 20-F, Shopee was experiencing an 'ongoing trend of declining GMV,'" and that "by failing to disclose this trend – one that was reasonably likely to affect Sea's financial condition – Defendants misled investors."  MTD Order at 22-23.

Defendants argue that the Court committed manifest error in coming to this conclusion because the Form 20-F "report[ed] Shopee's GMV for each quarter of 2022, thereby disclosing the downward trend in that metric."  MFR at 6.  But Defendants cannot credibly argue that the disclosure of GMV figures showing a *one-quarter decline* from 3Q22 to 4Q22 adequately disclosed "Shopee's *ongoing trend* of declining GMV *tied to declining sales and marketing spend*" which had continued into 1Q23.  ¶83(b).[5]

First, Defendants' argument that the reported 4Q22 GMV figure adequately disclosed the "trend" does not even attempt to address Plaintiff's allegations of the larger trend of Shopee's GMV declines tied to the Company's "pivot to profitability" – *i.e.*, the loss of business to competitors due to Sea rolling back sales and marketing expenses (such as free shipping offerings).  Nor could they claim that they disclosed this connection to investors.  Just one month prior to filing the Form 20-F, Defendants claimed with their 4Q22 earnings that they were "able to cut sales and marketing by more than 50% while sustaining GMV already itself," and that they were able to "execute both growth and profitability."  ¶¶75-76.  It is in this context that the misleading nature of the "trend" statement must be examined.  *See Borteanu v. Nikola Corp.*, 2023 WL 11017679, at *6 (D. Ariz. Dec. 8, 2023) ("Courts must consider the full context in which a statement was made when determining whether the statement is materially false or misleading."); *In re Vaxart, Inc. Sec. Litig.*, 576 F. Supp. 3d

---

[5]  As the Court noted in its motion to dismiss order, a "'trend'" is defined as an "'observed pattern that accurately reflects *persistent conditions* of the particular registrant's business environment.'"  MTD Order at 22 (quoting *In re Restoration Robotics, Inc. Sec. Litig.*, 417 F. Supp. 3d 1242, 1263 (N.D. Cal. 2019)).  While "the case law is far from settled regarding the length of time necessary to constitute a 'trend,'" the question is best served as "a 'factual inquiry' that is resolved at a later stage of a case."  *Sundaram v. Freshworks Inc.*, 2023 WL 6390622, at *7 (N.D. Cal. Sept. 28, 2023); *In re Lyft Inc. Sec. Litig.*, 484 F. Supp. 3d 758, 776 n.7 (N.D. Cal. 2020).

- 9 -

4869-9924-9376.v1

663, 670 (N.D. Cal. 2021) ("Statements are evaluated through a fisheye, not a telescope. Words, after all, cannot be viewed 'in complete isolation' but must instead be 'read in light of all the information then available to the market' to decide if they 'conveyed a false or misleading impression.'").

Second, Defendants' disclosure of the 4Q22 GMV figure did nothing to warn investors of the further GMV declines experienced in 1Q23 that had already occurred at the time the Form 20-F was filed, or their reasonably likely materially adverse effect on the Company's financial condition. Defendants tacitly acknowledge as much in their repeated attempts to re-write the Form 20-F to argue that "the relevant statement from the Form 20-F was expressly limited to 'the year ended December 31, 2022.'" MFR at 7; *see also id.* at 2 ("nothing about the statement referenced what might happen in future periods"); *id.* at 10 (arguing that the statement was limited to "information on trends 'for the year ended December 31, 2022'"). But these assertions ignore that the Form 20-F statement explicitly speaks to trends "for the year ended December 31, 2022 *that are reasonably likely to have a material adverse effect*" on Sea's financial condition or "that would cause reported financial information *not necessarily to be indicative of future operating results or financial conditions*." ¶82. As *Steckman v. Hart Brewing, Inc.* explained with respect to identical language in Item 303, the "'reasonably expects' language . . . helps distinguish statements of *known facts relating to the future, which are mandatory*, from forward-looking statements, which are not required." 143 F.3d 1293, 1297 (9th Cir. 1998). And as explained in the Complaint, when Defendants filed the Form 20-F they "were already aware that GMV declined further in 1Q23 in lockstep with further declines in sales and marketing expense" – but misleadingly omitted any disclosure of this trend or its reasonably likely materially adverse effect on the Company's financial condition. ¶83(b).

