1  ZIMMERMAN REED, LLP
   HART L. ROBINOVITCH
2  14648 N. Scottsdale Road, Suite 130
   Scottsdale, AZ  85254
3  Telephone:  480/348-6400
   480/348-6415 (fax)
4  hart.robinovitch@zimmreed.com

5  Local Counsel for Lead Plaintiff

6  ROBBINS GELLER RUDMAN
        & DOWD LLP
7  THEODORE J. PINTAR (admitted *pro hac vice*)
   TOR GRONBORG (admitted *pro hac vice*)
8  J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
   T. ALEX B. FOLKERTH (admitted *pro hac vice*)
9  JESSICA E. ROBERTSON (admitted *pro hac vice*)
   EVELYN SANCHEZ GONZALEZ (admitted *pro hac vice*)
10 655 West Broadway, Suite 1900
   San Diego, CA  92101
11 Telephone:  619/231-1058
   619/231-7423 (fax)
12 tedp@rgrdlaw.com
   torg@rgrdlaw.com
13 mjanoski@rgrdlaw.com
   afolkerth@rgrdlaw.com
14 jrobertson@rgrdlaw.com
   egonzalez@rgrdlaw.com
15
   Lead Counsel for Lead Plaintiff
16

17              UNITED STATES DISTRICT COURT

18                   DISTRICT OF ARIZONA

19 Laborers District Council Construction    )   No. CV-23-01455-PHX-DLR
   Industry Pension Fund, et al.,            )
20                                            )   Consolidated with
                            Plaintiffs,       )   Case No. 23-01889-PHX-SRB
21                                            )
        vs.                                   )   CLASS ACTION
22                                            )
   Sea Limited, et al.,                       )   LEAD PLAINTIFF'S UNOPPOSED
23                                            )   MOTION FOR PRELIMINARY
                            Defendants.        )   APPROVAL OF CLASS ACTION
24                                            )   SETTLEMENT AND MEMORANDUM
                                              )   OF LAW IN SUPPORT THEREOF
25 _____  )

26

27

28

4900-1127-8365.v1

1

# TABLE OF CONTENTS

2
**Page**

3   I.      INTRODUCTION ................................................................................................. 1

4   II.     OVERVIEW OF THE LITIGATION ................................................................... 2

5   III.    THE SETTLEMENT TERMS ............................................................................. 4

6   IV.     THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL .................... 5

7           A.    Plaintiff and Lead Counsel Have Adequately Represented the Class .......... 6

8           B.    The Settlement Was Negotiated at Arm's Length ........................................ 6

9           C.    The Settlement Provides Significant Relief for the Class ............................. 7

10          D.    The Plan of Allocation Treats Class Members Equitably ............................ 9

11          E.    The Remaining Factors Support Preliminary Approval ............................. 10

12  V.      THE CLASS SHOULD BE CERTIFIED .......................................................... 12

13          A.    The Class Satisfies Rule 23(a) .................................................................. 12

14          B.    The Class Satisfies Rule 23(b)(3) .............................................................. 14

15  VI.     THE PROPOSED NOTICE PROGRAM IS APPROPRIATE ............................ 15

16  VII.    PROPOSED SETTLEMENT SCHEDULE ....................................................... 16

17  VIII.   CONCLUSION ................................................................................................. 17

18

19

20

21

22

23

24

25

26

27

28

4900-1127-8365.v1

1

# TABLE OF AUTHORITIES

2

**Page**

3

**CASES**

4

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................... 15

5

*Avila v. LifeLock Inc.*,
   2020 WL 4362394 (D. Ariz. July 27, 2020)......................................... 8, 16

6

7

*Borteanu v. Nikola Corp.*,
   2025 WL 33147 (D. Ariz. Jan. 6, 2025) ...................................... 12, 13, 15

8

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ..................................................................... 11

9

10

*Ciuffitelli v. Deloitte & Touche LLP*,
   2019 WL 1441634 (D. Or. Mar. 19, 2019)............................................... 10

11

*Fleming v. Impax Laby's*,
   2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) .................................. 13, 15

12

13

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .......................................................... *passim*

14

*Hatamian v. Advanced Micro Devices, Inc.*,
   2016 WL 1042502 (N.D. Cal. Mar. 16, 2016).................................. 12, 14

15

*Hayes v. Magnachip Semiconductor Corp.*,
   2016 WL 7406418 (N.D. Cal. Dec. 22, 2016)......................................... 12

16

17

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)..................................... 7, 9

18

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...................................................................... 5

19

20

*Homyk v. ChemoCentryx, Inc.*,
   2024 WL 1141699 (N.D. Cal. Mar. 6, 2024)........................................... 15

21

*In re Atmel Corp. Derivative Litig.*,
   2010 WL 9525643 (N.D. Cal. Mar. 31, 2010)........................................... 7

22

23

*In re Cooper Cos. Inc. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009)...................................................... 12, 15

24

*In re Crocs, Inc. Sec. Litig.*,
   306 F.R.D. 672 (D. Colo. 2014) ............................................................... 11

25

26

*In re Intuitive Surgical Sec. Litig.*,
   2016 WL 7425926 (N.D. Cal. Dec. 22, 2016)......................................... 14

27

28

**Page**

*In re MGM Mirage Sec. Litig.*,
    708 F. App'x 894 (9th Cir. 2017) ................................................................. 16

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................... 11

*In re Online DVD-Rental Antitrust Litig.*,
    779 F.3d 934 (9th Cir. 2015) .......................................................................... 9

*In re THQ, Inc. Sec. Litig.*,
    2002 WL 1832145 (C.D. Cal. Mar. 22, 2002) ........................................... 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ....................................... 7, 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    2019 WL 2077847 (N.D. Cal. May 10, 2019) .......................................... 6, 7

