1  ZIMMERMAN REED, LLP
   HART L. ROBINOVITCH
2  14648 N. Scottsdale Road, Suite 130
   Scottsdale, AZ  85254
3  Telephone:  480/348-6400
   480/348-6415 (fax)
4  hart.robinovitch@zimmreed.com

5  Local Counsel for Lead Plaintiff

6  ROBBINS GELLER RUDMAN
       & DOWD LLP
7  THEODORE J. PINTAR (admitted *pro hac vice*)
   TOR GRONBORG (admitted *pro hac vice*)
8  J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
   T. ALEX B. FOLKERTH (admitted *pro hac vice*)
9  JESSICA E. ROBERTSON (admitted *pro hac vice*)
   EVELYN SANCHEZ GONZALEZ (admitted *pro hac vice*)
10 655 West Broadway, Suite 1900
   San Diego, CA  92101
11 Telephone:  619/231-1058
   619/231-7423 (fax)
12 tedp@rgrdlaw.com
   torg@rgrdlaw.com
13 mjanoski@rgrdlaw.com
   afolkerth@rgrdlaw.com
14 jrobertson@rgrdlaw.com
   egonzalez@rgrdlaw.com
15
   Lead Counsel for Lead Plaintiff
16

17              UNITED STATES DISTRICT COURT

18                   DISTRICT OF ARIZONA

| | |
|---|---|
| 19  Laborers District Council Construction Industry Pension Fund, et al., | No. CV-23-01455-PHX-DLR |
| 20 | Consolidated with Case No. 23-01889-PHX-SRB |
| 21                        Plaintiffs, | |
| 22  vs. | CLASS ACTION |
| 23  Sea Limited, et al., | LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION |
| 24                        Defendants. | SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION AND |
| 25 | MEMORANDUM OF LAW IN SUPPORT THEREOF |
| 26 | |
| 27 | |
| 28 | |

4901-9315-8979.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ........................................................................................ 2

II.     PROCEDURAL AND FACTUAL BACKGROUND ............................................. 3

III.    THE SETTLEMENT WARRANTS FINAL APPROVAL ..................................... 3

        A.      Plaintiff and Lead Counsel Have Adequately Represented the Class .......... 5

        B.      The Settlement Was the Result of Arm's-Length Negotiations .................. 6

        C.      The Settlement Provides Significant Relief for the Class, Particularly
                Considering the Cost, Risks, and Delay of Litigation................................... 7

                1.      The Costs, Risks, and Likely Duration of Further Litigation
                        Supports Final Approval .................................................................. 8

                2.      The Proposed Method for Distributing Relief Is Effective................ 9

                3.      The Proposed Attorneys' Fees Are Both Reasonable and
                        Standard.......................................................................................... 10

                4.      The Supplemental Opt-Out Agreement Is Standard ....................... 11

        D.      The Plan of Allocation Treats Class Members Equitably........................... 11

        E.      The Remaining Ninth Circuit Factors Support Final Approval ................. 12

                1.      The Settlement Amount Supports Final Approval........................... 12

                2.      The Extent of Discovery Completed and Stage of Proceedings
                        Support Final Approval.................................................................... 13

                3.      The Experience and Views of Counsel Support Final
                        Approval.......................................................................................... 13

                4.      The Reaction of the Class Supports Final Approval....................... 14

IV.     CLASS CERTIFICATION REMAINS APPROPRIATE ...................................... 15

V.      THE PLAN OF ALLOCATION WARRANTS FINAL APPROVAL ................. 15

VI.     NOTICE TO THE CLASS SATISFIED DUE PROCESS ..................................... 16

VII.    CONCLUSION ............................................................................................ 17

4901-9315-8979.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Arrison v. Walmart Inc.*,
2024 WL 3413968 (D. Ariz. July 15, 2024) .................................................. 3

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) .............................................................. 3, 4

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ................................................ 6

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ........................................................... 4, 15

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................... 13

*Emond v. Murphy*,
2019 WL 13039332 (C.D. Cal. Aug. 27, 2019) ............................................. 7

*Estakhrian v. Obenstine*,
2016 WL 6517052 (C.D. Cal. Feb. 16, 2016) ............................................. 11

*Fernandez v. Corelogic Credco, LLC*,
2024 WL 538585 (S.D. Cal. Feb. 9, 2024) ............................................... 11

*Garrett v. Advantage Plus Credit Reporting Inc.*,
2024 WL 1603442 (D. Ariz. Apr. 12, 2024) ............................................. 15

*Halliburton Co. v. Erica P. John Fund, Inc.*,
573 U.S. 258 (2014) ........................................................................ 9

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...................................................... *passim*

*Harris v. Amgen Inc.*,
2017 WL 6048215 (C.D. Cal. Apr. 4, 2017) ............................................. 12

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
aff'd sub nom. *Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) ........................................................ 7

4901-9315-8979.v1

**Page**

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ........................................................ *passim*

*In re Atmel Corp. Derivative Litig.*,
2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ............................................................... 7

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .............................................................. 10

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2554232 (N.D. Cal. May 3, 2019) ................................................................. 5

*In re Crocs, Inc. Sec. Litig.*,
306 F.R.D. 672 (D. Colo. 2014) ................................................................................. 12

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ............................................................... 8

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ...................................................................................... 5

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................... 13

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... 14

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015) .................................................................................... 11

*In re Regulus Therapeutics Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ............................................................. 16

