ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
    & DOWD LLP
THEODORE J. PINTAR (admitted *pro hac vice*)
TOR GRONBORG (admitted *pro hac vice*)
J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
jrobertson@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Laborers District Council Construction Industry Pension Fund, et al.,<br><br>        Plaintiffs,<br><br> vs.<br><br>Sea Limited, et al.,<br><br>        Defendants. | No. CV-23-01455-PHX-DLR<br><br>Consolidated with<br>Case No. 23-01889-PHX-SRB<br><br><u>CLASS ACTION</u><br><br>LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO CLASS REPRESENTATIVE AND MEMORANDUM OF LAW IN SUPPORT THEREOF |

4896-8795-9875.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................ 2

II.     PROCEDURAL AND FACTUAL BACKGROUND ............................................. 4

III.    LEAD COUNSEL'S REQUESTED FEE IS FAIR AND REASONABLE ............ 4

        A.      A Reasonable Percentage of the Settlement Fund Is the Appropriate
                Method for Awarding Attorneys' Fees ........................................................ 4

        B.      The Court Should Approve a 25% Fee in This Case ................................... 6

                1.      Lead Counsel Achieved an Excellent Result for the Class ............... 7

                2.      The Litigation Was Uncertain and Highly Complex ........................ 8

                3.      The Skill Required and Quality of Work ........................................ 11

                4.      The Contingent Nature of the Fee and the Financial Burden
                        Carried by Lead Counsel .................................................................. 12

                5.      Awards Made in Similar Cases Support the Fee Request ............... 13

                6.      The Class's Reaction to Date Supports the Fee Request ................ 13

IV.     LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE
        AND SHOULD BE APPROVED ..................................................................... 14

V.      PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C.
        §78u-4(a)(4) IS REASONABLE .................................................................. 16

VI.     CONCLUSION ......................................................................................... 17

- i -

4896-8795-9875.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Austin v. Foodliner, Inc.*,
2019 WL 2077851 (N.D. Cal. May 10, 2019) ................................................................ 6

*Avila v. LifeLock Inc.*,
2020 WL 4362394 (D. Ariz. July 27, 2020) .................................................................. 6

*Baird v. BlackRock Institutional Tr. Co., N.A.*,
2021 WL 5113030 (N.D. Cal. Nov. 3, 2021) ................................................................ 6

*Blum v. Stenson*,
465 U.S. 886 (1984) ...................................................................................................... 4

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ...................................................................................................... 4

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ................................................................ 7

*Eng v. Edison Int'l*,
2018 WL 1367419 (S.D. Cal. Mar. 16, 2018),
*aff'd sub nom.*, *City of Fort Lauderdale Gen. Emps.' Ret. Sys. v. Edison Int'l*,
786 F. App'x 685 (9th Cir. 2019) ................................................................................ 8

*Fleming v. Impax Lab'ys Inc.*,
2022 WL 2789496 (N.D. Cal. July 15, 2022).................................................... 14, 15, 17

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ................................................................................ 5

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .......................................................................................... 15

*Hatamian v. Advanced Micro Devices, Inc.*,
2018 WL 8950656 (N.D. Cal. Mar. 2, 2018)......................................................... 14, 17

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
*aff'd sub nom. Hefler v. Pekoc*,
802 F. App'x 285 (9th Cir. 2020) .......................................................................... 7, 8, 14

4896-8795-9875.v1

**Page**

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) ................................................................................................ 7

*In re Am. Apparel, Inc. S'holder Litig.,*
2014 WL 10212865 (C.D. Cal. July 28, 2014) ............................................................ 5

*In re Amkor Tech., Inc. Sec. Litig.,*
2009 WL 10708030 (D. Ariz. Nov. 19, 2009) ............................................................. 5

*In re Apollo Grp., Inc. Sec. Litig.,*
2008 WL 3072731 (D. Ariz. Aug. 4, 2008) ................................................................. 10

*In re Apollo Grp. Inc. Sec. Litig.,*
2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................................................ 7

*In re Bluetooth Headset Prods. Liab. Litig.,*
654 F.3d 935 (9th Cir. 2011) .......................................................................... 4, 5, 6

*In re Broadcom Corp. Sec. Litig.,*
2005 WL 8153006 (C.D. Cal. Sept. 12, 2005) ............................................................ 7

*In re Broiler Chicken Antitrust Litig.,*
2021 WL 5709250 (N.D. Ill. Dec. 1, 2021) ................................................................ 7

*In re Crocs, Inc. Sec. Litig.,*
306 F.R.D. 672 (D. Colo. 2014) .................................................................................. 8

*In re Immune Response Sec. Litig.,*
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ....................................................................... 15

*In re JDS Uniphase Corp. Sec. Litig.,*
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) ............................................................ 13

*In re Korean Air Lines Co., Antitrust Litig.,*
2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) .......................................................... 2, 4

*In re Limelight Networks, Inc. Sec. Litig.,*
2011 WL 13185749 (D. Ariz. Mar. 23, 2011) ............................................................ 4

*In re Maxwell Techs. Inc., Sec. Litig.,*
2015 WL 12791401 (S.D. Cal. Feb. 17, 2015) ........................................................... 16

4896-8795-9875.v1

**Page**

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) .................................................................................. 7

