ZIMMERMAN REED, LLP
HART L. ROBINOVITCH
14648 N. Scottsdale Road, Suite 130
Scottsdale, AZ  85254
Telephone:  480/348-6400
480/348-6415 (fax)
hart.robinovitch@zimmreed.com

Local Counsel for Lead Plaintiff

ROBBINS GELLER RUDMAN
    & DOWD LLP
THEODORE J. PINTAR (admitted *pro hac vice*)
TOR GRONBORG (admitted *pro hac vice*)
J. MARCO JANOSKI GRAY (admitted *pro hac vice*)
T. ALEX B. FOLKERTH (admitted *pro hac vice*)
JESSICA E. ROBERTSON (admitted *pro hac vice*)
EVELYN SANCHEZ GONZALEZ (admitted *pro hac vice*)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com
torg@rgrdlaw.com
mjanoski@rgrdlaw.com
afolkerth@rgrdlaw.com
jrobertson@rgrdlaw.com
egonzalez@rgrdlaw.com

Lead Counsel for Lead Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Laborers District Council Construction Industry Pension Fund, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Sea Limited, et al., <br><br> Defendants. | No. CV-23-01455-PHX-DLR <br><br> Consolidated with <br> Case No. 23-01889-PHX-SRB <br><br> <u>CLASS ACTION</u> <br><br> DECLARATION OF J. MARCO JANOSKI GRAY IN SUPPORT OF MOTIONS FOR: (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION; AND (2) AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND AWARD TO CLASS REPRESENTATIVE |

4931-1049-1205.v1

I, J. MARCO JANOSKI GRAY, declare as follows:

1. I am an attorney duly licensed to practice before all of the courts of the State of California and have been admitted *pro hac vice* to this Court. I am a partner with the law firm of Robbins Geller Rudman & Dowd LLP ("Robbins Geller" or "Lead Counsel"), Lead Counsel for Lead Plaintiff Laborers District Council Construction Industry Pension Fund ("LDC" or "Plaintiff") in the above-captioned Litigation. I submit this declaration in support of: (i) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Approval of Plan of Allocation; and (ii) Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Class Representative. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.[1]

## I.    PRELIMINARY STATEMENT

2. The $46 million proposed Settlement represents the culmination of more than a year of hard-fought litigation and is amongst the largest securities class action recoveries in this District. The result for the Class is significant, as the recovery here exceeds both the median ($14 million) and average ($43 million) recovery in federal securities cases settled in 2024. Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review*, at 22, fig. 21, and 23, fig. 22 (NERA Jan. 22, 2025) ("NERA Report").

3. Lead Counsel zealously, efficiently, and effectively prosecuted the Litigation. As detailed herein, Plaintiff faced significant risks associated with Defendants' motion for reconsideration of the Court's order granting in part and denying in part Defendants' motion to dismiss (which remained pending at the time of the Settlement), as well as Plaintiff's ability to later obtain discovery located in Singapore, achieve class certification, and then overcome customary summary judgment motions. Even assuming Plaintiff successfully litigated the action past every hurdle identified above, and later obtained a favorable jury

---

[1]    Unless otherwise defined herein, all capitalized terms have the same meanings as set forth in the Stipulation of Settlement dated March 14, 2025 (ECF 73-1) (the "Stipulation") and in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement and Memorandum of Law in Support Thereof (ECF 72).

- 1 -

4931-1049-1205.v1

verdict at trial, collecting on any recovery after the all-but-certain post-judgment appeal remains highly uncertain. In light of these risks, the Settlement is a substantial recovery for the Class.

4. In agreeing to settle the Litigation, Plaintiff and Lead Counsel were fully informed about the various strengths and weaknesses of their case, as well as the substantial risks they would face should litigation continue. In opting to resolve this matter, Plaintiff and Lead Counsel reasonably concluded that the Settlement they obtained is in the Class' best interest and provides a significant recovery to the Class. Plaintiff remained well informed throughout the Litigation and settlement negotiations, and ultimately approved the Settlement. *See* Declaration of James N. Harper, Jr. ("Harper Declaration" or "Harper Decl."), filed herewith.

