**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

Laborers District Council      )      No.  2:23-cv-01455-DLR
Construction Industry Pension  )
Fund,                          )
                               )
        Plaintiff,             )
                               )
        vs.                    )      Phoenix, Arizona
                               )      July 1, 2025
Sea Limited, et al.,           )      9:36 a.m.
                               )
        Defendants.            )
_____)


**BEFORE:   THE HONORABLE DOUGLAS L. RAYES, JUDGE**


<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>


<u>**FINAL APPROVAL HEARING VIA ZOOM VIDEOCONFERENCE**</u>


Official Court Reporter:
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003-2151
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiff:

    ROBBINS GELLER RUDMAN & DOWD LLP
    By:  **Marco Janoski, Esq.**
        **Theodore J. Pintar, Esq.**
    655 W. Broadway, Suite 1900
    San Diego, CA 92101

For the Defendants:

    ALLEN OVERY SHEARMAN STERLING US LLP
    By:  **Daniel C. Lewis, Esq.**
        **Joshua Ebersole, Esq.**
    599 Lexington Ave.
    New York, NY 10022

For the Defendants:

    WOMBLE BOND DICKINSON (US) LLP
    By:  **John C. Gray, Esq.**
    201 E. Washington St., Suite 1200
    Phoenix, AZ 85004

**P R O C E E D I N G S**

(Proceedings commenced at 9:36 a.m.)

THE COURTROOM DEPUTY:  This is Civil Case 23-1455, Laborers District Council Construction Industry Pension Fund versus Sea Limited.  This is the time set for final approval hearing.

Would the parties please announce, beginning with counsel for the plaintiff.

Mr. Janoski, if you would like to announce first, you may.

MR. JANOSKI:  Sorry.  I just realized I was on mute.

Good morning, Your Honor.  This is Marco Janoski with Robbins Geller Rudman & Dowd on behalf of the lead plaintiff, Laborers District Council.

MR. PINTAR:  Good morning, Your Honor.  Ted Pintar also with Robbins Geller Rudman & Dowd for plaintiffs.

MR. LEWIS:  Good morning, Your Honor.  Daniel Lewis from Allen Overy Shearman Sterling US LLP for the defendants, and also with me is -- from my firm is Josh Ebersole.

MR. GRAY:  And good morning, Your Honor.  John Gray with Womble Bond Dickinson as local counsel for defendants.

THE COURT:  Okay.  Good morning.

We're here on a couple of motions.  The motion -- plaintiff's lead counsel's motion for final approval of class action settlement and approval of plan of allocation and

memorandum of law in support thereof; and lead counsel's motions for an award of attorneys' fees and expenses and award to class representative.

I've reviewed those, and I've taken a look at your proposed orders. Who's going to speak on behalf of the plaintiffs?

MR. JANOSKI: I will; Mr. Janoski, Your Honor.

THE COURT: Okay. Is there something that you want to tell me that isn't in these motions, in the papers?

MR. JANOSKI: Your Honor, I'm happy to get into any specific questions that you have in either motion. I'll just -- on a broad level, I just want to reiterate again, I think we think this is a substantial benefit for the class given the size of the recovery and the specific finish to continued litigation. The fact that there's been no objection from any class member and small number of requests for exclusions further support the reasonableness and fairness of the settlement.

And then just on a high level -- we're happy to get into anything more specific, Your Honor -- with respect to our motion for attorneys' fees, we are respectfully requesting for the 25 percent benchmark that the Ninth Circuit holds to be presumptively reasonable.

And, again, Your Honor, we think that reasonableness is especially evidenced here by the result that we've achieved

and the fact that we were able to officially achieve it at this early stage of the litigation with the very real contingency risk that we took on of not receiving anything at all; the multitude of similar cases we cite with similar awards that are in our papers; and, again, the lack of objection, Your Honor.

So I'm happy, again, if you have specifics on any of those, I can drill into those.  But other than that, we rest on our papers.

THE COURT:  I have one question.  At page 12 of Doc 77, your motion for final approval --

MR. JANOSKI:  Yes.

THE COURT:  -- you argue at lines 23 and 24 that as a percentage of estimated damages, the settlement amount exceeds the amounts routinely approved by the courts.

MR. JANOSKI:  Yes, Your Honor.

THE COURT:  What was the percent of estimated damage -- what percent of the estimated damage is the settlement amount?

MR. JANOSKI:  Your Honor, I believe we have that in our fee motion, which was estimated to be between 5 and 10 percent.  There is some difficulty in estimating the actual number of damage shares here given that this is a foreign issuer with large insider holdings, but our estimates are between 5 and 10 percent.

THE COURT:  Okay.

All right.  And for the defendant, who's speaking on behalf of the defendant?

MR. LEWIS:  Daniel Lewis, Your Honor.

THE COURT:  Okay.  Mr. Lewis, is there anything you want to add?

MR. LEWIS:  No, Your Honor.  If Your Honor has any questions, I'm happy to answer them, but we don't have anything to add.

THE COURT:  Okay.

All right.  Having reviewed everything and in light of the nature of this suit and all of the effort and actions that have been taken, there's been no objection, the percent of the estimated damages is well within the range that's routinely approved, and the other factors that have gone into the work that's gone on here, I'm going to approve this.

But let me ask counsel for plaintiff, what is going to be the ongoing effort to reach out and make contact with the class members?

MR. JANOSKI:  Yes, Your Honor.  So the claims administrator -- the deadline for submitting claims was last week, June 23rd.  They are in the midst of processing those claims, validating those claims.  We think it will take some weeks to months to get those fully processed.