Ultimately, the problem is not simply that Defendants failed to disclose an ongoing downward GMV trend caused by their drastic cost cuts, but rather that they affirmatively claimed in the Form 20-F that there were no trends that were reasonably likely to have a material adverse effect on Sea's financial condition going forward into 1Q23 and beyond.

- 10 -

As the Court correctly held, Defendants' "fail[ure] to disclose this trend – one that was reasonably likely to affect Sea's financial condition" despite Sea's statement to the contrary, is exactly how "Defendants misled investors." MTD Order at 23. Defendants may "disagree with the inferences that the Court has drawn from Defendants' alleged public statements, but any such disagreement is not a proper ground for reconsideration." *Plantronics*, 2022 WL 17974627, at *8.[6]

### C. The Supreme Court's Recent Decision in *Macquarie* Has No Bearing on the Form 20-F "Trend" Statement

Defendants' argument that Sea's affirmative statement in its Form 20-F is inactionable under *Macquarie* is incorrect. 601 U.S. 257. First, *Macquarie*, which addresses securities fraud claims based on Item 303 of SEC Regulation S-K, is inapposite because Plaintiff does not plead an Item 303 theory. Rather, Plaintiff alleges that Sea's "trend" statement in the Form 20-F (¶82) was misleading because Defendants were aware of – yet failed to disclose – Shopee's ongoing trend of declining GMV tied to sales and marketing cuts and that trend's reasonably likely materially adverse effect on Sea's business. ¶83(b). Given the statement's similarity to the language of Item 303, it makes sense that the Court looked to case law analyzing Item 303 "as guidance" in upholding Plaintiff's allegations, but that is the extent of Item 303's relevance to the instant case. MTD Order at 21-23. Thus, *Macquarie* is facially inapplicable.

Even reading the decision broadly, however, Defendants' contention that *Macquarie* bars liability for their statement relies on a fundamental mischaracterization of the Supreme

---

[6] Defendants' cases involving inadequately pleaded "trend" statements are inapposite. MFR at 7-8; *City of Hollywood Firefighters Pension Fund v. Atlassian Corp.*, 2024 WL 235183,at *10-*11 (N.D. Cal. Jan. 22, 2024) (plaintiffs "fail[ed] to allege that the defendants knew of *any* trend" that existed prior to publication of annual report); *Mallen v. Alphatec Holdings, Inc.*, 861 F. Supp. 2d 1111, 1127 (S.D. Cal. 2012) (alleged omitted trend was discussed and disclosed in SEC filing); *Rubin v. Trimble*, 1997 WL 227956, at *13 (N.D. Cal. Apr. 28, 1997) (same); *Mosco v. Motricity, Inc.*, 649 F. App'x 526, 528 (9th Cir. 2016) (same). Here, Plaintiff properly alleges the existence of an undisclosed trend that Defendants were aware of yet concealed (*i.e.*, multi-quarter declines in GMV), the trend's reasonably likely effect on the Company's financial condition, and that Defendants misled the market about the cause of the trend as well (*i.e.*, the Company's drastic cuts in sales and marketing spending). ¶83(b).

- 11 -

4869-9924-9376.v1

Court's holding. *Macquarie* bars securities fraud claims based on the complete ***absence*** of a statement – so-called "pure omissions." *See Macquarie*, 601 U.S. at 263. The question presented in that case was "whether the failure to disclose information required by Item 303 can support a private action under Rule 10b-5(b), ***even if the failure does not render any 'statements made' misleading***." *Id.* at 260; *see also id.* at 262 ("The courts of appeals disagree on whether a failure to make a disclosure required by Item 303 can support a private claim under §10(b) and Rule 10b-5(b) ***in the absence of an otherwise-misleading statement***."). The Supreme Court held that "Rule 10b-5(b) does not proscribe pure omissions," and explained that "the Rule requires identifying affirmative assertions (*i.e.*, 'statements made') before determining if other facts are needed to make those statements 'not misleading.'" *Id.* at 264.