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
    720 F. Supp. 1379 (D. Ariz. 1989),
    *aff'd sub nom. Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ..................................................................... 11

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ................................................................ 12

*Juvera v. Salcido*,
    2013 WL 6628039 (D. Ariz. Dec. 17, 2013) .............................................. 5

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017),
    *aff'd* 881 F.3d 1111 (9th Cir. 2018) ............................................................ 8

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
    2018 WL 11471777 (C.D. Cal. Nov. 2, 2018) ........................................... 11

*Mauss v. NuVasive Inc.*,
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ............................................. 10

*Mendoza v. Hyundai Motor Co.*,
    2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .............................................. 10

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 (C.D. Cal. July 25, 2019) .............................................. 6

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ........................................................ 11

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ...................................................................................... 16

- iii -

**Page**

*Norris v. Mazzola,*
   2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ............................................................ 11

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ...................................................................... 13, 14

*Redwen v. Sino Clean Energy, Inc.,*
   2013 WL 12129279 (C.D. Cal. Mar. 13, 2013) ........................................................ 7

*Rodriguez v. W. Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ........................................................................ 15

*Salazar v. Midwest Servicing Grp., Inc.,*
   2018 WL 3031503 (C.D. Cal. June 4, 2018) .......................................................... 7

*SEB Inv. Mgmt. AB v. Symantec Corp.,*
   335 F.R.D. 276 (N.D. Cal. 2020) ............................................................... 13, 14

*Smilovits v. First Solar, Inc.,*
   295 F.R.D. 423 (D. Ariz. 2013) ........................................................... 13, 14, 15

*Vataj v. Johnson,*
   2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ...................................................... 15

*Vinh Nguyen v. Radient Pharms. Corp.,*
   2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................................... 9

*West v. Circle K Stores, Inc.,*
   2006 WL 1652598 (E.D. Cal. June 13, 2006) ...................................................... 10

*Wolin v. Jaguar Land Rover N. Am., LLC,*
   617 F.3d 1168 (9th Cir. 2010) ................................................................ 14, 15

*Wong v. Arlo Techs., Inc.,*
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ...................................................... 11

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78j(b) .............................................................................................. 2, 15
   §78t(a) .............................................................................................. 2, 15
   §78u-4(a)(4) ........................................................................................ 4, 9

4900-1127-8365.v1

1

2                                                                                    **Page**

3

Federal Rules of Civil Procedure

4     Rule 23 ............................................................................................. 16
      Rule 23(a) .................................................................................. 12, 15
5     Rule 23(a)(1) ................................................................................. 12
      Rule 23(a)(2) ................................................................................. 13
6     Rule 23(a)(3) ................................................................................. 13
      Rule 23(a)(4) ................................................................................. 14
7     Rule 23(b)(3) ...................................................................... 12, 14, 15
      Rule 23(c)(2)(B) ............................................................................ 15
8     Rule 23(e) ........................................................................................ 5
      Rule 23(e)(1)(B) .............................................................................. 5
9     Rule 23(e)(2) ................................................................... 5, 6, 10, 11
      Rule 23(e)(2)(A) ....................................................................... 6, 14
10    Rule 23(e)(2)(B) .............................................................................. 6
      Rule 23(e)(2)(C)(i) ........................................................................... 7
11    Rule 23(e)(2)(C)(ii) .......................................................................... 8
      Rule 23(e)(2)(C)(iii) ......................................................................... 8
12    Rule 23(e)(2)(C)(iv) ......................................................................... 9
      Rule 23(e)(2)(D) .............................................................................. 9
13    Rule 23(e)(3) ................................................................................... 9
      Rule 23(g) ..................................................................................... 15
14    Rule 23(h)(1) ................................................................................. 16

15    **SECONDARY AUTHORITIES**

16    Edward Flores and Svetlana Starykh,
      *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
17       (NERA Jan. 22, 2025)................................................................ 10

18

19

20

21

22

23

24

25

26

27

28

4900-1127-8365.v1

## MOTION

Lead Plaintiff Laborers District Council Construction Industry Pension Fund ("Plaintiff" or the "Fund"), on behalf of itself and the proposed Class (defined below), hereby moves for preliminary approval of a $46 million cash settlement resolving all claims in this Litigation (the "Settlement"), as set forth in the Stipulation of Settlement dated March 14, 2025 (the "Stipulation," filed herewith).[1] Plaintiff respectfully requests that the Court enter the proposed Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") filed herewith: (1) preliminarily approving the proposed Settlement as set forth in the Stipulation; (2) preliminarily certifying the Class; (3) appointing JND Legal Administration as Claims Administrator; (4) approving the proposed form and manner of notice to the Class; and (5) setting deadlines for (a) disseminating notice, (b) the submission of proofs of claim, objections, and/or requests for exclusion from the Class, and (c) the filing of Plaintiff's motion for final approval of the Settlement and Lead Counsel's application for attorneys' fees and expenses and award to Plaintiff. This Motion is made on the grounds that the Settlement meets the standards for preliminary approval because it is likely this Court will be able to find that the Settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure ("Rule") 23(e), and that the Class should be certified under Rules 23(a) and 23(b)(3). In support of this Motion, Plaintiff submits the below Memorandum of Law, along with the concurrently-filed Declaration of J. Marco Janoski Gray and Declaration of Luiggy Segura ("Segura Decl."). Defendants support preliminary approval and do not oppose Plaintiff's motion.

## MEMORANDUM OF LAW

### I.    INTRODUCTION

Plaintiff respectfully submits for the Court's approval the Settling Parties' proposed $46 million cash Settlement of this securities class action. The Settlement is the product of a

---

[1]    Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation, which, along with its exhibits, is attached as Exhibit 1 to the Declaration of J. Marco Janoski Gray, submitted herewith.