*In re Splunk Inc. Sec. Litig.*,
2024 WL 923777 (N.D. Cal. Mar. 4, 2024) ................................................................ 13

*In re Veritas Software Corp. Sec. Litig.*,
496 F.3d 962 (9th Cir. 2007) .................................................................................... 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2019 WL 2077847 (N.D. Cal. May 10, 2019) ............................................................... 6

4901-9315-8979.v1

**Page**

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
   720 F. Supp. 1379 (D. Ariz. 1989),
   *aff'd, Class Plaintiffs*, 955 F.2d 1268 (9th Cir. 1992) ................................. 14

*Khoja v. Orexigen Therapeutics, Inc.*,
   2021 WL 5632673 (S.D. Cal. Nov. 30, 2021) ................................................ 9

*Low v. Trump Univ., LLC*,
   246 F. Supp. 3d 1295 (S.D. Cal. 2017),
   *aff'd*, 881 F.3d 1111 (9th Cir. 2018)................................................................ 9

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
   2018 WL 11471777 (C.D. Cal. Nov. 2, 2018).......................................... 12

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ........................................ 12, 16

*Mild v. PPG Indus.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................................... 6

*Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ................................................... 3, 8, 14

*Redwen v. Sino Clean Energy, Inc.*,
   2013 WL 12129279 (C.D. Cal. Mar. 13, 2013).......................................... 8

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ................................................... 6, 14, 16

*Salazar v. Midwest Servicing Grp.*,
   2018 WL 3031503 (C.D. Cal. June 4, 2018) .............................................. 8

*Santillan v. Verizon Connect, Inc.*,
   2024 WL 627998 (S.D. Cal. Feb. 13, 2024) ............................................. 12

*Scott v. ZST Digit. Nets., Inc.*,
   2013 WL 12126744 (C.D. Cal. Aug. 5, 2013).......................................... 8

*T.K. Through Leshore v. Bytedance Tech. Co.*,
   2022 WL 888943 (N.D. Ill. Mar. 25, 2022)............................................... 7

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ......................................................................... 4

- iv -

4901-9315-8979.v1

**Page**

*Vataj v. Johnson*,
 2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ............................................................ 15

*Vinh Nguyen v. Radient Pharms. Corp.*,
 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................................................ 11

*Wong v. Arlo Techs., Inc.*,
 2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ............................................................ 12

*Zwicky v. Diamond Resorts Inc.*,
 2024 WL 1717553 (D. Ariz. Apr. 22, 2024) ............................................................ 15

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
 §78j(b) ............................................................................................................................ 8
 §78u-4(a)(7)(A) .......................................................................................................... 17

Federal Rules of Civil Procedure
 Rule 23 ...................................................................................................................... 16, 17
 Rule 23(a) .................................................................................................................... 15
 Rule 23(b) .................................................................................................................... 15
 Rule 23(b)(3) .............................................................................................................. 15
 Rule 23(c)(2)(B) ........................................................................................................ 16
 Rule 23(e) ...................................................................................................................... 4
 Rule 23(e)(1)(B) ........................................................................................................ 16
 Rule 23(e)(2) ............................................................................................................ 4, 12
 Rule 23(e)(2)(A) .......................................................................................................... 5
 Rule 23(e)(2)(B) .......................................................................................................... 6
 Rule 23(e)(2)(C) .......................................................................................................... 7
 Rule 23(e)(2)(C)(i) ...................................................................................................... 8
 Rule 23(e)(2)(C)(ii) ..................................................................................................... 9
 Rule 23(e)(2)(C)(iii) .................................................................................................. 10
 Rule 23(e)(2)(C)(iv) ................................................................................................... 11
 Rule 23(e)(2)(D) ........................................................................................................ 11
 Rule 23(e)(3) .............................................................................................................. 11
 Rule 23(g) .................................................................................................................... 15

1

2                                                                                          **Page**

3      **SECONDARY AUTHORITIES**

4
       4 A. Conte & H. Newberg,
5           *Newberg on Class Actions*
6           §11:50 (4th ed. 2002) .................................................................................................. 8

7      Edward Flores and Svetlana Starykh,
           *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
8           (NERA Jan. 22, 2025) .............................................................................................. 12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MOTION

Lead Plaintiff Laborers District Council Construction Industry Pension Fund ("Plaintiff" or "LDC"), on behalf of itself and the proposed Class, hereby respectfully moves the Court for an Order: (i) entering final judgment and granting final approval to the proposed Settlement, which the Court preliminarily approved by its Order dated March 18, 2025 (ECF 75) (the "Preliminary Approval Order"); (ii) certifying the Class for settlement purposes; and (iii) approving the proposed Plan of Allocation.[1]

This Motion is made on the grounds that the Settlement is fair, reasonable, and adequate under Federal Rule of Civil Procedure 23(e), and that the Class should be certified under Rules 23(a) and 23(b)(3). In support of this Motion, Plaintiff submits the below Memorandum of Law, along with the concurrently-filed Declaration of J. Marco Janoski Gray in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Class Representative ("Janoski Declaration" or "Janoski Decl."), Declaration of James N. Harper, Jr. ("Harper Decl."), Declaration of Luiggy Segura Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Segura Decl."), all exhibits attached thereto, all prior pleadings and papers in this Litigation, the arguments of counsel, and such additional information or argument as may be required by the Court.