*In re Mylan N.V. Sec. Litig.*,
666 F. Supp. 3d 266 (S.D.N.Y. 2023),
*aff'd sub nom.*, *Menorah Mivtachim Ins. Ltd. v. Sheehan*,
2024 WL 1613907 (2d Cir. Apr. 15, 2024) ............................................................ 9

*In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*,
768 F. App'x 651 (9th Cir. 2019) ........................................................................... 4

*In re: NFL "Sunday Ticket" Antitrust Litig.*,
2024 WL 3628118 (C.D. Cal. Aug. 1, 2024)......................................................... 10

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .................................................... 5, 8, 15

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................... 2, 6, 7, 8

*In re Rite Aid Corp. Sec. Litig.*,
396 F.3d 294 (3d Cir. 2005) ................................................................................... 5

*In re Tesla, Inc. Sec. Litig.*,
2022 WL 1497559 (N.D. Cal. Apr. 1, 2022)................................................... 10, 13

*In re Tesla, Inc. Sec. Litig.*,
No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023)............................... 10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
2017 WL 1047834 (N.D. Cal. Mar. 17, 2017)............................................ 10, 12, 13

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994) ................................................................................. 12

*Jackson v. Microchip Tech. Inc.*,
2022 WL 22862142 (D. Ariz. June 27, 2022) ......................................................... 6

*Khoja v. Orexigen Therapeutics, Inc.*,
2021 WL 5632673 (S.D. Cal. Nov. 30, 2021)..................................................... 7, 16

*Loc. 617 Teamsters Pension & Welfare Funds v. Apollo Grp., Inc.*,
2015 WL 14094978 (D. Ariz. July 29, 2015).......................................................... 6

- iv -

4896-8795-9875.v1

**Page**

*McPhail v. First Command Fin. Plan., Inc.*,
2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ................................................................ 17

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .................................................................................. 14

*Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v.*
*First Solar Inc.*,
2023 WL 4161355 (D. Ariz. June 23, 2023) .................................................................. 8

*Pataky v. Brigantine, Inc.*,
2019 WL 183583 (S.D. Cal. Jan. 14, 2019) ................................................................... 6

*Pearlstein v. Blackberry Ltd.*,
2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022) ............................................................. 10

*Persian Gulf Inc. v. BP W. Coast Prods. LLC*,
632 F. Supp. 3d 1108 (S.D. Cal. Sept. 30, 2022) ........................................................ 12

*Plumley v. Sempra Energy*,
2018 WL 1470224 (S.D. Cal. Mar. 26, 2018),
*aff'd*, 847 F. App'x 426 (9th Cir. 2021) ......................................................................... 8

*Purple Mountain Tr. v. Wells Fargo & Co.*,
2023 WL 11872699 (N.D. Cal. Sept. 26, 2023) ............................................................ 7

*Quintana v. HealthPlanOne LLC*,
2019 WL 3342339 (D. Ariz. July 25, 2019) ................................................................. 11

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) ............................................................... 15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ....................................................................................... 16

*Savani v. URS Pro. Sols. LLC*,
2014 WL 172503 (D.S.C. Jan. 15, 2014) ..................................................................... 12

*Stanger v. China Elec. Motor, Inc.*,
812 F.3d 734 (9th Cir. 2016) ....................................................................................... 12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ....................................................................................... 16

4896-8795-9875.v1

**Page**

*Vincent v. Hughes Air W., Inc.*,
    557 F.2d 759 (9th Cir. 1977) .................................................................................... 4

*Vincent v. Reser*,
    2013 WL 621865 (N.D. Cal. Feb. 19, 2013) ............................................................ 15

*Vinh Nguyen v. Radient Pharms. Corp.*,
    2014 WL 1802293 (C.D. Cal. May 6, 2014) ......................................................... 5, 10

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .......................................................................... 4, 8, 13

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) .................................................................................... 11

*Wong v. Arlo Techs., Inc.*,
    2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) .............................................................. 8

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
    §78u-4(a)(4) ....................................................................................... 3, 16, 17
    §78u-4(a)(6) .................................................................................................... 5

**SECONDARY AUTHORITIES**

Charles Silver,
    *Due Process & the Lodestar Method: You Can't Get There from Here*
    74 Tul. L. Rev. 1809 (2000) ...................................................................................... 5

Edward Flores and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*
    (NERA Jan. 22, 2025).................................................................................................. 8

4896-8795-9875.v1

# MOTION

Lead Counsel Robbins Geller Rudman & Dowd LLP ("Lead Counsel" or "Robbins Geller") hereby respectfully moves the Court for an order: (i) awarding Lead Counsel attorneys' fees of 25% of the Settlement Amount and granting payment of $123,264.33 in litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund; and (ii) awarding Lead Plaintiff Laborers District Council Construction Industry Pension Fund ("Plaintiff" or "LDC") $7,720 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.[1]