5. Lead Counsel was able to negotiate the proposed Settlement only after:

- successfully achieving the appointment of LDC as Lead Plaintiff and Robbins Geller as Lead Counsel in October 2023 (ECF 23);

- conducting extensive factual and legal investigations, culminating in the drafting and filing of the Consolidated Complaint for Violations of the Federal Securities Laws on December 22, 2023 (ECF 31) (the "Complaint");

- ensuring that the foreign-based Individual Defendants were properly served with the Complaint by successfully moving for alternative service on the Individual Defendants (ECF 44);

- successfully opposing Sea's motion to transfer this Litigation to the United States District Court for the Southern District of New York (ECF 54);

- successfully opposing Defendants' motion to dismiss the Complaint, culminating in the Court's August 7, 2024 order denying in part and granting in part Defendants' motion to dismiss (ECF 55);

- briefing an opposition to Defendants' motion for partial reconsideration of the Court's motion to dismiss order (ECF 58, 61);

- negotiating a case schedule with Defendants to govern all major procedural deadlines in the case (ECF 60);

- 2 -

- serving Defendants with Plaintiff's first sets of document requests, interrogatories, and requests for admission, and negotiating the scope of Defendants' responses thereto;

- negotiating the terms of a protective order and ESI protocol to govern the production of documents in this Litigation;

- receiving and analyzing confidential financial data produced by Defendants pursuant to a Federal Rule of Evidence 408 agreement; and

- engaging in extended mediation negotiations under the supervision of Mr. Gregory P. Lindstrom of Phillips ADR Enterprises, including the exchange of detailed mediation statements (which involved consultations with various experts), that culminated in a mediator's proposal that the Settling Parties accepted.

6. The proposed Settlement of $46 million in cash is the direct product of Plaintiff's and Lead Counsel's efforts, including those described in this declaration. The Settlement is also the product of the parties' arm's-length negotiations, including extended mediation efforts over the course of several weeks, overseen by an experienced and neutral third-party mediator. These negotiations were conducted by experienced counsel with an intimate understanding of the case and ultimately resulted in a mediator's proposal that was accepted by both sides.

7. Lead Counsel also seeks approval of the proposed Plan of Allocation (the "Plan"), which Lead Counsel submits is fair and reasonable. The Plan was prepared with the assistance of Plaintiff's consulting damages expert. As further described below and in the Notice, the Plan provides formulas for calculating the recognized loss of each Class Member that submits a Proof of Claim form based on when the claimant purchased and/or sold their publicly-traded Sea Limited ("Sea" or the "Company") American Depositary Shares ("ADSs"). Authorized Claimants with a recognizable loss of more than $10 will receive a *pro rata* distribution pursuant to the Plan, and Plaintiff will be subject to the same formula for distribution of the Net Settlement Fund.

8. Lead Counsel prosecuted the Litigation on a wholly contingent basis, advancing and incurring substantial litigation expenses. Lead Counsel shouldered

- 3 -

4931-1049-1205.v1

substantial risk in doing so and, to date, has not received any compensation for its efforts. Accordingly, in consideration of Lead Counsel's extensive efforts on behalf of the Class, Lead Counsel is applying for an award of attorneys' fees in the amount of 25% of the Settlement Amount and an award of $123,264.33 in litigation expenses, and any interest on such amounts at the same rate and for the same period as earned by the Settlement Fund.

9.    As set forth in Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses and Award to Class Representative and Memorandum of Law in Support Thereof (the "Fee Memorandum"), filed herewith, the requested fee is within the range of fees awarded in PSLRA securities class action settlements, is consistent with the Ninth Circuit's presumptively reasonable 25% benchmark rate, and is justified in light of the exceptional result achieved for the Class and the significant risks undertaken by Lead Counsel in this complex litigation. Lead Counsel submits that the fee application is fair to the Class, is endorsed by Plaintiff, and warrants the Court's approval.

10.    Lead Counsel also seeks an award in the amount of $123,264.33 (plus interest accrued thereon) for expenses reasonably and necessarily committed to the prosecution of the Litigation. These expenses include: (i) the fees and expenses of experts and consultants whose services were required for the successful prosecution and resolution of this case; (ii) travel and meal expenses; (iii) online factual and legal research; and (iv) mediation expenses.

11.    Additionally, Plaintiff seeks an award in the amount of $7,720 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class. Plaintiff actively monitored the Litigation and supervised Lead Counsel and in doing so spent time and expenses discussing litigation strategy, case development, and settlement negotiations with Lead Counsel. After discussions with Lead Counsel, Plaintiff approved the Settlement.