There is -- I believe in the notice, there is a process for class members that have a claim rejected to go

off -- have a back-and-forth or appeal with the claims administrator.  So we're still in the early stages of those claims getting processed, but we expect in the next coming weeks and months we'll know a little bit more about who's actually in the class.

THE COURT:  Do you have any sense of the percentage of the class that has responded?

MR. JANOSKI:  We know that there has been -- I guess the last estimate that we got is that there has been about 6,700, I think close to 7,000 claims submitted.  That was, again, prior to the deadline.

Again, at this point we don't know how many shares that represents, given that they haven't been fully processed and validated, so it's a little hard to tell exactly what the claims rate is, Your Honor.  But we should have that information in the coming weeks or months.

THE COURT:  And I guess my other question is, do you have any sense of what the actual dollars class members will receive in their hands per person?  What is the range of what the class members are going to receive?

MR. JANOSKI:  That depends on their share holdings, Your Honor --

THE COURT:  Well, I understand that.  I assume you know the range of the shares.  I just want to --

MR. JANOSKI:  Yes, Your Honor.

THE COURT:  -- get a sense of how much money are they going to realize?

MR. JANOSKI:  I believe we have the estimate in the notice.  I'm trying to find the exact figure.

MR. PINTAR:  It's 1.03 per share.

MR. JANOSKI:  Yeah.  A dollar and three cents per share, Your Honor.

THE COURT:  Okay.  I understand that.  I'm trying to understand, how many shares are out there by these individuals?  You have shareholders that have one share?  Or I'm just trying to understand.

If I was to say, let's look at this one person who's getting a recovery from this settlement, how much are we looking at are they going to get in their hands?

MR. JANOSKI:  They will get -- our estimation is that they will get a dollar and three cents per share --

THE COURT:  No, I understand that, but do we have a sense of how many shares people typically hold of these things?  Is this the type of investment where people are buying one share, or we have a range of -- any idea?

MR. JANOSKI:  Your Honor, I think the closest data we have on that is what's in the requests for exclusion we've gotten to date.  We've had three requests for exclusion representing eight entities.

So one of those requests for exclusion was on behalf

of a very large institutional holder that held more than a million shares.  The other two requests for exclusion were on behalf of individual retail investors it appears that held only a handful of shares.

So there are institutions and individuals that will have larger share holdings.  There may be some small retail investors that have smaller share holdings.  Under the plan of allocation, any -- a pro rata distribution is only given to those that have a recognized loss of more than --

THE COURT:  Okay.  Let me just -- let me put it this way.  Maybe I'm not asking it very well.

Institutional investors, what percentage of these shares were held by them?

MR. JANOSKI:  Again, Your Honor, because this is a foreign issuer, we don't have that precise data.

THE COURT:  Okay.

MR. JANOSKI:  There's just limited information on American depositary shares and the share holdings there.

THE COURT:  Okay.

All right.  Well, it looks like --

MR. JANOSKI:  But again, I will say --

THE COURT:  Go ahead.

MR. JANOSKI:  Actually, so one thing I could add, Your Honor, is that we do know, I think, that there was millions, tens of millions, I believe hundreds of millions of shares that

were traded during the class period.  Again, a significant of those were insiders that were owned by the defendants, so we don't know precisely how many of those would be excluded from the class based on those insider holdings.

But there's a significant amount of shares out there, and from what we've seen in the requests for exclusion, at least, we know that the institutions have significant share holdings, Your Honor.

THE COURT:  Okay.  All right.  So the biggest losses would be through the institutions themselves, probably, as opposed to individual investors?

MR. JANOSKI:  Most likely, Your Honor, unless those individuals who held obviously larger share holdings, but we just don't know that yet based on the claims.

THE COURT:  All right.  And what percentage of the shares have been represented in the claims that have been made so far?

MR. JANOSKI:  In the claims that have been made, again, Your Honor, the claims data we have shows as of last week that there was around 7,000 claims made.  I don't think we have a figure on the amount of shares that represents, an accurate figure on that, as it's still being processed.  So I don't have an accurate figure on the exact amount of damage shares that are subject to the claims.

THE COURT:  Okay.  But due to your investigation, your

discovery, and your math, you've calculated that per share, the recovery is just over a dollar; is that right?

MR. JANOSKI:  Yes, Your Honor.  That's the estimated recovery per share.

THE COURT:  And that's based on your estimate of the number of shares that will be making claims?

MR. JANOSKI:  Yes.

THE COURT:  All right.  And so far, that's holding up?

MR. JANOSKI:  Again, we -- because the deadline for claims has just happened -- was just last week, Your Honor, the claims administrator hasn't processed them all yet, so they haven't calculated the recognized losses per claimant.  So we just don't have that data at this point in time.

THE COURT:  All right.

Okay.  How long will it take you to get that data?

MR. PINTAR:  I would say 90 days.

MR. JANOSKI:  About 90 days, Your Honor.

THE COURT:  All right.

Okay.  All right.  Well, I'll take this under advisement then.  All right.

MR. JANOSKI:  Thank you, Your Honor.

THE COURT:  All right.  Thank you.

(Proceedings concluded at 9:48 a.m.)

UNITED STATES DISTRICT COURT

C E R T I F I C A T E

I, JENNIFER A. PANCRATZ, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

DATED at Phoenix, Arizona, this 22nd day of July, 2025.


                         s/Jennifer A. Pancratz_____
                         Jennifer A. Pancratz, RMR, CRR, FCRR, CRC