Here, Plaintiff alleges, and the Court held, that Sea made a misleading ***statement***. ¶¶82, 83(b); MTD Order at 21-23. Defendants acknowledge as much. MFR at 2 ("This ***statement*** pursuant to Item 5D is also inactionable as a matter of law under [*Macquarie*]."). Thus, *Macquarie*'s holding that "pure omissions" are not actionable is irrelevant because Plaintiff does not plead a pure omission. *See Moab Partners, L.P. v. Macquarie Infrastructure Corp.*, 2024 WL 3867669, at *2 (2d Cir. Aug. 19, 2024) (holding, on remand, that the Supreme Court's opinion "did not disturb our previous analysis" regarding alleged misleading ***statements***). Rather, consistent with the Supreme Court's guidance in *Macquarie*, Plaintiff "identif[ied] [an] affirmative assertion[]" and properly pled "other facts . . . needed to make [that] statement[] 'not misleading.'" 601 U.S. at 264; *see also* MTD Order at 22 (correctly characterizing Plaintiff's allegations as a "claim of misrepresentation").

Defendants' argument that "under *Macquarie*, Plaintiff also fails to adequately plead a 'half-truth' claim" is similarly incorrect. MFR at 9. Again, *Macquarie* has nothing to do with securities fraud claims based on misleading statements. *See Macquarie*, 601 U.S. at 266 n.2 ("The Court does not opine on issues that are . . . tangential to the question presented [such as] . . . when a statement is misleading as a half-truth . . . ."). Moreover, Sea's

- 12 -

statement in the Form 20-F wasn't even half true – the statement represented that Defendants were not aware of any trends that were reasonably likely to have a materially adverse effect on Sea's business. But, as the Court held, Plaintiff sufficiently alleged that Defendants were aware of an extant downward trend in Shopee's GMV that was reasonably likely to affect Sea's financial condition. MTD Order at 23; *see also supra*, §IV.B.

**D.    The Court Correctly Found that the Complaint Adequately Alleges that the "Seasonality Trends" Statements on the 1Q23 Earnings Call Were Misleading**

Sea's 1Q23 earnings results marked the first time in its history that the Company refused to disclose Shopee's GMV. Yet when analysts repeatedly asked for insight on the GMV trend on the 1Q23 earnings call, Wang evasively claimed that GMV was merely "in line" with "seasonality trends" observed the prior year between 4Q22 and 1Q23 (which had been a decline). ¶87.[7]  As set forth in the Complaint, these statements were materially misleading:

> Defendants' statements in ¶¶85, 87 refusing to disclose GMV growth trends and stating that Shopee's GMV trends were "in line with the overall seasonality trends" were materially misleading, as they ***omitted Shopee's ongoing trend of declining GMV tied to declining sales and marketing spend***. *Supra*, ¶¶32, 51. At the time these statements were issued: (1) Shopee had already reported a deceleration in GMV with the Company's smallest ever quarter-to-quarter GMV increase in 3Q22, as the Company scaled back on shipping subsidies and other marketing expenses (*supra*, ¶¶32, 51, 55); (2) Shopee subsequently reported the largest GMV decline in its history with further significant declines in sales and market expense in 4Q22 (*supra*, ¶¶32, 51, 57); and (3) ***Shopee had experienced further undisclosed declines in GMV in 1Q23 alongside further reductions in sales and marketing expense*** (*supra*, ¶¶32, 51, 60), so Defendants – who "huddl[ed] every month to discuss cashflow projections, along with their regular weekly meetings" and closely monitored Shopee growth and operating costs in every market it operated (*infra*, ¶¶101, 107) – were already aware of this ongoing trend and ***knew that the trend was materially related to their reduced investment in marketing and sales, rendering their benign "seasonality trends" explanation misleading***.