"mediator's proposal" that resulted from good-faith, arm's-length negotiations between experienced counsel under the supervision of Gregory P. Lindstrom of Phillips ADR Enterprises, a mediator with extensive experience in complex securities litigation.

The Settlement is not only fair, reasonable, and adequate; it is a tremendous result for the putative class. Accordingly, Plaintiff requests preliminary approval of the Settlement and certification for settlement purposes for those Persons who purchased or otherwise acquired Sea Limited's publicly-traded American Depositary Shares during the period from November 15, 2022 through August 14, 2023, both dates inclusive (the "Class"). Plaintiff further seeks approval of JND Legal Administration as Claims Administrator and approval of the Notice, Proof of Claim and Release, Summary Notice, and Postcard Notice, appended to the Stipulation as Exhibits A-1 through A-4, respectively.

## II.    OVERVIEW OF THE LITIGATION

Plaintiff asserts claims on behalf of a putative class of investors in Sea Limited ("Sea" or the "Company") under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"). Sea is a Singapore-based internet company that provides digital entertainment, e-commerce, and financial services through its three respective business lines: Garena, Shopee, and SeaMoney. The operative Consolidated Complaint for Violations of the Federal Securities Laws (ECF 31) (the "Complaint") alleges that Defendants made materially false and misleading statements regarding its Garena (digital entertainment) and Shopee (e-commerce) business segments throughout the Class Period.

The initial complaint was filed on July 21, 2023. ECF 1. On September 8, 2023, a related complaint was filed in this District. *Mirvaydulloev v. Sea Ltd., et al.*, No. CV-23-01889, ECF 1 (D. Ariz.). On October 6, 2023, the Court consolidated the cases, appointed the Fund as Lead Plaintiff, and approved its selection of Lead Counsel. ECF 23.

On October 23, 2023, Sea moved to transfer this case from the District of Arizona to the Southern District of New York. ECF 28. The Court denied Sea's motion to transfer on May 31, 2024. ECF 54.

1    Plaintiff filed the operative Complaint on December 22, 2023.  ECF 31.  On

2  January 18, 2024, Plaintiff moved for alternative service of the Complaint on the Individual

3  Defendants.  ECF 34.  On February 20, 2024, Sea filed its motion to dismiss.  ECF 41.  On

4  February 23, 2024, the Court granted Plaintiff's motion for alternative service on the

5  Individual Defendants.  ECF 44.  Plaintiff served the Individual Defendants electronically on

6  February 28, 2024 (ECF 45), and on March 18, 2024, the Individual Defendants joined Sea's

7  pending motion to dismiss (ECF 46).

8    On August 7, 2024, the Court issued an order denying in part and granting in part

9  Defendants' motion to dismiss.  ECF 55.  Specifically, the Court denied Defendants' motion

10  to dismiss with respect to all of the alleged misstatements in the Complaint concerning

11  Garena.  *Id.* at 15, 29.  It granted the motion, however, with respect to certain alleged

12  misstatements concerning Shopee, holding these statements were not actionably misleading.

13  *Id.* at 19-21, 24.  On August 21, 2024, Defendants filed a motion for reconsideration on the

14  remaining Shopee-related claims upheld by the Court.  ECF 58.

15    On August 23, 2024, the Court granted the parties' motion to set the case schedule.

16  ECF 60.  The parties then diligently moved forward with discovery beginning with the

17  exchange of initial disclosures on September 17, 2024, and the filing of a Rule 26(f) joint

18  discovery plan on October 1, 2024 (ECF 66).  Defendants filed an answer on October 18,

19  2024 (ECF 67), and propounded document requests on Plaintiff on September 24, 2024.

20  Plaintiff served Defendants with document requests and interrogatories on September 20,

21  2024, and requests for admission on October 25, 2024.  The parties remained engaged in

22  negotiations on the scope of their respective discovery requests, along with the terms of a

23  stipulated protective order and ESI protocol, when settlement talks began.

24    During the fourth quarter of 2024, the parties commenced the mediation process with

25  Mr. Lindstrom.  An extensive December 18, 2024 mediation session was preceded by the

26  parties' submission of detailed mediation statements (which involved consultation with

27  experts).  On December 27, 2024, the parties accepted Mr. Lindstrom's mediator's proposal

28  and reached an agreement in principle to resolve the Litigation via a $46 million cash

1  payment for the benefit of the Class, subject to the execution of a Stipulation of Settlement

2  and approval by the Court.  The parties executed a term sheet on February 3, 2025, and

3  subsequently negotiated the full terms of the Settlement memorialized in the Stipulation.

4  **III.    THE SETTLEMENT TERMS**

5        The Settlement requires Sea to pay, or cause to be paid, $46 million (the "Settlement

6  Amount") into the Escrow Account, which amount, plus all interest and accretions thereto,

7  comprises the "Settlement Fund."  Stipulation, ¶¶1.28, 1.29, 2.2.

8        Notice to the Class and the cost of settlement administration ("Notice and

9  Administration Expenses") will be funded by the Settlement Fund.  Stipulation, ¶2.12.

10  Plaintiff proposes that JND Legal Administration ("JND"), a nationally-recognized class

11  action settlement administrator, be retained as Claims Administrator, subject to the Court's

12  approval.  Lead Counsel selected JND based on its experience and the quality of its work in

13  prior engagements for Plaintiffs' Counsel and believes it is well suited to execute the notice

14  and claims administration in this Litigation.