A proposed Final Judgment and Order of Dismissal with Prejudice will be submitted with Plaintiff's reply submission on June 24, 2025, after the June 10, 2025 deadline for Class Members to opt out of the Class or object to the Settlement or Plan of Allocation has passed.

---

[1] The terms of the Settlement are set forth in the Stipulation of Settlement dated March 14, 2025 (ECF 73-1) (the "Stipulation"). Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation and in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support Thereof (ECF 72).

**MEMORANDUM OF LAW**

## I.      INTRODUCTION

The preliminarily-approved Settlement provides for a cash payment of $46 million in exchange for the dismissal of all claims brought in the Litigation and a full release of claims against the Released Persons.  The $46 million recovery obtained here is more than fair, reasonable, and adequate – and warrants final approval from the Court.

The Settlement was result of hard-fought litigation and arm's-length negotiations between skilled and knowledgeable counsel, and was facilitated by an experienced mediator – Gregory P. Lindstrom of Phillips ADR Enterprises.  Janoski Decl., ¶¶23-48.  By the time the Settlement was achieved, Plaintiff and Lead Counsel had: (i) investigated, drafted, and filed a detailed Consolidated Complaint for Violations of the Federal Securities Laws (ECF 31) (the "Complaint"); (ii) successfully obtained an order from the Court approving alternative service of process on the Individual Defendants (ECF 44); (iii) successfully opposed Sea's motion to transfer this case to the United States District Court for the Southern District of New York (ECF 54); (iv) successfully opposed Defendants' motion to dismiss the Complaint (ECF 55); (v) opposed Defendants' motion for partial reconsideration of the Court's motion to dismiss order, which remained pending at the time of the Settlement (ECFs 58, 61); (vi) propounded and negotiated discovery requests; and (vii) reviewed confidential financial data produced by Defendants, consulted with experts on merits and damages issues, and prepared detailed mediation statements in connection with the mediation process led by Mr. Lindstrom, culminating in a mediator's proposal that the Settling Parties accepted.  *See* Janoski Decl., ¶¶4, 23-42, 47-48.  As a result of this process, Plaintiff and Lead Counsel had a thorough understanding of the strengths and weaknesses of the Class's claims at the time the Settlement was reached.

The reaction of the Class thus far also supports the Settlement.  The Court-appointed lead plaintiff LDC fully supports the Settlement.  *See* Harper Decl., ¶¶1-7.  Pursuant to the Court's Preliminary Approval Order, more than 199,100 Notices and Postcard Notices have been mailed or emailed to potential Class Members, Summary Notice was published in *The*

*Wall Street Journal* and over *PRNewswire*, and the long-form Notice and other relevant information was also posted on a website established for the Settlement. Segura Decl., ¶¶9-10, 12. To date, there have been zero objections lodged to any aspect of the Settlement. *See Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *3 (D. Ariz. Apr. 20, 2012) (same). Similarly, there has been only one request for exclusion from Class Members as of this filing. *See* Segura Decl., ¶13; *see also Arrison v. Walmart Inc.*, 2024 WL 3413968, at *4 (D. Ariz. July 15, 2024) (noting that only 47 class members requested exclusion out of 81,578 mailed notices, and further holding that "the reaction of the class members to the settlement weighs in favor of approval").[2]

Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement, certify the Class, and approve the Plan of Allocation as a fair and reasonable method for distributing the Net Settlement Fund to the Class.

## II.    PROCEDURAL AND FACTUAL BACKGROUND

Lead Counsel respectfully refers the Court to the accompanying Janoski Declaration for a detailed description of the procedural history of the Litigation, the claims asserted, the investigation and discovery undertaken, the parties' motion practice, the negotiations and mediation process resulting in the Settlement, and the risks and uncertainties involved in prosecuting this Litigation through trial. *See* Janoski Decl., ¶¶13-56.

## III.    THE SETTLEMENT WARRANTS FINAL APPROVAL

The Ninth Circuit recognizes a """strong judicial policy that favors settlements, particularly where complex class action litigation is concerned."" *Campbell v. Facebook,*

---

[2]    The deadline for submitting a request for exclusion from the Class or filing an objection to the Settlement, or any aspect thereof, is June 10, 2025. If any requests for exclusion or objections by Class Members are received after the date of this submission, Lead Counsel will address them in its reply submission to be filed on or before June 24, 2025.

- 3 -

*Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).[3]  Pursuant to Rule 23(e), a proposed class action settlement may be approved "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate . . . ; and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).  In addition to the Rule 23(e)(2) factors, courts in the Ninth Circuit also consider the following in evaluating the fairness of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the consideration offered in settlement; (5) the extent of discovery completed, the stage of the proceedings; (6) the experience and views of counsel; and (7) the reaction of the class to the proposed settlement.

*Apollo*, 2012 WL 1378677, at *1 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

"This list [of factors] is not exclusive and different factors may predominate in different factual contexts." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *Facebook*, 951 F.3d at 1121 ("District courts may consider some or all of these factors.").  Ultimately, whether final approval should be granted lies within the sound discretion of the district court.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).  A court, however, should not convert settlement approval into an inquiry into the merits or substitute its judgment for that of the parties.  *Id.* at 1291 ("The court need not 'reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.'").

The Court's Preliminary Approval Order considered each of the Rule 23(e)(2) factors when assessing the Settlement, and preliminarily found that it was fair, reasonable, and

---

[3]  Citations are omitted and emphasis is added throughout unless otherwise indicated.