This Motion is made on the grounds that the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees, that Lead Counsel's requested fee of 25% of the Settlement Amount is the "benchmark" percentage rate in the Ninth Circuit, that Lead Counsel is entitled to the payment of litigation expenses it advanced for the benefit of the Class, and that LDC is entitled to a reasonable award based on the time it spent directly related to its representation of the Class as Lead Plaintiff (*see* 15 U.S.C. §78u-4(a)(4)).  In support of this Motion, Lead Counsel submits the below Memorandum of Law, along with the concurrently-filed Declaration of J. Marco Janoski Gray in Support of Motions for: (1) Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) an Award of Attorneys' Fees and Expenses and Award to Class Representative ("Janoski Declaration" or "Janoski Decl."), Declaration of J. Marco Janoski Gray Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Decl."), Declaration of James N. Harper, Jr. ("Harper Decl."), Declaration of Luiggy Segura Regarding Notice Dissemination, Publication, and Requests for Exclusion Received to Date ("Segura Decl."), as well as all exhibits attached thereto, all prior pleadings and papers in

---

[1]    Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation of Settlement dated March 14, 2025 (ECF 73-1) (the "Stipulation") and in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support Thereof (ECF 72).

- 1 -

this Litigation, the arguments of counsel, and such additional information or argument as may be required by the Court.

Proposed orders will be submitted with Lead Counsel's reply submission on June 24, 2025, after the June 10, 2025 deadline for Class Members to object to the fee and expense request has passed.

**MEMORANDUM OF LAW**

## I.     INTRODUCTION

After more than a year of hard-fought litigation, Lead Counsel secured the $46,000,000 cash Settlement for the benefit of the Class.  If approved by the Court, the Settlement would stand among the largest securities class action recoveries in this District.

This significant recovery would not have been possible without the relentless and skillful advocacy of Lead Counsel on behalf of the Class.  As compensation for its efforts in achieving this result, Lead Counsel respectfully requests that the Court award a percentage fee of 25% of the Settlement Amount, plus the interest earned thereon at the same rate as that earned on the Settlement Fund.  The "percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees." *In re Korean Air Lines Co., Antitrust Litig.*, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013).  Lead Counsel's 25% fee request, approved by Plaintiff (*see* Harper Decl., ¶5), is the "benchmark" rate that courts in the Ninth Circuit consider presumptively reasonable in common fund cases such as this one.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995).  Moreover, it is an eminently fair and reasonable fee based on the facts and circumstances here.

The quality of Lead Counsel's representation, its efforts on behalf of the Class, and the high stakes of the case support the requested fee award.  In ultimately obtaining the Settlement, Lead Counsel: (i) investigated, drafted, and filed a detailed Consolidated Complaint for Violations of the Federal Securities Laws (ECF 31) (the "Complaint"); (ii) successfully obtained an order from the Court approving alternative service of process on the Individual Defendants (ECF 44); (iii) successfully opposed Sea's motion to transfer this

- 2 -

case to the United States District Court for the Southern District of New York (ECF 54); (iv) successfully opposed Defendants' motion to dismiss the Complaint (ECF 55); (v) opposed Defendants' motion for partial reconsideration of the Court's motion to dismiss order, which remained pending at the time of the Settlement (ECFs 58, 61); (vi) propounded and negotiated discovery requests; and (vii) reviewed confidential financial data produced by Defendants, consulted with experts on merits and damages issues, and prepared detailed mediation statements in connection with the mediation negotiations conducted under the supervision of Gregory P. Lindstrom, an experienced third-party mediator of Phillips ADR Enterprises. *See* Janoski Decl., ¶¶4, 23-42, 47-48. Defendants, represented by one of the nation's most well-respected law firms, vigorously contested liability and damages throughout.

In addition, Lead Counsel's litigation expenses and charges of $123,264.33 (plus interest accrued thereon) should be paid in full, as they were reasonably and necessarily incurred in the prosecution of the Litigation. RGRD Decl., ¶¶4-5. Similarly, Plaintiff requests a reasonable award of $7,720 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. Harper Decl., ¶6.

Notice of these requests was provided to potential Class Members in accordance with the Preliminary Approval Order. *See generally* Segura Decl. Specifically, the Court-approved notices advised potential Class Members that Lead Counsel would apply for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and payment of litigation expenses in an amount not to exceed $200,000, plus interest on both amounts. *Id.*, Exs. A and B (Postcard Notice & Notice). Additionally, the Notice advised potential Class Members that Plaintiff may seek up to $20,000 pursuant to 15 U.S.C. §78u-4(a)(4). *Id.*, Ex. B (Notice). To date, no objections have been lodged to the requested attorneys' fees and expenses or the requested plaintiff award. Janoski Decl., ¶12.[2]

Accordingly, Lead Counsel respectfully requests that the Court grant the motion.

---

[2] The deadline for filing objections is June 10, 2025. Should any objections be received, Lead Counsel will address them in its reply, due on June 24, 2025.

- 3 -

4896-8795-9875.v1

## II.   PROCEDURAL AND FACTUAL BACKGROUND

Lead Counsel respectfully refers the Court to the accompanying Janoski Declaration for a detailed description of the procedural history of the Litigation, the claims asserted, the investigation and discovery undertaken, the parties' motion practice, the negotiations and mediation process resulting in the Settlement, and the risks and uncertainties involved in prosecuting this Litigation through trial.  *See generally* Janoski Declaration.