12.    In response to over 199,000 Postcard Notices and Notices that have been mailed or emailed to potential Class Members and their nominees, there have been no objections to date to the Settlement, Plan of Allocation, Lead Counsel's request for an award

- 4 -

of attorneys' fees and litigation expenses, or Plaintiff's request for an award pursuant to 15 U.S.C. §78u-4(a)(4).

## II.   FACTUAL BACKGROUND OF LITIGATION

13.   Sea Limited is a Singapore-based consumer internet company that provides digital entertainment, e-commerce, and digital financial services through its three respective business lines: Garena, Shopee, and SeaMoney.  ¶¶15, 23-26.[2]  The operative Complaint alleges violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 against defendants to Sea, Forrest Xiaodong Li (Sea's Chief Executive Officer), Tony Tianyu Hou (Sea's Chief Financial Officer), Yanjun Wang (Sea's Chief Corporate Officer and General Counsel), Gang Ye (Sea's Chief Operating Officer), and David Jingye Chen (Chief Product Officer of Shopee).  ¶¶141-156.

14.   The Complaint alleges that by the start of the Class Period in fall 2022, Sea was in the midst of a self-described "crisis."  ¶¶34-39.  The COVID-induced tailwinds that caused the Company's valuation to soar to record highs in 2020 and 2021 had dissipated.  ¶¶34-36.  Garena (Sea's digital entertainment/gaming segment) revenues and users were in consistent decline, its only successful self-developed video game (*Free Fire*) had been banned in India, and it would soon be losing the publishing rights to one of the most popular and monetized PC games in the world: *League of Legends*.  ¶¶28-31, 37, 40-47.  Meanwhile, Shopee (Sea's e-commerce segment) was continuing to incur massive losses – which had previously been offset by Garena's significant cash flow – and shut down operations in key new markets like India and Europe.  ¶37.  At Defendants' personal direction, Sea began a ruthless cost-cutting drive as the Company pivoted away from its expensive growth strategy and attempted to convince investors that it could sustainably turn a profit.  ¶¶38, 53-54.

15.   It is in this context that the Complaint alleges Defendants attempted to shore up the plummeting price of Sea ADSs by issuing a series of materially misleading statements and omissions regarding its Garena and Shopee segments throughout the November 15, 2022

---

[2]   All standalone "¶_" and "¶¶_" references are to the Complaint.

- 5 -

through August 14, 2023 Class Period, which artificially inflated the price of Sea's publicly-traded ADSs. ¶¶39, 63-89.

16. First, the Complaint alleges that Defendants falsely claimed in November 2022 that Garena's loss of its licensing rights to the hit online video game *League of Legends* (and its spinoff *Teamfight Tactics*) would have "no impact" on Garena's business and that contributions from these games were "immaterial." ¶65. Contrary to these statements, however, the Complaint alleges Defendants knew that Garena's financial results and user metrics would be negatively affected in 1Q23[3] when Sea turned over operations of these games to the games' developer, Riot Games, Inc. ("Riot"). ¶70(a). In March and April 2023, Defendants would go on to claim that Garena's paying user base had stabilized and that any risks from a negative development in a key game were merely hypothetical. ¶¶74, 76, 81. Yet the Complaint alleges that at the time of these statements, Defendants already knew that they had not achieved sufficient gains in paying users of other games to offset the loss of the highly-monetized *League of Legends* user base. ¶¶78(a), 83(a). Ultimately, Defendants announced in May 2023 that Garena experienced drastically reduced bookings, revenue, and paying users in 1Q23 – its first quarter without *League of Legends* – due to a "weakening in monetization." ¶123.

17. Second, the Complaint alleges that throughout the Class Period Defendants issued a series of misleading statements regarding the effect that the Company's massive cost-cutting efforts were having on Shopee's growth and market share. ¶¶66-69, 72-73, 75-77, 82, 85-89. Shopee's historical growth in the key gross merchandise value ("GMV") metric had been driven by the use of expensive sales and marketing investments to undercut its competitors, such as free shipping, zero-commission sales, and varied monthly promotions. ¶¶50-52. But as Sea embarked on an aggressive cost-cutting effort in 2022 to turn profitable, Shopee discontinued these offerings and cut hundreds of millions of dollars

---

[3] "Q2" is used to denote each first, second, third, and fourth fiscal quarter of each full year ("FY"). Thus, "1Q23" refers to first quarter 2023, "FY22" refers to calendar year 2022, and so forth. All emphasis added and citations omitted unless otherwise noted.