[7]    Moreover, even though Sea was in the midst of reinstating free shipping and other promotional offerings in response to TikTok's e-commerce expansion in Southeast Asia (¶90(c)), Wang falsely claimed that such shipping subsidies were "overemphasized" by the market and were not a focus of the Company's competitive investments. ¶88. Defendants did not target or discuss this "shipping subsidies" statement (¶88) in either their motion to dismiss papers or the instant Motion. Having failed to raise any challenge to this statement on multiple occasions now (MTD, MTD Reply, MFR), any further argument in favor of dismissal is waived. *See Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) ("Arguments not raised by a party in its opening brief are deemed waived.").

- 13 -

¶90(b).  The Court correctly held that these "statements regarding Shopee's GMV trends remaining 'consistent in terms of seasonality' are actionable," as "Plaintiff plausibly asserts that in refusing to disclose GMV and by stating that GMV trends were 'in line with the overall seasonality trends,' Defendants painted a misleading picture of Shopee's growth – one that improperly concealed Shopee's ongoing GMV decline."  MTD Order at 24.

Defendants now argue that the Court committed manifest error because "Defendants did disclose that GMV continued to decline in 1Q23."  MFR at 10.  But again, ***Defendants did not disclose any GMV figures for 1Q23***.  While a discerning investor could extrapolate from Wang's "in line" statements that there had been an indeterminate decline in GMV in the quarter, there was no way for any investor or market participant to calculate the actual size of the decline.  Thus, these statements concealed the true state of the ongoing GMV decline.  *See SEC v. Mozilo*, 2009 WL 3807124, at *11 (C.D. Cal. Nov. 3, 2009) ("[S]ome of the disclosures relied on by Defendants may have themselves included misleading statements that concealed the true extent of the poor quality of Countrywide's loans.").  Moreover, blaming mere "seasonality trends" as the cause of an (undisclosed) decline in GMV was also materially misleading, as Defendants knew the declining GMV trend was actually "materially related to their reduced investment in marketing and sales."  ¶90(b); *see York Cnty. on Behalf of Cnty. of York Ret. Fund v. HP Inc.*, 2024 WL 1327247, at *18 (N.D. Cal. Mar. 27, 2024) (finding that "Defendants' repeated references to currency and competitive pricing as the primary causes of [their pricing and margin] decline were materially misleading," as "[c]urrency rates and pricing decisions by competitors are temporary problems outside of HP's control" whereas the primary driver of declining margins "was within Defendants' control"); *In re Questcor Sec. Litig.*, 2013 WL 5486762, at *14 (C.D. Cal. Oct. 1, 2013) (finding statements misleading where "Defendants concealed the true causes of the increased sales and financial success").

Once Defendants chose to comment on Shopee's 1Q23 GMV trends, they were "bound to do so in a manner that wouldn't mislead investors."  *Berson v. Applied Signal Techn., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008); *see also Freudenberg v. E\*Trade Fin. Corp.*,

- 14 -

4869-9924-9376.v1

712 F. Supp. 2d 171, 180 (S.D.N.Y. 2010) (explaining that once a company "'puts the topic of the cause of its financial success at issue, then it is obligated to disclose information concerning the source of its success, since reasonable investors would find that such information would significantly alter the mix of available information'"). Defendants failed to do so. Thus, the Court did not err in finding these statements misleading.

**V.     CONCLUSION**

For the reasons set forth above, Defendants' Motion should be denied.

DATED: September 5, 2024

ROBBINS GELLER RUDMAN
  & DOWD LLP
TOR GRONBORG
J. MARCO JANOSKI GRAY
T. ALEX B. FOLKERTH
JESSICA E. ROBERTSON

s/ Marco Janoski
J. MARCO JANOSKI GRAY

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
irobertson@rgrdlaw.com

Lead Counsel for Lead Plaintiff

ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

4869-9924-9376.v1