15        The Notice, Summary Notice, and Postcard Notice provide that Lead Counsel will

16  move for final approval of the Settlement and: (a) an award of attorneys' fees in the amount

17  of no more than 25% of the Settlement Amount; (b) payment of expenses and charges

18  resulting from the prosecution of the Litigation in an amount not to exceed $200,000;

19  (c) interest on such fees and expenses at the same rate and for the same period as is earned by

20  the Settlement Fund; and (d) may request an award to Plaintiff, pursuant to 15 U.S.C. §78u-

21  4(a)(4), in connection with its representation of the Class.  The Notice explains that such fees

22  and expenses shall be paid from the Settlement Fund.

23        Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved

24  attorneys' fees and expenses have been paid from the Settlement Fund, the remaining

25  amount (the "Net Settlement Fund") shall be distributed pursuant to the Court-approved Plan

26  of Allocation (set forth in the Notice) to Authorized Claimants who are entitled to a

27  distribution of at least $10.00.  Stipulation, ¶¶5.2, 5.11.  These distributions shall be repeated

28  until the balance remaining in the Settlement Fund is *de minimis*.  *Id.*  The Plan of Allocation

treats all Class Members equitably based on their transactions in Sea's American Depositary Shares ("ADSs"), including the timing and amount of any purchases, acquisitions, or sales.

The $46 million cash benefit provided to the Class will be provided in exchange for a standard release of claims to Defendants. Stipulation, ¶1.23. The release is limited to claims that arise or relate to both the Complaint's factual allegations and to the purchase, ownership, or sale of Sea securities, and thus ensures that "the released claim[s] [are] 'based on the identical factual predicate as that underlying the claims in the settled class action.'" *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010).[2]

## IV.   THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Rule 23(e) requires judicial approval for settlement of claims brought as a class action. Under Rule 23(e)(1)(B), preliminary approval of a class action settlement turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) in turn provides that a proposed class settlement may be approved "only on finding that it is fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, courts in the Ninth Circuit also consider:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Juvera v. Salcido*, 2013 WL 6628039, at *9 (D. Ariz. Dec. 17, 2013) (discussing the *Hanlon* factors).

---

[2]   Citations are omitted and emphasis is added throughout unless otherwise indicated.

1    As discussed herein, the proposed Settlement readily satisfies each of the factors

2    identified under Rule 23(e)(2), as well as the applicable Ninth Circuit *Hanlon* factors.

3    **A.    Plaintiff and Lead Counsel Have Adequately Represented the Class**

4    As required by Rule 23(e)(2)(A), Plaintiff and Lead Counsel have adequately

5    represented the Class during the course of this Litigation and its settlement.  Plaintiff's

6    claims are typical of and coextensive with the claims of the Class, and it has no antagonistic

7    interests; rather, Plaintiff's "interest in obtaining the largest possible recovery is aligned with

8    the interests of the rest of the . . . [c]lass members." *See Mild v. PPG Indus., Inc.*, 2019 WL

9    3345714, at *3 (C.D. Cal. July 25, 2019); *Hanlon*, 150 F.3d at 1020 ("Resolution of two

10   questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any

11   conflicts of interest with other class members and (2) will the named plaintiffs and their

12   counsel prosecute the action vigorously on behalf of the class?").

13   Lead Counsel has diligently prosecuted this Litigation by, *inter alia*, conducting an

14   extensive factual investigation in preparing the operative Complaint; defeating Defendants'

15   motion to transfer and motion to dismiss; propounding and negotiating discovery requests on

16   Defendants; consulting with experts on merits and damages issues; and reviewing

17   confidential data produced by Defendants pursuant to a Federal Rule of Evidence 408

18   agreement. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,

19   2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding securities class settlement to be

20   procedurally fair where the "[l]ead [c]ounsel vigorously litigated th[e] action").   The

21   substantial monetary recovery obtained by Plaintiff and Lead Counsel is an exceptional

22   result for the Class, and is further evidence of their adequate representation.

23   **B.    The Settlement Was Negotiated at Arm's Length**

24   As required by Rule 23(e)(2)(B), the proposed Settlement was negotiated at arm's

25   length and only reached after the parties engaged in a protracted mediation process with Mr.

26   Lindstrom that included the parties' detailed written submissions, in-person mediation, and

27   follow-up conferences – the totality of which resulted in a $46 million mediator's proposal.

28

- 6 -

1    *See id.* at *1 ("[B]oth sides engaged in a series of intensive, arm's-length negotiations before

2    they reached an agreement in principle to settle.").

3          Mr. Lindstrom supervised this process at each step.  *See In re Atmel Corp. Derivative*

4    *Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) ("[A mediator's] participation

5    weighs considerably against any inference of a collusive settlement.").  Thus, the proposed

6    Settlement was "the product of serious, informed, and noncollusive negotiations."  *See In re*

7    *Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2018 WL 6198311,

8    at *4-*5 (N.D. Cal. Nov. 28, 2018) ("*Volkswagen I*").

9          **C.    The Settlement Provides Significant Relief for the Class**

10          **The Costs, Risks, and Delay of Further Litigation**: The proposed Settlement

11    provides adequate relief to the Class and satisfies Rule 23(e)(2)(C)(i) and Ninth Circuit

12    factors concerning the "strength of the plaintiffs' case; the risk, expense, complexity, and

13    likely duration of further litigation."   *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P.

14    23(e)(2)(C)(i).   The $46 million recovery provides a significant, immediate, and certain

15    benefit to the Class, especially in light of the costs, risks, and delay posed by continued

16    litigation.  *See Salazar v. Midwest Servicing Grp., Inc.*, 2018 WL 3031503, at *6 (C.D. Cal.