1    adequate, subject to further consideration at the Settlement Hearing. *See* ECF 75 at 2-4.  The

2    Court's conclusion on preliminary approval remains true now, as nothing has changed the

3    evaluation of these factors between March 18, 2025 and the present. *See In re Chrysler-*

4    *Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2

5    (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and

6    counsel equally in favor of final approval now."); *Apollo*, 2012 WL 1378677, at *1 ("As this

7    Court concluded in its Preliminary Approval Order, these factors favor a finding of fairness,

8    reasonableness, and adequacy. . . .").

9        Accordingly, Plaintiff and Lead Counsel respectfully submit that the Settlement

10   represents a fair, reasonable, and adequate resolution of the Litigation and warrants the

11   Court's final approval.

12       **A.    Plaintiff and Lead Counsel Have Adequately Represented the Class**

13       Plaintiff and Lead Counsel have "adequately represented" the Class in accordance

14   with Rule 23(e)(2)(A), as they have zealously prosecuted this Litigation (and will continue to

15   do so throughout the administration of the Settlement) and have no conflicting interests. *See*

16   *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine

17   legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have

18   any conflicts of interest with other class members and (2) will the named plaintiffs and their

19   counsel prosecute the action vigorously on behalf of the class?'").

20       As more thoroughly explained in the Janoski Declaration, over the course of this case

21   Plaintiff, through Lead Counsel: (i) investigated, drafted, and filed the operative Complaint

22   (ECF 31); (ii) successfully moved for alternative service of process on the Individual

23   Defendants (ECF 44); (iii) successfully opposed Sea's motion to transfer to the Southern

24   District of New York (ECF 54); (iv) successfully opposed Defendants' motion to dismiss

25   (ECF 55); (v) opposed Defendants' pending motion for partial reconsideration of the Court's

26   motion to dismiss order (ECF 61); (vi) propounded and negotiated discovery requests;

27   (vii) reviewed confidential data, consulted with experts, and prepared briefs in connection

28   with the mediation process; and (viii) obtained the $46 million Settlement for the benefit of

- 5 -

1   the Class.  *See* Janoski Decl., ¶¶4, 23-42, 47-48; *In re Volkswagen "Clean Diesel" Mktg.,*

2   *Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019)

3   (finding securities class settlement to be fair where "[l]ead [c]ounsel vigorously litigated

4   th[e] action").

5     Plaintiff itself has also actively engaged in this Litigation, by, *inter alia*: (i) reviewing

6   drafts of filings made in the action; (ii) reading key Court orders and updates about the

7   Litigation; (iii) reviewing and responding to document requests; and (iv) discussing litigation

8   and settlement strategy regularly with Lead Counsel.  *See* Harper Decl., ¶3.

9     Moreover, Plaintiff and Lead Counsel have no interests antagonistic to those of other

10  Class Members, as Plaintiff's and the Class' claims "arise from the same alleged conduct:

11  the purchase of [Sea ADS] at inflated prices based on Defendants' alleged . . .

12  misstatements." *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal.

13  Oct. 10, 2019).  Thus, "[b]ecause Plaintiff's claims are typical of and coextensive with the

14  claims of the . . . Class, [its] interest in obtaining the largest possible recovery is aligned with

15  the interests of the rest of the . . . Class [M]embers."  *See Mild v. PPG Indus.*, 2019 WL

16  3345714, at *3 (C.D. Cal. July 25, 2019).

17    Indeed, the Court already determined on a preliminary basis that Plaintiff and Lead

18  Counsel have adequately represented the putative class.  *See* ECF 75, ¶3.  There are no new

19  developments to disturb that prior finding, and this factor weighs in favor of final approval.

20    **B.**  **The Settlement Was the Result of Arm's-Length Negotiations**

21    The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-

22  collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir.

23  2009).  Here, as required by Rule 23(e)(2)(B), the Settlement was negotiated at arm's length

24  and was only reached after the parties engaged in protracted negotiations led by an

25  experienced and neutral third-party mediator – Mr. Gregory P. Lindstrom.  This process

26  included the exchange of detailed written submissions, an in-person mediation session in

27  New York City, and follow-up telephonic conferences – all of which resulted in a $46

28  million mediator's proposal that the parties ultimately accepted.  *See* Janoski Decl., ¶¶47-48.

1    Mr. Lindstrom's assistance and supervision of this process as a mediator confirms that

2 the negotiations were conducted at arm's length and without collusion.  *See In re Atmel*

3 *Corp. Derivative Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) ("[A

4 mediator's] participation weighs considerably against any inference of a collusive

5 settlement."); *Emond v. Murphy*, 2019 WL 13039332, at *11 (C.D. Cal. Aug. 27, 2019)

6 (finding that settlement achieved through mediation efforts conducted by Mr. Lindstrom

7 were evidence of the "parties' arm length negotiations"); *T.K. Through Leshore v. Bytedance*

8 *Tech. Co.*, 2022 WL 888943, at *11 (N.D. Ill. Mar. 25, 2022) (same); *see also* ECF 75 at 2

9 ("[T]he Court preliminarily finds that: (a) the Settlement resulted from informed, good faith,

10 extensive, arm's-length negotiations between experienced counsel following mediation

11 under the direction of an experienced mediator.").

12    The Settlement is thus entitled to a presumption of fairness, and this factor further

13 supports final approval.