## III.   LEAD COUNSEL'S REQUESTED FEE IS FAIR AND REASONABLE

### A.   A Reasonable Percentage of the Settlement Fund Is the Appropriate Method for Awarding Attorneys' Fees

The Supreme Court and Ninth Circuit have long held that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("[A] private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."); *accord In re Nat'l Collegiate Athletic Ass'n Grant-in-Aid Cap Antitrust Litig.*, 768 F. App'x 651, 653 (9th Cir. 2019).[3]

Under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984).  The Ninth Circuit has expressly and consistently approved the use of the percentage-of-recovery method in common fund cases. *See, e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011).  Indeed, "[t]he use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *Korean Air Lines*, 2013 WL 7985367, at *1; *see also In re Limelight*

---

[3]   Citations are omitted and emphasis is added throughout unless otherwise indicated.

- 4 -

4896-8795-9875.v1

*Networks, Inc. Sec. Litig.*, 2011 WL 13185749, at *1 (D. Ariz. Mar. 23, 2011) ("In class action suits where a fund is recovered and fees are awarded therefrom by the court, the Supreme Court has indicated that computing fees as a percentage of the common fund recovered is the proper approach."); *In re Amkor Tech., Inc. Sec. Litig.*, 2009 WL 10708030, at *1 (D. Ariz. Nov. 19, 2009) (percentage-of-recovery method most appropriate to award attorneys' fees in securities class action); *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("[U]se of the percentage method in common fund cases appears to be dominant.").

The Private Securities Litigation Reform Act's ("PSLRA") statutory text itself confirms that fees ought to be awarded on a percentage basis, authorizing attorneys' fees and expenses to counsel not to exceed "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. §78u-4(a)(6); *see also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 300 (3d Cir. 2005) ("[T]he percentage-of-recovery method was incorporated in the [PSLRA]."); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *20 (C.D. Cal. July 28, 2014) ("'Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.'").

The percentage-of-recovery method is particularly appropriate in common fund cases like this where "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942; *see also Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456-57 (9th Cir. 2009) (overruling objection based on use of percentage-of-the-fund approach). Among other benefits, the percentage-of-recovery method decreases the burden imposed on courts by eliminating a detailed and "more time-consuming" lodestar analysis. *Bluetooth*, 654 F.3d at 942. It is also consistent with the practice in the private marketplace where contingent fee attorneys are customarily compensated by a percentage of the recovery. *See Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014). Moreover, it more closely aligns "the lawyers' interests with achieving the highest award for the class members" in the shortest amount of time. *Id.*; *see also* Charles Silver, *Due Process & the*

- 5 -

*Lodestar Method: You Can't Get There from Here*, 74 Tul. L. Rev. 1809, 1819-20 (2000) ("The consensus that the contingent percentage approach creates a closer harmony of interests between class counsel and absent plaintiffs than the lodestar method is strikingly broad.  It includes leading academics, researchers at the RAND Institute for Civil Justice, and many judges . . . .  Indeed, it is difficult to find anyone who contends otherwise.").

Thus, for all of these reasons, the Court should award attorneys' fees under the percentage-of-recovery method.

**B.      The Court Should Approve a 25% Fee in This Case**

Under the percentage-of-recovery approach, the Ninth Circuit instructs that "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *Pac. Enters.*, 47 F.3d at 379; *Bluetooth*, 654 F.3d at 942 (Courts in the Ninth Circuit "typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award."). Because Lead Counsel's request for attorneys' fees is precisely at the 25% benchmark, it is "presumptively reasonable."  *See Baird v. BlackRock Institutional Tr. Co., N.A.*, 2021 WL 5113030, at *7 (N.D. Cal. Nov. 3, 2021); *see also Pataky v. Brigantine, Inc.*, 2019 WL 183583, at *6 (S.D. Cal. Jan. 14, 2019) ("The Ninth Circuit benchmark rate is twenty-five percent . . . which is *prima facie* support for the reasonableness of the fees requested by Class Counsel."); *Austin v. Foodliner, Inc.*, 2019 WL 2077851, at *7 (N.D. Cal. May 10, 2019) ("[T]he 25% requested [fee] is the federal law benchmark and is thus presumptively reasonable.").

The benchmark 25% fee requested here is also endorsed by Plaintiff and is at the lower end of the range of percentage fees that this Court and others in this District have awarded in other complex class actions.  *See, e.g.*, *Jackson v. Microchip Tech. Inc.*, 2022 WL 22862142, at *1 (D. Ariz. June 27, 2022) (Silver, J.) (awarding 25% of the settlement amount as reasonable attorneys' fees); *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *2 (D. Ariz. July 27, 2020) (Bolton, J.) (awarding 30% of the recovery and finding that "[t]he amount of attorneys' fees awarded are fair and reasonable and are consistent with fee awards approved in cases within the Ninth Circuit"); *Loc. 617 Teamsters Pension & Welfare Funds*

- 6 -

*v. Apollo Grp., Inc.*, 2015 WL 14094978, at *1 (D. Ariz. July 29, 2015) (Rayes, J.) (awarding 25% and finding that "the amount of fees awarded is fair and reasonable under the 'percentage-of-recovery' method"); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (Teilborg, J.) (awarding 33.33%).