4931-1049-1205.v1

from its quarterly sales and marketing expenses – causing Shopee's key growth metric, GMV, to decelerate and decline as a result. ¶51. The Complaint alleges that as e-commerce competitors aggressively expanded their offerings, Defendants misleadingly concealed the negative trend in Shopee's GMV resulting from the Company's cost cuts. ¶¶70(b)-(c), 78(b)-(e), 83(b), 90(a)-(c). In August and November 2023, however, Defendants had to acknowledge that Shopee's GMV growth required substantial and loss-causing reinvestments in sales and marketing. ¶¶127, 130.

18. The Complaint alleges that the truth concealed by Defendants' misrepresentations was gradually revealed to the market in a series of corrective disclosures that caused significant drops in the price of Sea ADSs – harming Plaintiff and other Class Members. ¶¶119-131.

19. First, on May 16, 2023, Sea released its earnings results for 1Q23 – its first fiscal quarter without *League of Legends* – and disclosed that Garena experienced significant and unexpected quarterly declines in bookings, paying users, and GAAP revenue. ¶123. On this news, the price of Sea ADSs fell $15.62 per share (-18%). *Id.*

20. Then on August 15, 2023, in connection with the Company 2Q23 earnings results, Defendants surprisingly announced a pivot in strategy away from profits back to "reaccelerat[ing] investments in growth" for Shopee – which they acknowledged included a "ramp up [in] investments in free shipping again to capture more of the growth opportunities" that would "impact [their] bottom line and may result in losses for Shopee and [the] group as a whole in certain periods." ¶¶61, 126-127. On this news, the price of Sea ADSs declined $16.32 per share (-29%). ¶127.

21. Finally, on November 14, 2023, in connection with the Company's 3Q23 earnings results, Defendants revealed the full impact of their pivot and reported net losses for both Shopee and Sea, and acknowledged that their reinvestments in growth were necessitated by "intensified competition in [their] markets." ¶¶62, 130. The price of Sea ADSs declined in response to the disclosures about Shopee, falling $10.16 per share (-22%). ¶130.

- 7 -

22.    By the time the truth was fully revealed, the price of Sea ADSs had fallen from a Class Period high of $88 per share to less than $36 per share – a decline of nearly 60%.  ¶9.

### III.    PROCEDURAL HISTORY OF THE CASE

#### A.    The Initiation of the Action and LDC's Appointment as Lead Plaintiff

23.    Throughout this Litigation, Plaintiff and Lead Counsel zealously, efficiently, and effectively prosecuted this matter.

24.    On July 21, 2023, the first complaint in the Litigation was filed.  ECF 1.  On September 8, 2023, a related complaint was filed in this District.  *Mirvaydulloev v. Sea Ltd., et al.*, No. 2:23-cv-01889, ECF 1 (D. Ariz.).  On September 19, 2023, LDC and four other plaintiff groups filed separate motions to consolidate the related cases and for appointment as lead plaintiff.  ECF 8-12.  On October 6, 2023, the Court consolidated the cases and appointed LDC as Lead Plaintiff and Robbins Geller as Lead Counsel.  ECF 23

25.    On October 20, 2023, Plaintiff and Sea filed a Joint Motion establishing a schedule for filing the consolidated complaint and any responses thereto.  ECF 26.  The Court adopted the proposed schedule on October 23, 2023.  ECF 27.

#### B.    Defendants' Motion to Transfer to the Southern District of New York

26.    On October 23, 2023, Sea moved to transfer this case from the United Stated District Court for the District of Arizona to the United States District Court for the Southern District of New York.  ECF 28.  Plaintiff filed its opposition to Sea's motion transfer on November 6, 2023.  ECF 29.  Sea filed its reply brief in support of its motion to transfer on November 13, 2023.  ECF 30.

27.    The Court denied Sea's motion to transfer on May 31, 2024.  ECF 54.

#### C.    Plaintiff's Investigation, Filing, and Service of the Complaint

28.    Following its appointment as Lead Plaintiff, LDC continued its investigation into the putative class's claims, which consisted of, *inter alia*: (i) researching the relationships between Defendants and third-party companies, including Tencent Holdings Limited and Riot; (ii) thoroughly reviewing and analyzing Sea's public disclosures,

- 8 -

4931-1049-1205.v1

including: (a) Sea's periodic public filings with the U.S. Securities and Exchange Commission ("SEC"); (b) transcripts of Sea senior management's conference calls with investors and analysts; (c) releases and media reports issued about and disseminated by the Company; (d) analyst reports issued about Sea; and (e) other public news media and data regarding the Company; and (iii) an examination of industry and Company stock price reaction to Defendants' alleged misstatements and corrective disclosures, including detailed analyst reports discussing Sea and its public disclosures.