17    June 4, 2018) (A "settlement agreement's elimination of risk, delay, and further expenses

18    weighs in favor of approval.").  While Plaintiff remains confident in its ability to prove the

19    claims alleged in the operative Complaint, it is also cognizant of the risks that complex

20    securities fraud actions pose to plaintiffs.  *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL

21    12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Courts experienced with securities fraud

22    litigation '"routinely recognize that securities class actions present hurdles to proving

23    liability that are difficult for plaintiffs to clear."'"); *Hefler v. Wells Fargo & Co.*, 2018 WL

24    6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("'securities class litigation is notably difficult

25    and notoriously uncertain'").  Such risks are particularly heightened here, where portions of

26    Plaintiff's Shopee-related claims have been dismissed and Defendants' motion for

27    reconsideration on the remaining Shopee claims is pending.  Even assuming Plaintiff were to

28    prevail in opposing the motion for reconsideration, roadblocks await – as the majority of

- 7 -

1    evidence and witnesses in this case are located overseas in Singapore, introducing additional

2    uncertainties in conducting vigorous discovery.  Moreover, in order to obtain any recovery

3    for the Class as a whole, Plaintiff would still need to prevail at class certification, summary

4    judgment, pretrial motions, trial, and subsequent appeals, a process that would likely extend

5    for years.  Settlement is favored here where the case is "'complex and likely to be expensive

6    and lengthy to try,'" and presents numerous risks beyond the "'inherent risks of litigation.'"

7    *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1301 (S.D. Cal. 2017), *aff'd* 881 F.3d 1111

8    (9th Cir. 2018).

9        The $46 million Settlement balances the risks, costs, and delay inherent in complex

10   cases evenly with respect to all parties.  Considering the risks of continued litigation and the

11   time and expense that would be incurred to prosecute the Litigation through trial and

12   appeals, the Settlement is clearly in the Class' best interest.

13       **The Proposed Method for Distributing Relief Is Effective**: As further discussed in

14   §VI., *infra*, the proposed notice and claims administration process is effective and in accord

15   with Rule 23(e)(2)(C)(ii).  The notice plan includes direct mail or summary notice to all

16   those who can be identified with reasonable effort, supplemented by a Settlement-specific

17   website where key documents will be posted, including the Stipulation, Notice, Proof of

18   Claim and Release, and Preliminary Approval Order.  This is similar to the notice plan

19   approved in *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020).

20       The claims process is also effective and includes a standard Proof of Claim and

21   Release that requests the information necessary to calculate a claimant's claim amount

22   pursuant to the Plan of Allocation.  The Plan will govern how Class Members' Claims will

23   be calculated and, ultimately, how money will be distributed to Authorized Claimants.  It

24   also provides for a thorough claim review process and a mechanism for determining how

25   deficiencies are addressed.  Stipulation, ¶¶5.6-5.9.

26       **The Proposed Attorneys' Fees Are Both Reasonable and Standard**: Rule

27   23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including

28   timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  Here, Lead Counsel intends to seek an

1    award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and

2    expenses in an amount not to exceed $200,000, plus interest on both amounts.  This fee and

3    expense request reflects the successful result achieved for the Class and is consistent with the

4    25% "benchmark award for attorney fees" in the Ninth Circuit.  *Hanlon*, 150 F.3d at 1029.

5    In addition, Plaintiff may seek an award pursuant to 15 U.S.C. §78u-4(a)(4) in connection

6    with its representation of the Class.

7        **The Supplemental Opt-Out Agreement Is Standard**: As required to be disclosed in

8    accordance with Rule 23(e)(2)(C)(iv) and Rule 23(e)(3), the Settling Parties have entered

9    into a standard supplemental agreement which provides that if enough Class Members opt

10   out of the Settlement such that the requests for exclusion from the Class equals or exceeds an

11   agreed-upon threshold, Defendants shall have the option to terminate the Settlement.

12   Stipulation, ¶7.3.  Such agreements are common and do not undermine the propriety of the

13   Settlement.  *See, e.g.*, *Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination

14   option triggered by the number of class members who opt out of the Settlement does not by

15   itself render the Settlement unfair.").  While the nature of the Supplemental Agreement is

16   identified here and in the Stipulation, the specific terms of the opt-out threshold are properly

17   kept confidential.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir.

18   2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision

19   where "[o]nly the exact threshold, for practical reasons, was kept confidential").

20       **D.    The Plan of Allocation Treats Class Members Equitably**

21       Rule 23(e)(2)(D) asks whether the proposal, here the Plan of Allocation, treats Class

22   Members equitably relative to each other.  Drafted with the assistance of Plaintiff's

23   consulting damages expert, the Plan is fair, reasonable, and adequate because it properly

24   makes certain interclass distinctions based on the timing of purchases in relation to the

25   corrective disclosures alleged in the Complaint, and does not treat Plaintiff or any other

26   Class Member preferentially.  *See Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL

27   1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can

28   be reasonable if it 'fairly treats class members by awarding a pro rata share to every

- 9 -

Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'"). The Plan of Allocation provides formulas for calculating the recognized claim of each Class Member, based on each of their purchases of Sea ADSs on the open market during the Class Period and if or when they sold. "'A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable.'" *Mauss v. NuVasive Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018).

Each Authorized Claimant, including Plaintiff, will receive a *pro rata* distribution pursuant to the Plan of Allocation. No special formula for distribution will apply to Plaintiff. *See Ciuffitelli v. Deloitte & Touche LLP*, 2019 WL 1441634, at *18 (D. Or. Mar. 19, 2019) ("The Proposed Settlement does not provide preferential treatment to Plaintiffs or segments of the class. . . . [It] compensates all Class Members and [Plaintiff] equally in that they will receive a pro rata distribution based of [sic] the Settlement Fund based on their net losses.").