14    **C.    The Settlement Provides Significant Relief for the Class,**
**Particularly Considering the Cost, Risks, and Delay of Litigation**

15    Pursuant to Rule 23(e)(2)(C), the Court considers a number of factors in determining

16 whether "the relief provided for the class is adequate," with relevant overlapping Ninth

17 Circuit factors addressing "the strength of the plaintiffs' case" and "the risk, expense,

18 complexity, and likely duration of further litigation."  Fed. R. Civ. P. 23(e)(2)(C); *Hanlon*,

19 150 F.3d at 1026.  While Plaintiff believes its claims have merit and that it would prevail at

20 class certification, summary judgment, and trial, it nevertheless recognizes that there are

21 numerous risks and uncertainties in proceeding to litigate this case.  As courts have

22 recognized, securities class actions "'are highly complex and [litigating] securities class

23 litigation is notably difficult and notoriously uncertain.'"  *Hefler v. Wells Fargo & Co.*, 2018

24 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F.

25 App'x 285 (9th Cir. 2020).  As discussed below, the benefits conferred on Class Members by

26 the $46 million Settlement far outweigh the costs, risks, and delay of further litigation, and

27 confirm the adequacy and reasonableness of the Settlement.

28

### 1. The Costs, Risks, and Likely Duration of Further Litigation Supports Final Approval

The Settlement provides adequate relief to the Class when taking into account "the costs, risks, and delay of trial and appeal" per Rule 23(e)(2)(C)(i) and the Ninth Circuit factors concerning the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation." *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e)(2)(C)(i). "'In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *DIRECTV*, 221 F.R.D. at 526 (quoting 4 A. Conte & H. Newberg, *Newberg on Class Actions*, §11:50 at 155 (4th ed. 2002)); *see also Salazar v. Midwest Servicing Grp.*, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "[s]ettlement [a]greement's elimination of risk, delay, and further expenses weighs in favor of approval.").

Plaintiff believes the claims alleged in the operative Complaint are strong based on its substantial research, factual investigation, and review of data produced in connection with mediation. However, Plaintiff is also cognizant of the numerous hurdles to establishing liability and inherent risks that complex securities fraud actions pose to plaintiffs. *See Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12129279, at *5 (C.D. Cal. Mar. 13, 2013) ("Courts experienced with securities fraud litigation '"routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."'"); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *8 (N.D. Cal. July 22, 2019) ("Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win."); *Scott v. ZST Digit. Nets., Inc.*, 2013 WL 12126744, at *3 (C.D. Cal. Aug. 5, 2013) ("[C]ases brought under the [PSLRA] . . . involve a 'heightened level of risk' because [the] PSLRA 'makes it more difficult for investors to successfully prosecute securities class actions.'"). To establish a claim under §10(b) of the Exchange Act, Plaintiff would ultimately have to prove: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss

- 8 -

1  causation. *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). Plaintiff

2  would be required to prove each of these elements to prevail at the merits stage, whereas

3  Defendants would need only to succeed on the defense of one element to defeat the claims.

4  The risks of continued litigation are particularly heightened here, where significant

5  portions of Plaintiff's Shopee-related claims have been dismissed and Defendants' motion

6  for reconsideration on the remaining Shopee claims is pending. Even if Plaintiff were to

7  prevail in opposing the motion for reconsideration, additional roadblocks await in discovery

8  – as the majority of evidence and witnesses in this case are located overseas in Singapore,

9  introducing additional uncertainties in conducting vigorous discovery. Moreover, in order to

10 obtain any recovery for the Class as a whole, Plaintiff would still need to prevail at class

11 certification, summary judgment, pretrial motions, trial, and subsequent appeals – a process

12 that would likely extend for years. Settlement is favored here where the case is "'complex

13 and likely to be expensive and lengthy to try,'" and presents numerous risks beyond the

14 "'inherent risks of litigation.'" *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1300-01

15 (S.D. Cal. 2017), *aff'd*, 881 F.3d 1111 (9th Cir. 2018); *see also Khoja v. Orexigen*

16 *Therapeutics, Inc.*, 2021 WL 5632673, at *5 (S.D. Cal. Nov. 30, 2021) ("Had the parties not

17 settled, they would have spent considerable time and effort in discovery and litigating class

18 certification and summary judgment, adding 'further expense to both sides as well as years

19 of delay of any potential recovery for the putative class.'").

20 The $46 million Settlement balances the risks, costs, and delay inherent in complex

21 cases evenly with respect to all parties. Considering the risks of continued litigation and the

22 time and expense that would be incurred to prosecute the Litigation through trial and

23 appeals, the Settlement is clearly in the Class's best interest.

24 **2.    The Proposed Method for Distributing Relief Is Effective**

25 As further discussed below in §§V and VI, *infra*, the Court-approved notice and

26 claims administration processes are effective means of distributing relief to the Class and are

27 in accord with Rule 23(e)(2)(C)(ii). Pursuant to the Preliminary Approval Order, more than

28 198,000 Notices and Postcard Notices were emailed or mailed to potential Class Members

and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire*; and the website created for this Litigation contains key documents for Class Members to adequately inform themselves of the Settlement. *See generally* Segura Decl.

The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements. The Court-appointed Claims Administrator will review and process all Claims received, provide claimants with an opportunity to cure any deficiency or request judicial review of the denial of their Claims, if applicable, and remit Authorized Claimants their *pro rata* share of the Net Settlement Fund, as calculated under the Plan of Allocation, which is designed to equitably distribute the Net Settlement Fund. *See In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235, at *6 (S.D. Cal. Oct. 14, 2022) (finding similar "method of allocating and distributing relief [to be] simple and effective . . . and weigh[ing] in favor of approving the settlement").