Moreover, courts in this Circuit routinely award attorneys' fees at or above the 25% benchmark rate in securities fraud class actions. *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 2023 WL 11872699, at *4 (N.D. Cal. Sept. 26, 2023) (finding attorneys' fees of 25% of the $300 million settlement to be "fair and reasonable under the 'percentage-of-recovery' method"); *Khoja v. Orexigen Therapeutics, Inc.*, 2021 WL 5632673, at *9 (S.D. Cal. Nov. 30, 2021) (awarding 33%, stating that "attorneys' fee awards from settlements involving a common fund . . . frequently exceed the 25 percent benchmark"); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *22 (N.D. Cal. Feb. 11, 2016) (approving 25%); *In re Broadcom Corp. Sec. Litig.*, 2005 WL 8153006, at *5 (C.D. Cal. Sept. 12, 2005) (same). *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming 33-1/3% fee award); *Pac. Enters.*, 47 F.3d at 379 (same).

Application of each of the factors utilized by the Ninth Circuit to assess fee applications further confirms that the requested benchmark fee is both fair and reasonable.

### 1.    Lead Counsel Achieved an Excellent Result for the Class

Courts have repeatedly recognized that the result achieved is "the most critical factor" to consider in granting a fee request. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020). In fact, clients care most about results and would willingly pay, and are financially better off paying, a larger fee for a great result than a lower fee for a poor outcome and, as a result, "want to incentivize their counsel to pursue every last settlement dollar." *In re Broiler Chicken Antitrust Litig.*, 2021 WL 5709250, at *3 (N.D. Ill. Dec. 1, 2021) ("Clients generally want to incentivize their counsel to pursue every last settlement dollar . . . .").

- 7 -

4896-8795-9875.v1

Here, against substantial risks of continued litigation, Lead Counsel obtained an excellent recovery for the Class both in terms of overall amount ($46,000,000) and as a percentage of the estimated recoverable damages (between 5% and 10%).  The $46 million Settlement exceeds both the median ($14 million) and average ($43 million) recovery in federal securities cases settled in 2024.  Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 22, fig. 21, and 23, fig. 22 (NERA Jan. 22, 2025) ("NERA Report").  As a percentage of potential recovery, the Settlement also exceeds amounts routinely approved by courts and further supports Lead Counsel's fee request.  *See Omnivision*, 559 F. Supp. 2d at 1042, 1046 (crediting a settlement that represents 9% of total damages as "a substantial achievement on behalf of the class, and weighs in favor of granting the requested 28% fee"); *Wong v. Arlo Techs., Inc.*, 2021 WL 1531171, at *9, *11 (N.D. Cal. Apr. 19, 2021) (awarding 25% fee in settlement representing 2.35% of total estimated damages); *In re Crocs, Inc. Sec. Litig.*, 306 F.R.D. 672, 691 n.20 (D. Colo. 2014) (approving final settlement representing "approximately 1.3% of the amount of damages that could be achieved").

The outstanding result obtained for the Class here supports Lead Counsel's fee request and merits an appropriate fee that encourages counsel to seek excellent results.

### 2.    The Litigation Was Uncertain and Highly Complex

The "complexity of the issues and the risks" undertaken are also important factors in determining a fee award.  *Pac. Enters.*, 47 F.3d at 379; *see also Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance.").  "'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain.'"  *Hefler*, 2018 WL 6619983, at *13.  According to NERA, since 2015, more PSLRA cases have been dismissed than settled.  NERA Report at 13; *see also, e.g.*, *Palm Harbor Special Fire Control & Rescue Dist. Firefighters Pension Plan v. First Solar Inc.*, 2023 WL 4161355, at *8 (D. Ariz. June 23, 2023) (dismissing securities class action with prejudice); *Plumley v. Sempra Energy*, 2018 WL 1470224 (S.D. Cal. Mar. 26, 2018) (dismissing securities class action with prejudice), *aff'd*, 847 F. App'x 426 (9th Cir. 2021); *Eng v. Edison Int'l*, 2018 WL

- 8 -

1367419, at *1 (S.D. Cal. Mar. 16, 2018) (same), *aff'd sub nom.*, *City of Fort Lauderdale Gen. Emps.' Ret. Sys. v. Edison Int'l*, 786 F. App'x 685 (9th Cir. 2019).

Despite its ultimate success, Lead Counsel assumed (and would have further assumed) significant risk at every procedural step of this Litigation. *See* Janoski Decl., ¶¶43-45, 54-55, 59-61. In their motion to dismiss the operative Complaint, Defendants aggressively sought outright dismissal of the entire Litigation. Defendants were partly successful in dismissing some of the alleged misstatements concerning the Sea's Shopee business. *See* ECF 55 at 15, 19-21, 24, 29. Thereafter, Defendants sought to dismiss the rest of the Shopee-related claims by filing a motion for reconsideration on the remaining Shopee-related claims that had been upheld by the Court. ECF 58. This motion remained pending as the parties reached the Settlement, posing further risk of reducing Defendants' liability and Plaintiff's claimed damages.