29.    On December 22, 2023, based upon the results of its investigation, Plaintiff filed the operative Complaint.  ECF 31.

30.    After Sea's counsel represented that they were not authorized to waive service on behalf of the Individual Defendants, Plaintiff moved for alternative service of the Complaint on the Individual Defendants on January 18, 2024.  ECF 34.  Sea filed its opposition to Plaintiff's motion for alternative service on February 1, 2024.  ECF 37. Plaintiff then filed its reply brief in support of its motion for alternative service on February 8, 2024.  ECF 38.

31.    On February 23, 2024, the Court granted Plaintiff's motion for alternative service on the Individual Defendants.  ECF 44.  Plaintiff then served the Individual Defendants electronically on February 28, 2024.  ECF 45.

**D.    Defendants' Motion to Dismiss the Complaint**

32.    On February 20, 2024, Sea filed its motion to dismiss the Complaint and an accompanying request for judicial notice.  ECF 41-43.  After service was effectuated on them, the Individual Defendants joined Sea's pending motion to dismiss on March 18, 2024. ECF 46. On April 19, 2024, Plaintiff filed its oppositions to Defendants' motion to dismiss and request for judicial notice.  ECF 47-49.  Defendants filed their reply briefs in support of their motion to dismiss and request for judicial notice on May 20, 2024.  ECF 51-52.

33.    On August 7, 2024, the Court issued an order granting in part and denying in part Defendants' motion to dismiss the Complaint.  ECF 55.  Specifically, the Court denied Defendants' motion to dismiss with respect to all of the alleged misstatements in the

- 9 -

4931-1049-1205.v1

Complaint concerning Garena. *Id.* at 15, 29. With respect to the Shopee, however, the Court granted the motion to dismiss with respect to certain alleged misstatements, but denied it with respect to other Shopee-related statements. *Id.* at 21-24, 31.

34. On August 21, 2024, Defendants filed a motion for partial reconsideration of the Court's motion to dismiss order, seeking dismissal of the remaining Shopee-related claims that had been upheld by the Court. ECF 58. Plaintiff filed its opposition to Defendants' motion for partial reconsideration on September 5, 2024. ECF 61. A decision on Defendants' motion for partial reconsideration remained pending at the time the parties reached the Settlement.

**E.    The Parties' Discovery Efforts**

35. Following the Court's order granting in part and denying in part Defendants' motion to dismiss and the resulting lift of the PSLRA-mandated discovery stay, the parties began diligently moving forward with discovery.

36. On August 19, 2024, the parties filed a joint motion to set the case schedule (ECF 57), which the Court granted on August 23, 2024 (ECF 60).

37. The parties exchanged initial disclosures on September 17, 2024.

38. On October 1, 2024, the parties filed their Rule 26(f) joint discovery plan. ECF 66.

39. Defendants filed their answer to the Complaint on October 18, 2024. ECF 67.

40. Plaintiff served Defendants with its first sets of document requests and interrogatories on September 20, 2024. Defendants propounded document requests on Plaintiff on September 24, 2024.

41. On October 25, 2024, Plaintiff served Defendants with its first set of requests for admission, and issued a subpoena *duces tecum* to third-party Riot.

42. The parties remained engaged in negotiations on the scope of their respective discovery requests, along with the terms of a stipulated protective order and ESI protocol, when settlement talks began.

- 10 -

4931-1049-1205.v1

## IV.   THE STRENGTHS AND WEAKNESSES OF THE CASE AND THE RISKS FACED BY PLAINTIFF IN THE LITIGATION

43.   As outlined above, after significant investigation and thorough motion practice, Lead Counsel provided Plaintiff with a thorough understanding of the strengths and weaknesses of its claims in the Litigation and the prospects of recovering a judgment should the claims be successful through trial.  Based on the information and documents obtained through the investigation, publicly available documents, confidential data reviewed during the mediation process, and consultations with experts, Plaintiff and Lead Counsel believe that the claims asserted in the Litigation have merit.  However, they also recognize that Plaintiff and the Class Members faced considerable risks and defenses in continuing the action.