### E.    The Remaining Factors Support Preliminary Approval

Each of the relevant *Hanlon* factors that are not co-extensive with the Rule 23(e)(2) analysis above (*i.e.*, the fourth and sixth *Hanlon* factors) also support preliminary approval.[3]

**The Amount Offered in Settlement**: "[A]t this preliminary approval stage, the court need only 'determine whether the proposed settlement is within the range of possible approval.'" *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006). The $46 million Settlement Amount exceeds the median ($14 million) and average ($43 million) recovery in federal securities cases settled in 2024. Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 22, fig. 21, and 23, fig. 22 (NERA Jan. 22, 2025). The Settlement Amount is well within the range of approval, and as a percentage of potential recovery exceeds amounts

---

[3]  "Because there is no governmental entity involved in this litigation [the seventh *Hanlon* factor] is inapplicable." *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017). Regarding the eighth *Hanlon* factor ("the reaction of the class members to the proposed settlement"), the Class' reaction is not yet available for consideration because notice of the Settlement has not yet been provided to the Class. *Hanlon*, 150 F.3d at 1026.

1    routinely approved by courts.  *See*, *e.g.*, *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *9
2    (N.D. Cal. Apr. 19, 2021) (approving final settlement representing 2.35% of total estimated
3    damages); *M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*, 2018 WL 11471777, at *6 (C.D.
4    Cal. Nov. 2, 2018) (approving preliminary settlement representing 2.4% of estimated total
5    damages); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving
6    final settlement representing "approximately 1.3% of the amount of damages that could be
7    achieved").  Indeed, "there is no reason . . . why a satisfactory settlement could not amount
8    to a hundredth or even a thousandth part of a single percent of the potential recovery."  *City
9    of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 n.2 (2d Cir. 1974); *see also Morris v. Affinity
10   Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012).  The immediacy and certainty
11   of a $46 million recovery is of significant benefit to the Class.

12          **The Experience and Views of Counsel**: The opinion of experienced counsel
13   supporting a class settlement is entitled to considerable weight.  *Norris v. Mazzola*, 2017 WL
14   6493091, at *8 (N.D. Cal. Dec. 19, 2017).  "[I]ndeed a presumption of fairness is usually
15   appropriate if class counsel recommends the settlement after arm's-length bargaining."
16   *Volkswagen I*, 2018 WL 6198311, at *5.  By the time settlement discussions began, Lead
17   Counsel had a firm understanding of the strengths and weaknesses of the claims.  "There is
18   nothing to counter the presumption that Lead Counsel's recommendation is reasonable."  *In
19   re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *In re Wash. Pub.
20   Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989) ("Counsels' opinions
21   warrant great weight both because of their considerable familiarity with this litigation and
22   because of their extensive experience in similar actions."), *aff'd sub nom. Class Plaintiffs v.
23   City of Seattle*, 955 F.2d 1268 (9th Cir. 1992).

24          Because the Settlement is the product of serious, informed, and non-collusive
25   negotiations among experienced counsel and a highly qualified mediator, it is suited for
26   preliminary approval.  Given the litigation risks involved, the complexity of the underlying
27   issues, and the skill of defense counsel, the $46 million recovery is even more significant.  In
28   sum, each factor identified under Rule 23(e)(2) and by the Ninth Circuit is satisfied.

1

## V.    THE CLASS SHOULD BE CERTIFIED

2    The Settling Parties have agreed, for purposes of settlement, to certification of the

3    following Class: "all Persons who purchased or otherwise acquired the publicly-traded Sea

4    American Depositary Shares during the period from November 15, 2022 through August 14,

5    2023, both dates inclusive."  Stipulation, ¶1.4.[4]

6    Courts in the Ninth Circuit have long recognized that "[p]arties may settle a class

7    action before class certification and stipulate that a defined class be conditionally certified

8    for settlement purposes."  *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610

9    (S.D. Cal. 2008); *see also In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal.

10    2009) ("'Rule 23 is to be liberally construed in a securities fraud context.'").  Plaintiff

11    submits that the Class satisfies the requirements of both Rule 23(a) (numerosity,

12    commonality, typicality, and adequacy of representation) and Rule 23(b)(3).

13    ### A.    The Class Satisfies Rule 23(a)

14    **Numerosity**: The numerosity requirement is met where the proposed class is "so

15    numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "While no

16    specific minimum number of potential class members exists, a 'proposed class of at least

17    forty members presumptively satisfies the numerosity requirement.'" *Hatamian v. Advanced*

18    *Micro Devices, Inc.*, 2016 WL 1042502, at *4 (N.D. Cal. Mar. 16, 2016).  "The Court

19    certainly may infer that, when a corporation has millions of shares trading on a national

20    exchange, more than 40 individuals purchased stock over the course of more than a year."

21    *Borteanu v. Nikola Corp.*, 2025 WL 33147, at *4 (D. Ariz. Jan. 6, 2025); *Hayes v.*

22    *Magnachip Semiconductor Corp.*, 2016 WL 7406418, at *3 (N.D. Cal. Dec. 22, 2016).

23    Numerosity is easily met here, as Sea ADSs traded on the New York Stock Exchange

24    and the Company reported more than 360 million shares outstanding during the Class Period.

25

26    [4]    Excluded from the Class are Defendants, the officers and directors of Sea (at all relevant

27    times), members of their immediate families, and their legal representatives, heirs, successors or assigns, and any entity in which any Defendant has a controlling interest.  Also excluded from the Class are those Persons who would otherwise be a Class Member but who

28    timely and validly exclude themselves.  Stipulation, ¶1.4.

*See SEB Inv. Mgmt. AB v. Symantec Corp.*, 335 F.R.D. 276, 282-83 (N.D. Cal. 2020) (numerosity satisfied with "over six-hundred thousand outstanding shares of Symantec common stock during the class period").