### 3. The Proposed Attorneys' Fees Are Both Reasonable and Standard

Rule 23(e)(2)(C)(iii) requires the Court to consider "the terms of any proposed award of attorney's fees, including timing of payment" in evaluating the adequacy of relief provided to the Class. Fed. R. Civ. P. 23(e)(2)(C)(iii). As further discussed in Plaintiff's concurrently-filed motion for attorneys' fees, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Amount and expenses of $123,264.33, plus interest on both amounts. *See generally* Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Class Representative and Memorandum of Law in Support Thereof (filed concurrently herewith) ("Fee Memorandum").

This fee request is consistent with the 25% "benchmark award for attorney fees" in the Ninth Circuit (*see Hanlon*, 150 F.3d at 1029), is approved by Plaintiff (Harper Decl., ¶5), and was fully disclosed in the Postcard Notice and Notice (Segura Decl., Exs. A (Postcard Notice) and B (Notice at 3)). *See also* Fee Memorandum, §III. To date, there have been no objections lodged to the requested fees.

- 10 -

### 4.    The Supplemental Opt-Out Agreement Is Standard

As required to be disclosed in accordance with Rule 23(e)(2)(C)(iv) and Rule 23(e)(3), and as previously disclosed in Plaintiffs' motion for preliminary approval (ECF 72 at 9), the only agreement the parties entered into in addition to the Stipulation was a confidential Supplemental Agreement regarding requests for exclusion.  Stipulation, ¶7.3. The Supplemental Agreement contains a standard "blow provision," whereby Defendants "have the option to terminate the Settlement in the event that Persons who otherwise would be Members of the Class and timely choose to exclude themselves from the Class . . . purchased more than a certain number of shares of Sea's publicly-traded American Depositary Shares during the Class Period."  *Id.*  The Supplemental Agreement is confidential and can be filed under seal or offered to the Court *in camera*, as is customarily done to prevent the disclosure of the precise opt-out threshold """"in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts.""""  *See Fernandez v. Corelogic Credco, LLC*, 2024 WL 538585, at *3 n.7 (S.D. Cal. Feb. 9, 2024); *see also Estakhrian v. Obenstine*, 2016 WL 6517052, at *13 (C.D. Cal. Feb. 16, 2016) (finding the opt-out threshold to be "fair and proper in that it supports the parties in their efforts to ensure th[e] settlement proceeds are directed to class members and not diverted to other parties or [their] attorneys to the detriment of the class"); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact threshold, for practical reasons, was kept confidential").

### D.    The Plan of Allocation Treats Class Members Equitably

In accordance with Rule 23(e)(2)(D), the Plan of Allocation here "treats class members equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Drafted with the assistance of Plaintiff's damages expert, the Plan treats all Class Members equitably because it properly makes certain interclass distinctions based on the timing of purchases in relation to the corrective disclosures alleged in the Complaint, and does not treat Plaintiff or any other Class Member preferentially.  *See Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL

1  1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can

2  be reasonable if it 'fairly treats class members by awarding a pro rata share to every

3  Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia,

4  the relative strengths and weaknesses of class members' individual claims and the timing of

5  purchases of the securities at issue.'").  All eligible Class Members (including Plaintiff) will

6  be subject to the same formulas for distribution of the Settlement, and each Authorized

7  Claimant will receive his, her, or its *pro rata* share of the distribution.  *Mauss v. NuVasive,*

8  *Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that

9  reimburses class members based on the extent of their injuries is generally reasonable.'").

10  ### E.    The Remaining Ninth Circuit Factors Support Final Approval

11  Each of the relevant *Hanlon* factors that are not co-extensive with the Rule 23(e)(2)

12  analysis above also support preliminary approval.

13  ### 1.    The Settlement Amount Supports Final Approval

14  An "analysis of a fair settlement amount must account for the risks of further

15  litigation and trial, as well as expenses and delays associated with continued litigation."

16  *Harris v. Amgen Inc.*, 2017 WL 6048215, at *4 (C.D. Cal. Apr. 4, 2017).  "The Ninth Circuit

17  has explained that 'the proposed settlement is "not to be judged against a hypothetical or

18  speculative measure of what **might** have been achieved by the negotiators."'"  *Santillan v.*

19  *Verizon Connect, Inc.*, 2024 WL 627998, at *6 (S.D. Cal. Feb. 13, 2024).

20  The $46 million Settlement Amount here exceeds both the median ($14 million) and

21  average ($43 million) recovery in federal securities cases settled in 2024.  Edward Flores and

22  Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year*

23  *Review*, at 22, fig. 21, and 23, fig. 22 (NERA Jan. 22, 2025).  As a percentage of estimated

24  damages, the Settlement Amount also exceeds amounts routinely approved by courts.  *See,*

25  *e.g.*, *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *9 (N.D. Cal. Apr. 19, 2021)

26  (approving final settlement representing 2.35% of total estimated damages); *M & M Hart*

27  *Living Tr. v. Glob. Eagle Ent., Inc.*, 2018 WL 11471777, at *6 (C.D. Cal. Nov. 2, 2018)

28  (approving preliminary settlement representing 2.4% of estimated total damages); *In re*

- 12 -

*Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving final settlement representing "approximately 1.3% of the amount of damages that could be achieved"). The immediacy and certainty of a $46 million recovery is of significant benefit to the Class.