But even assuming Plaintiff had prevailed in opposing the motion for reconsideration, Plaintiff would have had to overcome substantial obstacles in discovery – as the majority of evidence and witnesses were located overseas in Singapore, introducing additional uncertainties in conducting vigorous discovery. Janoski Decl., ¶¶44, 54. Moreover, in order to obtain any recovery for the Class as a whole, Plaintiff would have still needed to prevail at class certification, summary judgment, pretrial motions, trial, and subsequent appeals, which would likely extend for many years. Even if discovery had provided compelling evidence, Defendants surely would have sought summary judgment of the entire action. *See, e.g.*, *In re Mylan N.V. Sec. Litig.*, 666 F. Supp. 3d 266, 314-24 (S.D.N.Y. 2023) (granting summary judgment and dismissing securities fraud claims), *aff'd sub nom.*, *Menorah Mivtachim Ins. Ltd. v. Sheehan*, 2024 WL 1613907 (2d Cir. Apr. 15, 2024).

At trial, the case would have turned largely on expert testimony concerning Sea's gaming and e-commerce business segments, loss causation, and damages matters, as well as the credibility of fact witnesses – nearly all of whom would likely be represented by defense counsel. Defendants need only defeat one element of Plaintiff's claims to prevail, and there is a significant risk the jury would agree with Defendants' experts and find no liability, no

- 9 -

damages, or award far less than Plaintiff sought to recover. *See, e.g.*, *Radient Pharms.*, 2014 WL 1802293, at \*2 (noting, in securities class actions, that "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law.  The outcome of that analysis is inherently difficult to predict and risky."); *see also, e.g.*, *In re Tesla, Inc. Sec. Litig.*, 2022 WL 1497559 (N.D. Cal. Apr. 1, 2022); *In re Tesla, Inc. Sec. Litig.*, No. 3:18-cv-04865-EMC, ECF 671 (N.D. Cal. Feb. 3, 2023) (jury verdict returned in securities fraud defendants' favor where court had previously granted summary judgment for plaintiffs on certain elements).  And even if Plaintiff survived summary judgment and obtained a favorable verdict at the liability phase of trial, it would ***still*** have faced the risk of partial or complete reversal in post-trial proceedings.  *See, e.g.*, *In re: NFL "Sunday Ticket" Antitrust Litig.*, 2024 WL 3628118, at \*1 (C.D. Cal. Aug. 1, 2024) (granting defendants' motion for judgment as a matter of law after class action plaintiffs obtained a jury verdict for more than $4.6 billion after nearly nine years of litigation); *Pearlstein v. Blackberry Ltd.*, 2022 WL 4554858, at \*3 (S.D.N.Y. Sept. 29, 2022) ("Even very large judgments recovered after lengthy litigation and trial can be completely lost on appeal or because of post-trial motion practice.  This is especially true of securities class actions, where intervening shifts in legal standards have undermined trial victories."); *In re Apollo Grp., Inc. Sec. Litig.*, 2008 WL 3072731, at \*6 (D. Ariz. Aug. 4, 2008), (court granted motion for a judgment as a matter of law, overturning $277 million verdict in favor of plaintiffs based on insufficient evidence of loss causation).

Thus, there existed a significant risk that class-wide recoverable damages would have been far less than $46 million, including the risk of no recovery at all.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2017 WL 1047834, at \*2 (N.D. Cal. Mar. 17, 2017) ("'Class Counsel "recognize there are always uncertainties in litigation." It is possible that "a litigation Class would receive less or nothing at all, despite the compelling merit of its claims . . . ."'").  And any recovery absent the Settlement "'"would come years in the future and at far greater expense to the . . . Class."'"  *Id.*

- 10 -

The Settlement achieved here in the face of these significant risks supports the requested 25% fee award.

### 3. The Skill Required and Quality of Work

The quality of Lead Counsel's representation further supports the reasonableness of the requested fee. Robbins Geller is a nationally recognized leader in securities class actions and complex litigation. *See* RGRD Decl., Ex. D. Robbins Geller has a track record of trying securities class action cases or settling cases at a premium and known for its determined advocacy. Clients retain Lead Counsel to benefit from its experience and resources in order to obtain the largest possible recovery for the class in question. In this case, Lead Counsel went above and beyond the ordinary course to ensure that the Class would receive a favorable result by, *inter alia*, conducting an extensive factual investigation in preparing the operative Complaint; obtaining alternative service on the Individual Defendants; defeating Defendants' motion to transfer and motion to dismiss; propounding and negotiating discovery requests on Defendants; consulting with experts on merits and damages issues; and reviewing confidential data produced by Defendants pursuant to a Federal Rule of Evidence 408 agreement. Moreover, that Lead Counsel was successful in recovering one of the largest securities settlements in this District "early in the litigation" further supports its fee request. *Cf. Quintana v. HealthPlanOne LLC*, 2019 WL 3342339, at *7 (D. Ariz. July 25, 2019) (finding "an upward departure from the [25%] benchmark . . . is appropriate" where the settlement represented an "'outstanding recovery'" where "Plaintiff's counsel was able to achieve these results early in the litigation, thus avoiding costly and risky litigation"). Thus, Lead Counsel's skill and experience brought about an exceptional result, further supporting the requested fee award.