44.   Although Lead Counsel investigated and developed a compelling operative Complaint, the Class faced factual and legal challenges with significant portions of the Shopee-related claims having been dismissed and Defendants' motion for reconsideration on the remaining Shopee claims remaining pending.  Moreover, if Plaintiff were to prevail in opposing the motion for reconsideration, Plaintiff and the Class Members still faced significant hurdles in discovery (with the majority of evidence and witnesses located overseas in Singapore), class certification, summary judgment, and ultimately at trial and any further appeals.  Based on all these factors, as well as the extensive experience of Lead Counsel in the litigation of securities class actions, the Settlement, which provides a very substantial recovery to Class Members, is far more beneficial than any of the realistic alternatives offered by continued litigation and is, therefore, fair, reasonable, and adequate.

45.   Eventually, through extensive, arm's-length negotiations overseen by Mr. Lindstrom, the parties compromised their differences and reached the agreement embodied in the Stipulation.  In view of the $46 million Settlement recovery, the sharply contested factual and legal issues (as described above), and the uncertainties, costs, and delays inherent in continuing the Litigation, Lead Counsel believes that the recovery amount provided by the Settlement constitutes an excellent result and is in the best interests of the Class.

4931-1049-1205.v1

## V.    NATURE AND ADEQUACY OF THE SETTLEMENT

46.    The Settlement is the product of good-faith, arm's-length negotiations between experienced counsel, under the supervision of Mr. Lindstrom, a neutral third-party mediator with extensive experience in complex securities litigation.  In the estimation of Lead Counsel, the compromise embodied in the Stipulation with Defendants represents a successful resolution of a complex class action.

### A.    History of Settlement Negotiations

47.    During the fourth quarter of 2024, the parties commenced the mediation process with Mr. Lindstrom.  An extensive December 18, 2024 in-person mediation session was preceded by the parties' submission of detailed mediation statements (which involved consultation with experts).

48.    On December 27, 2024, the parties accepted Mr. Lindstrom's mediator's proposal and reached an agreement in principle to resolve the Litigation via a $46 million cash payment for the benefit of the Class, subject to the execution of a stipulation of settlement and approval by the Court.  The parties executed a term sheet on February 3, 2025, and subsequently negotiated the full terms of the Settlement memorialized in the Stipulation submitted to the Court on March 14, 2025 (ECF 73-1).  The terms of the Stipulation are the result of vigorous and protracted arm's-length negotiations.

### B.    Preliminary Approval Order

49.    On March 14, 2025, Plaintiff filed its unopposed motion for preliminary approval of the Settlement, along with the Stipulation and supporting declarations. ECF 72-74.  The preliminary approval motion also sought certification of the Class, approval of notice to the Class, and the scheduling of the Settlement Hearing.  ECF 72.

50.    On March 18, 2025, the Court issued an Order (ECF 75), which:

(a)    preliminarily approved the Settlement;

- 12 -

4931-1049-1205.v1

(b)    certified the Litigation as a class action for settlement purposes and preliminarily certified LDC as Class Representative and Robbins Geller as Class Counsel.[4]

(c)    with respect to the Class, the Court preliminarily found that, for settlement purposes, the prerequisites for a class action under Federal Rules of Civil Procedure Rules 23(a) and (b)(3) have been satisfied;

(d)    scheduled the Settlement Hearing for July 1, 2025, at 9:30 a.m. "to determine: (i) whether the proposed Settlement of the Litigation on the terms and conditions provided for in the Stipulation is fair, reasonable, and adequate to the Class and should be approved by the Court; (ii) whether a Judgment, as provided in ¶1.12 of the Stipulation, should be entered; (iii) whether the proposed Plan of Allocation is fair, reasonable, and adequate and should be approved; (iv) the fees and expenses that should be approved for Plaintiffs' Counsel and the amount of the 15 U.S.C. §78u-4(a)(4) award to Lead Plaintiff; and (v) any such other matters as the Court may deem appropriate" (*id.*, ¶6);

(e)    appointed JND Legal Administration as the Claims Administrator to oversee the notice procedure and process claims; and

(f)    approved the form and content of the Postcard Notice, Notice, Summary Notice, and the Proof of Claim.  The Court also found that the procedure for mailing and distributing the Postcard Notice, and for publishing the Summary Notice, was adequate under applicable law.