**Commonality**: Rule 23(a)(2) requires a showing that there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "'So long as there is "even a single common question," a would-be class can satisfy the commonality requirement of Rule 23(a)(2).'" *Parsons v. Ryan*, 754 F.3d 657, 675 (9th Cir. 2014). "Commonality exists where 'the circumstances of each particular class member vary but retain a common core of factual or legal issues with the rest of the class.'" *Fleming v. Impax Laby's*, 2021 WL 5447008, at *6 (N.D. Cal. Nov. 22, 2021).

Here, the Complaint alleges that Class Members have all suffered a common injury – losses on their investments in Sea ADSs – and their claims depend upon numerous common issues capable of class-wide resolution, including: (a) whether Defendants' alleged misrepresentations violated the Exchange Act; (b) whether Defendants' alleged misrepresentations and omissions were material; (c) whether Defendants acted knowingly or recklessly; (d) whether certain Defendants controlled Sea; (e) whether Defendants' alleged misrepresentations and omissions caused the Class to suffer a compensable loss; and (f) whether the Class has sustained damages, and the proper measure of damages. Because "'the complaint alleges a common course of conduct over the entire period directed against all investors, generally relied upon, and violating common statutory provisions, it sufficiently appears that the questions common to all investors will be relatively substantial.'" *Smilovits v. First Solar, Inc.*, 295 F.R.D. 423, 428 (D. Ariz. 2013); *Nikola Corp.*, 2025 WL 33147, at *5; *In re THQ, Inc. Sec. Litig.*, 2002 WL 1832145, at *3 (C.D. Cal. Mar. 22, 2002) ("[R]epeated misrepresentations of this sort satisfy the 'common question' requirement.").

**Typicality**: Rule 23(a)(3) requires that the proposed class representative's claims be "typical" of the class' claims. Fed. R. Civ. P. 23(a)(3). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by

1    the same course of conduct.'" *Parsons*, 754 F.3d at 685. "The purpose of the typicality

2    requirement is to 'assure that the interest of the named representative aligns with the interests

3    of the class.'" *In re Intuitive Surgical Sec. Litig.*, 2016 WL 7425926, at *5 (N.D. Cal.

4    Dec. 22, 2016). "'Under the rule's permissive standards, representative claims are "typical"

5    if they are reasonably coextensive with those of absent class members; they need not be

6    substantially identical.'" *Parsons*, 754 F.3d at 685.

7         Plaintiff's claims here are "typical" of other Class Members, as they "'are based on

8    the same theories of liability.'" *First Solar*, 295 F.R.D. at 428. There are no separate claims

9    raised by Plaintiff, and there are no defenses that would be unique to Plaintiff. Thus, there is

10   no concern that Plaintiff's interests are not aligned with the interests of the Class.

11        **Adequacy**: Under Rule 23(a)(4), the parties representing the class must "fairly and

12   adequately protect the interests of the class" (Fed. R. Civ. P. 23(a)(4)), which presents two

13   questions: "'(1) do the named plaintiffs and their counsel have any conflicts of interest with

14   other class members[;] and (2) will the named plaintiffs and their counsel prosecute the

15   action vigorously on behalf of the class?'" *Symantec Corp.*, 335 F.R.D. at 284-85. As

16   discussed above in connection with the adequacy requirement of Rule 23(e)(2)(A) (*see*

17   §IV.A., *supra*), Plaintiff and Lead Counsel readily satisfy these requirements. Plaintiff's and

18   Lead Counsel's interests are directly aligned with the interests of the other Class Members,

19   and they have vigorously litigated this case to a successful result for the Class.

20        **B.    The Class Satisfies Rule 23(b)(3)**

21        Plaintiff seeks to certify the Class pursuant to Rule 23(b)(3), as: (1) questions of law

22   or fact common to the Class predominate over questions affecting only individual members;

23   and (2) a class action is superior to other available methods for the fair and efficient

24   adjudication of the controversy. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168,

25   1172 (9th Cir. 2010); Fed. R. Civ. P. 23(b)(3).

26        **Predominance**: The predominance inquiry asks whether "'proposed classes are

27   sufficiently cohesive to warrant adjudication by representation.'" *Hatamian*, 2016 WL

28   1042502, at *3. As the Supreme Court has explained, "[p]redominance is a test readily met

- 14 -

1    in certain cases alleging consumer or securities fraud or violations of the antitrust laws."

2    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997); *First Solar*, 295 F.R.D. at 429.

3         The common questions identified above predominate over individual questions

4    because Defendants' alleged misrepresentations affected the entire Class in the same manner.

5    *Vataj v. Johnson*, 2021 WL 1550478, at *6 (N.D. Cal. Apr. 20, 2021) (finding common

6    questions predominate where the same operative facts apply to each class member).

7    Moreover, virtually all the elements under §§10(b) and 20(a) of the Exchange Act involve

8    common questions of law and fact that predominate over individualized issues.  *Fleming*,

9    2021 WL 5447008, at *6; *Cooper*, 254 F.R.D. at 640; *Homyk v. ChemoCentryx, Inc.*, 2024

10   WL 1141699, at *7 (N.D. Cal. Mar. 6, 2024).

11        **Superiority**: The superiority element tests whether class treatment is "superior to

12   other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ.

13   P. 23(b)(3).  It is well recognized that in securities fraud cases such as this one, where

14   "recovery on an individual basis would be dwarfed by the cost of litigating on an individual

15   basis," a class action is the superior method of adjudication. *Wolin*, 617 F.3d at 1175; *Nikola*

16   *Corp.*, 2025 WL 33147, at *14 ("The Ninth Circuit has also recognized that class actions are

17   an effective way to pursue shareholders' actions for securities fraud . . . .").