### 2. The Extent of Discovery Completed and Stage of Proceedings Support Final Approval

The stage of proceedings and the amount of information available to the parties to assess the strengths and weaknesses of their case is another factor that courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). "'[I]n the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement.'" *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at *7 (N.D. Cal. Mar. 4, 2024).

By the time the parties reached the Settlement, Lead Counsel had a thorough understanding of the merits of the claims alleged in the Litigation and the defenses Defendants would assert. The parties have been actively litigating this matter for more than a year, during which time Lead Counsel engaged in extensive investigation, research, and analysis of the claims – including, *inter alia*, engaging with economic and industry experts, propounding and responding to discovery requests, and reviewing internal financial data, SEC filings, company press releases, analyst reports, and reports in independent news media. In addition, each party's litigation positions were thoroughly vetted during the mediation process with Mr. Lindstrom. In sum, the knowledge and insight gained by Plaintiff and Lead Counsel following extensive investigation, substantial motion practice, hard-fought settlement negotiations, and the review of internal Company data confirm the reasonableness of the Settlement. *See Destefano v. Zynga, Inc.*, 2016 WL 537946, at *12 (N.D. Cal. Feb. 11, 2016). Accordingly, this factor weighs in favor of final approval of the Settlement.

### 3. The Experience and Views of Counsel Support Final Approval

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected

1    outcome in litigation.'" *Rodriguez*, 563 F.3d at 967.  Thus, "'[g]reat weight' is accorded to

2    the recommendation of counsel, who are most closely acquainted with the facts of the

3    underlying litigation." *DIRECTV*, 221 F.R.D. at 528.

4        Lead Counsel has extensive experience representing plaintiffs in securities and other

5    complex class action litigation, and has negotiated numerous substantial class action

6    settlements across the country.  Janoski Decl., ¶¶44, 56.  As a result of this experience, Lead

7    Counsel possessed a firm understanding of the strengths and weaknesses of the claims by the

8    time the Settlement was reached, and concluded that the Settlement is an outstanding result

9    for the Class.  "There is nothing to counter the presumption that Lead Counsel's

10   recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043

11   (N.D. Cal. 2008); *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 720 F. Supp. 1379, 1392

12   (D. Ariz. 1989) ("Counsels' opinions warrant great weight both because of their considerable

13   familiarity with this litigation and because of their extensive experience in similar actions."),

14   *aff'd*, *Class Plaintiffs*, 955 F.2d 1268 (9th Cir. 1992).

15       **4.    The Reaction of the Class Supports Final Approval**

16       The reaction of the class to the settlement is a significant factor in assessing its

17   fairness and adequacy.  To date, over 199,100 Notices and Postcard Notices have been

18   mailed or emailed to potential Class Members and nominees.  *See* Segura Decl., ¶9.

19   Pursuant to the Preliminary Approval Order and as set forth in the Postcard Notice and

20   Notice, potential Class Members have until June 10, 2025 to request exclusion from the

21   Class or to object to the Settlement, Plan of Allocation, Lead Counsel's request for an award

22   of attorneys' fees and litigation expenses, and Plaintiffs' request for an award pursuant to 15

23   U.S.C. §78u-4(a)(4).  Since the mailing of the Postcard Notice and publication of the

24   Summary Notice, there have been zero objections and only one request for exclusion from

25   the Class to date.  *See* Janoski Decl., ¶12; Segura Decl., ¶13.  Accordingly, Plaintiff

26   respectfully submits that this factor weighs heavily in favor of the fairness and

27   reasonableness of the Settlement, and of final approval.  *See Apollo*, 2012 WL 1378677, at

28   *3 ("'[T]he absence of a large number of objections to a proposed class action settlement

- 14 -

1  raises a strong presumption that the terms of a proposed class settlement action are favorable

2  to the class members.'").

3  **IV.   CLASS CERTIFICATION REMAINS APPROPRIATE**

4        "Final approval of a class action settlement requires, as a threshold matter, an

5  assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure

6  23(a) and (b)."  *Garrett v. Advantage Plus Credit Reporting Inc.*, 2024 WL 1603442, at *2

7  (D. Ariz. Apr. 12, 2024) (citing *Hanlon*, 150 F.3d at 1019-22).

8        The Court previously found that all the requirements of Rules 23(a) and 23(b)(3) were

9  satisfied when it preliminarily certified the Class in its Preliminary Approval Order.  *See*

10  ECF 75, ¶¶2-4.  There have been no changes or developments with respect to any of the class

11  certification factors since the Court preliminarily certified the Class on March 18, 2025.

12  Thus, the Court should reaffirm its holding in the Preliminary Approval Order and certify the

13  Class for purposes of the Settlement pursuant to Rules 23(a) and 23(b)(3), appoint Plaintiff

14  as Class Representative, and appoint Lead Counsel as Class Counsel pursuant to Rule 23(g).

15  *See Garrett*, 2024 WL 1603442, at *2 ("Because no facts that would affect these

16  requirements have changed since the Court preliminarily approved the class . . . this Order

17  incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the

18  Preliminary Approval Order. . . . [and] class certification is granted."); *Zwicky v. Diamond*

19  *Resorts Inc.*, 2024 WL 1717553, at *4 (D. Ariz. Apr. 22, 2024) (same).