The standing of opposing counsel should also be weighed because such standing reflects the challenge faced by Lead Counsel. *See, e.g.*, *Wing v. Asarco Inc.*, 114 F.3d 986, 989 (9th Cir. 1997). Defendants were represented by a highly capable defense firm, Allen Overy Shearman Sterling US LLP. This firm spared no effort or expense on behalf of Defendants in their zealous defense of the Litigation. Lead Counsel's ability to obtain a

- 11 -

favorable result for the Class while litigating against this highly regarded defense firm and its well-financed clients further evidences the quality of Lead Counsel's work and weighs in favor of awarding the requested fee.

### 4. The Contingent Nature of the Fee and the Financial Burden Carried by Lead Counsel

Determination of a fair attorneys' fee must include consideration of the contingent nature of the fee and the difficulties that were overcome in obtaining the settlement:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* §21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994); *see also Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 741 (9th Cir. 2016) ("[R]isk multipliers incentivize attorneys to represent class clients, who might otherwise be denied access to counsel, on a contingency basis. This incentive is especially important in securities cases."); *Volkswagen*, 2017 WL 1047834, at *3 ("It is an established practice to reward attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all.").

"The risk of no recovery in complex cases of this sort is not merely hypothetical." *Savani v. URS Pro. Sols. LLC*, 2014 WL 172503, at *5 (D.S.C. Jan. 15, 2014). There have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and hundreds of thousands or millions of dollars in expenses, yet received no remuneration whatsoever despite their diligence and expertise. *See supra*, §III.B.2. For example, in *Persian Gulf Inc. v. BP W. Coast Prods. LLC*, 632 F. Supp. 3d 1108 (S.D. Cal. Sept. 30, 2022), the court granted summary judgment to defendants after seven years of litigation, during which plaintiff's counsel incurred tens of millions of dollars in time and expenses. In another Ninth Circuit PSLRA case, after a

- 12 -

4896-8795-9875.v1

lengthy trial involving securities claims against Tesla, the jury reached a verdict in defendants' favor – despite the Court previously granting summary judgment on certain elements in ***plaintiff's*** favor, evincing the strength of the claims. *See Tesla*, 2022 WL 1497559; *Tesla*, No. 3:18-cv-04865-EMC, ECF 671; *see also In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (holding similarly).

Here, Lead Counsel has received no compensation during the course of the Litigation and invested over 3,000 hours and incurred substantial expenses in prosecuting this case. Additional (uncompensated) work in connection with the Settlement and claims administration has already been undertaken and will be required going forward. Any fee award has always been contingent on the result achieved and at this Court's discretion. Indeed, the only certainty was that there would be no fee without a successful result. Nevertheless, Lead Counsel committed significant resources of both time and money to vigorously prosecute this Litigation, and successfully brought it to a highly favorable conclusion for the Class. *See* Janoski Decl., ¶60; RGRD Decl., ¶¶3-5. Meanwhile, "Class Counsel had to turn down opportunities to work on other cases to devote the appropriate amount of time, resources, and energy necessary to handle this complex case." *Volkswagen*, 2017 WL 1047834, at *3; *see also Vizcaino*, 290 F.3d at 1050.

The contingent nature of Lead Counsel's representation thus further supports approval of the requested fee.

### 5.    Awards Made in Similar Cases Support the Fee Request

Lead Counsel's fee request is also supported by awards made in similar cases. As discussed in §III.B, *supra*, the 25% benchmark fee request is well within the range of fee percentages awarded in comparable settlements and is presumptively reasonable.

### 6.    The Class's Reaction to Date Supports the Fee Request

Courts within the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See, e.g.*, *Volkswagen*, 2017 WL 1047834, at *4 (considering that "[o]nly four Class Members out of a class of approximately 475,000 objected to the proposed fee award" to be "a strong, positive response from the class,

- 13 -

4896-8795-9875.v1

supporting Class Counsel's requested fees"). While a certain number of objections are to be expected in a large class action such as this, "the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004); *Hefler*, 2018 WL 6619983, at *15 ("As with the Settlement itself, the lack of objections from institutional investors 'who presumably had the means, the motive, and the sophistication to raise objections' [to the attorneys' fee] weighs in favor of approval.").

Class Members were informed in the Postcard Notice and Notice that Lead Counsel would move the Court for an award of attorneys' fees in an amount not to exceed 25% of the Settlement Amount and for payment of litigation expenses not to exceed $200,000, plus interest on both amounts. Class Members were also advised of their right to object to the fee and expense request, and that such objections are to be filed with the Court and served on Lead Counsel and Defendants' Counsel no later than June 10, 2025. While this deadline has not yet passed, to date, no objection has been received.

Finally, Plaintiff has approved the attorneys' fees sought here. Harper Decl., ¶5. Plaintiff's approval supports granting the requested fee. *See Hatamian v. Advanced Micro Devices, Inc.*, 2018 WL 8950656, at *2 (N.D. Cal. Mar. 2, 2018) (approving fee where request "reviewed and approved as fair and reasonable by Class Representatives, sophisticated institutional investors").

## IV.   LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE AND SHOULD BE APPROVED

Lead Counsel further requests an award of its litigation expenses in the amount of $123,264.33 incurred in prosecuting and resolving the Litigation on behalf of the Class. RGRD Decl., ¶¶4-5. "Attorneys who create a common fund for the benefit of a class are entitled to reimbursement of reasonable litigation costs from that fund." *Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022). In assessing whether counsel's expenses are compensable in a common fund case, courts look to whether the

- 14 -

particular costs are "'those out-of-pocket expenses that would normally be charged to a fee paying client.'" *See id.* (quoting *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)); *In re Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters.").