51.    Upon final approval of the Stipulation and Settlement by the Court and entry of a judgment that becomes a final judgment, the Net Settlement Fund will be distributed according to the Plan of Allocation (described below) on a *pro rata* basis to Authorized

---

[4]    The Court defined the Class as "all Persons who purchased or otherwise acquired Sea Limited's ("Sea") publicly-traded American Depositary Shares ("ADSs") during the period from November 15, 2022 through August 14, 2023, both dates inclusive (the "Class Period").  Excluded from the Class are: Defendants, the officers and directors of Sea (at all relevant times), members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which any Defendant has a controlling interest.  Also excluded from the Class are those Persons who would otherwise be a Class Member who properly exclude themselves by submitting a valid and timely Request for Exclusion."  ECF 75, ¶2.

- 13 -

Claimants with a recognizable loss of more than $10 based on each Authorized Claimant's Recognized Claim. Further terms of the Settlement are set forth in the Stipulation. A summary of the Settlement was set forth in the Notice.

52. Following the Court's preliminary approval order, Sea paid the $46 million Settlement Amount by wire transfer on April 10, 2025. That sum has been earning, and continues to earn, substantial interest on behalf of the Class.

**C.    The Plan of Allocation**

53. The Net Settlement Fund will be distributed to Class Members who, in accordance with the terms of the Stipulation, are entitled to a distribution and who submit a valid and timely Proof of Claim and have a recognizable loss of more than $10. Class Members' claims will be calculated under the Plan of Allocation set forth in the Notice. The Plan of Allocation, which was prepared in consultation with an experienced loss causation and damages expert, Scott Dalrymple, CFA, fairly allocates the Net Settlement Fund among eligible Class Members. The formula used to apportion the Net Settlement Fund is based on when Class Members purchased, acquired, and/or sold their shares of Sea ADSs, and accounts for the statutory 90-day look-back period imposed by the PSLRA.

**D.    The Settlement Is in the Best Interests of the Class and Warrants Approval**

54. Lead Counsel believes Plaintiff and the Class could have prevailed on the merits of the case. Defendants were just as adamant that the claims would fail. There were a number of genuine litigation risks, including ones that could have prevented Plaintiff getting its claims to trial or weakened the ones that went to trial. For example, the Court could have ruled unfavorably on a number of issues argued in Defendants' motion for reconsideration, including dismissing all of the remaining Shopee-related statements. Going forward, Plaintiff would have faced additional hurdles, including: (i) certifying the class; (ii) obtaining discoverable information, documents, and testimony from overseas in Singapore; (iii) summary judgment and *Daubert* motions; (iv) pre-trial motions; and (v) prevailing at trial and the post-trial and appellate proceedings.

- 14 -

55. As explained above, even if Plaintiff prevailed at trial, there was a significant risk that any recovery would be smaller than the Settlement obtained, and certainly any such recovery would have been delayed by post-trial proceedings and appeals.

56. Having considered the foregoing, and evaluating Defendants' defenses at the motion to dismiss stage and during mediation, it is the informed judgment of Lead Counsel, based upon all the proceedings to date and its extensive experience in litigating shareholder class actions, that the proposed Settlement of this matter for $46 million provides fair, reasonable, and adequate consideration and is in the best interests of the Class.

## VI. LEAD COUNSEL'S APPLICATION FOR ATTORNEYS' FEES AND EXPENSES IS REASONABLE

57. Based on the time expended on behalf of the Class, the outstanding result achieved in the face of considerable litigation risk, and the fully contingent nature of the representation, I also respectfully submit that Lead Counsel's request for an award of attorneys' fees equal to 25% of the Settlement Amount, plus interest, is fair, reasonable, and should be approved.

58. The proposed Settlement Amount, $46 million, represents approximately 5% to 10% of the estimated damages that Plaintiff could reasonably expect to be recovered at trial. If the jury were to reject some of Plaintiff's allegations of fraud or find that one or more of the alleged corrective disclosures were not related to Plaintiff's allegations for reasons described above, the recoverable damages would have been significantly less, and there was a very real possibility that such findings would be fatal to the entirety of Plaintiff's claims.

### A. The Requested Fee Is Reasonable

59. Several factors confirm that the fee requested is fair, reasonable, and adequate. First is the risk faced by Lead Counsel in pursuing this Litigation. Lead Counsel undertook representation of the Class on a wholly contingent basis, knowing that the Litigation could last for years, and would require substantial lawyer and paraprofessional time and significant expenses, with no guarantee of compensation. Lead Counsel's assumption of this contingency-fee risk, and our unwavering tenacity in the face of numerous litigation

- 15 -

4931-1049-1205.v1

challenges and risks, as detailed herein and in the accompanying Fee Memorandum, supports the reasonableness of the requested fee.