18        Accordingly, Rules 23(a) and 23(b)(3) are satisfied, and there are no issues that would

19   prevent the Court from certifying the Class for settlement purposes, appointing Plaintiff as

20   Class Representative, and appointing Lead Counsel as Class Counsel pursuant to Rule 23(g).

21   **VI.    THE PROPOSED NOTICE PROGRAM IS APPROPRIATE**

22        Rule 23(c)(2)(B) requires that notice of a settlement be "the best notice that is

23   practicable under the circumstances, including individual notice to all members who can be

24   identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  Courts have held that a

25   proposed "'[n]otice is satisfactory if it "generally describes the terms of the settlement in

26   sufficient detail to alert those with adverse viewpoints to investigate and to come forward

27   and be heard."'"  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

28

1        Here, the Settling Parties propose to send, by email or first class mail (where email is

2    unavailable), postage prepaid, individual copies of the Postcard Notice to all potential Class

3    Members who can reasonably be identified and located. *See* Segura Decl., ¶¶6-12. In

4    addition, the Summary Notice will be published in *The Wall Street Journal* and over a

5    national newswire service. *Id.*, ¶13. These proposed methods of notice satisfy the

6    requirements of Rule 23, the Private Securities Litigation Reform Act, and due process. *See*

7    *In re MGM Mirage Sec. Litig.*, 708 F. App'x 894, 896 (9th Cir. 2017); *LifeLock*, 2020 WL

8    4362394, at *1. The proposed full-length Notice, which will be available on the Settlement

9    website and from the Claims Administrator upon request, provides detailed information in

10   plain English.[5] *See* Stipulation, Ex. A-1; Segura Decl., ¶14. The content of the proposed

11   notice forms are all "reasonably calculated, under all the circumstances, to apprise interested

12   parties of the pendency of the action and afford them an opportunity to present their

13   objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

14       Rule 23(h)(1) also requires that "[n]otice of the motion [for attorneys' fees] must be

15   served on all parties and, for motions by class counsel, directed to class members in a

16   reasonable manner." Fed. R. Civ. P. 23(h)(1). The proposed notices all satisfy this

17   requirement, as they notify the Class that Lead Counsel will apply to the Court for an award

18   of attorneys' fees not to exceed 25% percent of the Settlement Amount and litigation

19   expenses in an amount not to exceed $200,000 to be paid from the Settlement Fund.

20       In sum, the proposed notice program satisfies all applicable requirements, and the

21   Court should approve the proposed form and method of giving notice to the Class.

22   **VII.    PROPOSED SETTLEMENT SCHEDULE**

23       Plaintiff proposes the following schedule to consider final approval of the Settlement:

24

---

[5]    The Notice describes the proposed Settlement and sets forth, among other things: (i) the nature, history, and status of the Litigation; (ii) the definition of the Class and who is excluded; (iii) the reasons the parties have proposed the Settlement; (iv) the amount of the Settlement Fund; (v) the estimated average distribution per damaged security; (vi) the Class' claims and issues; (vii) the parties' disagreement over damages and liability; (viii) the maximum amount of attorneys' fees and expenses that Plaintiffs' Counsel intends to seek in connection with final Settlement approval; (ix) the plan for allocating the Settlement proceeds to the Class; and (x) the date, time, and place of the Settlement Hearing.

| EVENT | DATE |
|---|---|
| Deadline for commencing emailing and mailing of the Postcard Notice to potential Class Members and posting of the Notice and Proof of Claim and Release ("Notice Date") | 21 calendar days after entry of the Preliminary Approval Order |
| Deadline for publication of the Summary Notice | 7 calendar days after the Notice Date |
| Deadline for filing initial papers in support of final approval of the Settlement, Plan of Allocation, and application for an award of attorneys' fees and expenses | 35 calendar days prior to the Settlement Hearing |
| Deadline for submitting objections and requests for exclusion | 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply in response to any objections and in further support of approval of the Settlement, Plan of Allocation, and application for an award of attorneys' fees and expenses | 7 calendar days prior to the Settlement Hearing |
| Settlement Hearing | Approximately 100 calendar days from entry of the Preliminary Approval Order, at the Court's convenience |
| Deadline for submitting Proofs of Claim and Release | 75 calendar days after the Notice Date |

## VIII.  CONCLUSION

For each of the foregoing reasons, the Court should enter the Preliminary Approval Order, which will: (a) preliminarily approve the Settlement; (b) preliminarily certify the Class; (c) appoint JND as Claims Administrator; (d) approve the form and manner of providing notice to the Class; and (e) set a Settlement Hearing date to consider final approval of the Settlement and set deadlines for related matters.

DATED: March 14, 2025                    Respectfully submitted,

ROBBINS GELLER RUDMAN
& DOWD LLP

s/ Marco Janoski
J. MARCO JANOSKI GRAY

- 17 -

1  THEODORE J. PINTAR
   TOR GRONBORG
2  J. MARCO JANOSKI GRAY
3  T. ALEX B. FOLKERTH
   JESSICA E. ROBERTSON
4  EVELYN SANCHEZ GONZALEZ
5  655 West Broadway, Suite 1900
   San Diego, CA  92101
6  Telephone:  619/231-1058
   619/231-7423 (fax)
7  tedp@rgrdlaw.com
8  torg@rgrdlaw.com
   mjanoski@rgrdlaw.com
9  afolkerth@rgrdlaw.com
   jrobertson@rgrdlaw.com
10 egonzalez@rgrdlaw.com

11 Lead Counsel for Lead Plaintiff

12
13 ZIMMERMAN REED, LLP
   HART L. ROBINOVITCH
14 14648 N. Scottsdale Road, Suite 130
   Scottsdale, AZ  85254
15 Telephone:  480/348-6400
16 480/348-6415 (fax)
   hart.robinovitch@zimmreed.com
17
18 Local Counsel for Lead Plaintiff

19
20
21
22
23
24
25
26
27
28

4900-1127-8365.v1