20  **V.   THE PLAN OF ALLOCATION WARRANTS FINAL APPROVAL**

21        The Plan of Allocation is considered separately from the fairness of the Settlement but

22  is governed by the same legal standards: the plan must be fair and reasonable.  *See Class*

23  *Plaintiffs*, 955 F.2d at 1284; *see also Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal.

24  Apr. 20, 2021) ("'[C]ourts recognize that an allocation formula need only have a reasonable,

25  rational basis, particularly if recommended by experienced and competent counsel.'").

26        Here, the Plan provides for an equitable distribution of the Net Settlement Fund

27  among Class Members who have a recognizable loss on their transactions in Sea ADSs

28  purchased or otherwise acquired during the Class Period.  Janoski Decl., ¶53.  The formula

1    to apportion the Net Settlement Fund is based on when Class Members purchased, acquired,

2    and/or sold their shares of Sea ADSs, and accounts for the statutory 90-day look-back period

3    imposed by the PSLRA. *Id.*; *see also* Segura Decl., Ex. B (Notice at 13-14); *NuVasive*, 2018

4    WL 6421623, at *4 ("'A plan of allocation that reimburses class members based on the

5    extent of their injuries is generally reasonable.'").

6        Under the Plan, the Court-appointed Claims Administrator will calculate each

7    Authorized Claimant's "Recognized Claim," based on the information supplied in the Proof

8    of Claim.  Segura Decl., Ex. B (Notice at 13-18).  The Net Settlement Fund will then be

9    allocated on a *pro rata* basis to Authorized Claimants with a recognizable loss of more than

10   $10 based on each Authorized Claimant's Recognized Claim.  *In re Regulus Therapeutics*

11   *Sec. Litig.*, 2020 WL 6381898, at *5 (S.D. Cal. Oct. 30, 2020) ("A plan [of allocation] 'fairly

12   treats class members by awarding a *pro rata* share to every Authorized Claimant, [even as it]

13   sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and

14   weaknesses of class members' individual claims and the timing of purchases of the securities

15   at issue.'") (second alteration in original).

16       This Plan was prepared after careful consideration and with the assistance of a

17   damages expert and the Claims Administrator.  Janoski Decl., ¶53.  The Plan was also fully

18   disclosed in the Notice made available to potential Class Members and nominees.  Segura

19   Decl., Ex. B (Notice at 13-18).  To date, there have been zero objections to the Plan.  As a

20   result, the Plan of Allocation is fair and reasonable and should be approved.

21   **VI.    NOTICE TO THE CLASS SATISFIED DUE PROCESS**

22       Rule 23 requires the Court to "direct notice in a reasonable manner to all class

23   members who would be bound by the proposal," and to "direct to class members the best

24   notice that is practicable under the circumstances, including individual notice to all members

25   who can be identified through reasonable effort."  Fed. R. Civ. P. 23(e)(1)(B); Fed. R. Civ.

26   P. 23(c)(2)(B).  The notice must describe "'"the terms of the settlement in sufficient detail to

27   alert those with adverse viewpoints to investigate and to come forward and be heard."'"

28   *Rodriguez*, 563 F.3d at 962.  The PSLRA further requires that the settlement notice include a

1  statement explaining a plaintiff's recovery "to allow class members to evaluate a proposed

2  settlement." *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d 962, 969 (9th Cir. 2007); 15

3  U.S.C. §78u-4(a)(7)(A).

4          Notice was issued to the Class here in accordance with the Court-approved process.

5  ECF 75, ¶¶7-11.  Over 199,100 copies of the Court-approved Notice and Postcard Notice

6  have been mailed or emailed to potential Class Members and their nominees who could be

7  identified with reasonable effort.  *See* Segura Decl., ¶9.  The Claims Administrator also

8  provided all information regarding the Settlement online through the Settlement website, and

9  published the Court-approved Summary Notice in *The Wall Street Journal* and over *PR*

10  *Newswire*. *Id.*, ¶10.  The Notice provides the necessary information for Class Members to

11  make an informed decision regarding the proposed Settlement, and further explains how the

12  Net Settlement Fund will be distributed to eligible Class Members who submit valid and

13  timely Proofs of Claim.  "Under the circumstances, the Parties' notice plan constituted the

14  best notice practicable, adequately informed the Class Members regarding the terms of the

15  proposed settlement, including their rights to exclude themselves or opt-out and by when,

16  and fully satisfied the requirements of Rule 23, the requirements of due process, and any

17  other applicable law." *See Apollo*, 2012 WL 1378677, at *3.

18  **VII.   CONCLUSION**

19          For each of the reasons set forth herein and in the Janoski Declaration, Plaintiff

20  respectfully submits that the Settlement and Plan of Allocation are fair, reasonable, and

21  adequate, and respectfully requests that the Court: (i) grant final approval of the Settlement;

22  (ii) certify the Class; and (iii) approve the Plan of Allocation as a fair and reasonable method

23  for distributing the Net Settlement Fund to the Class.

24  DATED: May 27, 2025                    Respectfully submitted,

25                                         ROBBINS GELLER RUDMAN
26                                            & DOWD LLP

27                                              *s/ Marco Janoski*
                                           J. MARCO JANOSKI GRAY
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

THEODORE J. PINTAR
TOR GRONBORG
T. ALEX B. FOLKERTH
JESSICA E. ROBERTSON
EVELYN SANCHEZ GONZALEZ
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
jrobertson@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiff

ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

4901-9315-8979.v1