Here, Lead Counsel knew from the outset that it might not recover any of its expenses or, at the very least, would not recover them until the action was successfully resolved. Even if the case was ultimately successful, payment of Lead Counsel's expenses would not compensate it for the lost use of funds advanced to prosecute the action. Thus, Lead Counsel was motivated to, and did, take significant steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the action.

Lead Counsel's litigation expenses are identified and detailed in the accompanying RGRD Declaration setting forth the specific categories of expenses incurred and the amounts. *See* RGRD Decl., ¶¶4-5. These expenses sought by Lead Counsel – including those associated with, *inter alia*, expert consultants, service of process, online legal and factual research, document management, travel, and mediation fees – are of the type that are routinely charged to hourly paying clients and, therefore, should be paid out of the common fund. *See, e.g.*, *Impax*, 2022 WL 2789496, at *10 (reimbursing counsel's out-of-pocket expenses, plus interest, for "consultant fees, mediation fees, filing fees, process of service fees, electronic research, postage, and travel"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (approving expense reimbursements for "1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees"); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at *9 (C.D. Cal. July 9, 2013) (reimbursing "expenses for mediation fees, copying, telephone calls, expert expenses, research costs, travel, postage, messengers, and filing fees"); *Vincent v. Reser*, 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013) (granting award of expenses for "'the mediator, photocopying and mailing expenses, travel expenses, and other reasonable litigation related expenses'").

- 15 -

4896-8795-9875.v1

The Postcard Notice and Notice informed Class Members that Lead Counsel would apply for payment of litigation expenses in an amount not to exceed $200,000. *See* Segura Decl., Exs. A and B (Postcard Notice & Notice). The amount of expenses for which payment is now sought, $123,264.33, is substantially less than the amount published in the Postcard Notice and Notice, and to date no Class Member has raised an objection. Because these expenses were reasonable and necessary, Lead Counsel respectfully requests payment of these expenses incurred in prosecuting the Litigation.

## V. PLAINTIFF'S REQUEST FOR AN AWARD PURSUANT TO 15 U.S.C. §78u-4(a)(4) IS REASONABLE

Plaintiff seeks an award of $7,720 pursuant to 15 U.S.C. §78u-4(a)(4) for its diligent and determined representation of the Class, as detailed in the accompanying LDC declaration. *See generally* Harper Decl. Under the PSLRA, a class representative may seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class." 15 U.S.C. §78u-4(a)(4); *see also Khoja*, 2021 WL 5632673, at *10 (awards of reasonable costs and expenses for lead plaintiffs under the PSLRA "are 'fairly typical' and are 'intended to compensate class representatives for work done on behalf of the class'"); *In re Maxwell Techs. Inc., Sec. Litig.*, 2015 WL 12791401, at *4 (S.D. Cal. Feb. 17, 2015) (awarding plaintiff "reimbursement of its reasonable time, costs and expenses directly relating to its representation of the Settlement Class"); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (holding that named plaintiffs in class action are eligible for "reasonable" payments). Such awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009).

Plaintiff has submitted a declaration herewith setting forth the time and effort it spent monitoring the Litigation and directing Lead Counsel, including discussing litigation strategy, reviewing pleadings and filings, reviewing discovery requests, and discussing settlement negotiations and strategy with Lead Counsel. *See* Harper Decl., ¶¶3-6. Plaintiff

- 16 -

was directly involved through every step of the Litigation, and accordingly, requests a reasonable award pursuant to 15 U.S.C. §78u-4(a)(4) based on its diligent representation of the Class.  Courts have routinely approved similar awards for class representatives.  *See Impax*, 2022 WL 2789496, at *10 (approving award of $9,462 to plaintiff for time spent working with counsel "reviewing documents, providing input into the case's prosecution, and engaging in meetings, phone conferences, and correspondence with Lead Counsel"); *McPhail v. First Command Fin. Plan., Inc.*, 2009 WL 839841, at *8 (S.D. Cal. Mar. 30, 2009) (awarding plaintiff with $10,422, noting that "requested reimbursement is consistent with payments in similar securities cases" for PSLRA awards); *Hatamian*, 2018 WL 8950656, at *2 (granting PSLRA award of $14,875).

## VI.    CONCLUSION

Lead Counsel obtained an exceptional result for the Class.  Based on the foregoing and the entire record, Plaintiff and Lead Counsel respectfully request that the Court: (i) award Lead Counsel attorneys' fees of 25% of the Settlement Amount and grant payment of $123,264.33 in litigation expenses, plus interest on both amounts at the same rate as earned by the Settlement Fund; and (ii) award Plaintiff $7,720 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

DATED: May 27, 2025                  Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
TOR GRONBORG
J. MARCO JANOSKI GRAY
T. ALEX B. FOLKERTH
JESSICA E. ROBERTSON
EVELYN SANCHEZ GONZALEZ


                                    *s/ Marco Janoski*
                         J. MARCO JANOSKI GRAY

- 17 -
4896-8795-9875.v1

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
jrobertson@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiff

ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

- 18 -

4896-8795-9875.v1