60.     Lead Counsel committed over 3,000 hours of attorney and paraprofessional time and incurred $123,264.33 in litigation expenses in the prosecution of the Litigation. *See* Declaration of J. Marco Janoski Gray Filed on Behalf of Robbins Geller Rudman & Dowd LLP in Support of Application for Award of Attorneys' Fees and Expenses ("RGRD Declaration" or "RGRD Decl."), submitted herewith. Lead Counsel fully assumed the risk of an unsuccessful result. Lead Counsel has received no compensation for its time or expenses during the course of the Litigation. Any fees or expenses awarded to Lead Counsel have always been at risk and are completely contingent on the result achieved. Because of the contingent nature of the fees and expenses, the only certainties from the outset were that there would be no fee without a successful result, and that such a result would be realized only after a lengthy and difficult effort.

61.     Lead Counsel took on this contingency risk in the face of determined opposition. Defendants employed one of the nation's most capable and best resourced defense firms, Allen Overy Shearman Sterling US LLP. As set forth above, this case was fraught with significant risk factors. Were this Settlement not achieved, and even if Plaintiff prevailed at class certification, summary judgment, and trial, Plaintiff potentially faced years of costly and risky appellate litigation. It is also possible that a jury could have found no liability, or no damages, or significantly limited damages. Under these circumstances and after overcoming this contingency and other risks, Lead Counsel is entitled to the award of a reasonable percentage fee based on the benefit conferred and the common fund obtained for the Class. The Ninth Circuit's benchmark fee of 25%, plus expenses, is fair and reasonable here.

**B.      The Requested Litigation Expenses Are Fair and Reasonable**

62.     As detailed in the Fee Memorandum and accompanying RGRD Declaration, Lead Counsel seeks a total of $123,264.33 in litigation expenses in connection with the prosecution of this Litigation. *See* RGRD Decl., Ex. B. These expenses were reasonably

- 16 -

and necessarily incurred by Lead Counsel in connection with commencing and prosecuting the claims against Defendants.

63.    From its inception, Lead Counsel was aware that it might not recover any of its expenses in this matter and, at the very least, would not recover anything until the Litigation was successfully resolved. Lead Counsel also understood that, even if the case was ultimately successful, an award of expenses would not compensate it for the lost use of funds advanced while this Litigation was ongoing. Therefore, Lead Counsel was motivated to, and did, take steps to minimize expenses wherever practicable without jeopardizing the vigorous and efficient prosecution of the case.

64.    All of the expenses for which recovery is sought were reasonably necessary to the prosecution and resolution of the Litigation, and are all of a type that counsel typically incur in securities litigation of this type (and that, in Lead Counsel's experience, courts award in class action cases).

65.    The Postcard Notice and Notice advise potential Class Members that Lead Counsel would seek an award of expenses not to exceed $200,000, plus interest, which is significantly more than what Lead Counsel is now actually seeking.

## VII.    PLAINTIFF'S REQUEST FOR AN AWARD FOR THEIR WORK ON BEHALF OF THE CLASS

66.    The Notice also informed Class Members that Plaintiff would apply for up to $20,000 pursuant to 15 U.S.C. §78u-4(a)(4) in connection with its representation of the Class.

67.    As set forth in the accompanying Harper Declaration, Plaintiff's staff and counsel spent time on this case: (i) reviewing pleadings, briefs, court orders, and other litigation and mediation materials; (ii) responding to discovery requests; and (iii) communicating with counsel in order to ensure the progression of the Litigation. Plaintiff is a sophisticated investor that has actively oversaw the prosecution of the Litigation and it understands and has diligently fulfilled its fiduciary duty to act in the best interest of the Class.

- 17 -

4931-1049-1205.v1

68.    Plaintiff requests an award in the amount of $7,720 for its time and expenses spent on this matter.  For the reasons set forth in the accompanying Fee Memorandum, I respectfully submit that the requested award is modest, and fully merited based on Plaintiff's work here for the benefit of the Class.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on May 27, 2025, at San Diego, California.

_s/ Marco Janoski_
J. MARCO JANOSKI GRAY

- 18 -

4931-1049-1205.v1